# EXHIBIT A

ØŠÖÖ

ĞЄĞ Á̃ŒÒÓ̃Áϕ̃FÁЄĞ̃Ğ̃ Á̆ÚT
SϕỖÁÖUWЬVÝ
ÙWÚÒÜϕÜÁ̃ÖUWÜVÁ̃Ö̃ŠÖÜS
Ö̃Zؚ̃ŠÖÖ
ỖŒÒÙ̃Ò̃Á̃WÁ̃Ğ Ё̃ЁЁ €̃Ё̃Ё̃Á̃ÚÖŒ

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| JAMES WINN, | CASE NO.: |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES** |
| vs. | **I. BREACH OF CONTRACT** |
| BOYD TINSLEY, | **II. DEFAMATION (WA STATE TORT)** |
| Defendant. | **III. FALSE LIGHT (WA STATE TORT)** |
| | **IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (WA STATE TORT OF OUTRAGE)** |
| | **V. NEGLIGENCE (WA STATE TORT)** |

**COMES NOW** Plaintiff, JAMES WINN (Plaintiff WINN), by and through his attorneys of record, STEPHANIE HENDERSON STOCKER of HENDERSON LAW GROUP, PLLC, and JASON HATCH, and for the causes of action alleged herein states, alleges, and complains as follows:

## I. INTRODUCTION

1.1     This cause of action is brought as a result of Defendant Boyd Tinsley (Defendant TINSLEY's) unlawful actions occurring on and after February 22, 2022.  On February 22, 2022, Defendant TINSLEY published via social media eighteen (18) untrue and disparaging statements about Plaintiff WINN: Defendant TINSLEY first published the nine (9) untrue and disparaging

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

statements about Plaintiff WINN in a social media post he published to his Facebook page on February 22, 2022; he then published the same nine (9) statements a second time later that same day (February 22, 2022) when he "shared"/published his Facebook post verbatim to his Twitter page of 98,000+ followers.

1.2    The eighteen (18) untrue and disparaging statements published by Defendant TINSLEY about Plaintiff WINN on February 22, 2022, are each of the following nine (9) written statements multiplied by the number of platforms to which the statements were published. Here, the number of platforms to which Defendant TINSLEY published the nine (9) untrue and disparaging statements is two (Facebook and Twitter). The nine (9) untrue and disparaging statements are as follows:

1.   "This accusation is a total lie."

2.   "There is a pattern of me being victimized by mentally unstable and money grabbing people."

3.   "This latest individual that I am speaking of concocted this incredulous story of sexual harassment, which is a complete and total lie."

4.   "This is from the mind of a very troubled and disturbed person."

5.   "On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind."

6.   "He said he felt like hurting someone. Never did I think it would be me."

7.   "He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food, and playing pinball at an arcade in the neighborhood.

8.   "Music went out the window and it was all about getting drunk and playing pinball."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

9. "I never harassed this individual; this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual."

1.3    Each of the above nine (9) statements were published to two social media platforms by Defendant TINSLEY, first to Facebook, then to Twitter. Washington State law supports that each platform on which an untrue and disparaging statement is published constitutes a separate breach/violation of Washington State law by the person publishing the comments (here, Defendant TINSLEY). Washington State law further supports that **EACH** untrue and disparaging statement published **WITHIN** a social media post constitutes a separate breach/violation of Washington State law. As such, here, the above nine (9) untrue and disparaging statements published by Defendant TINSLEY to Facebook became eighteen (18) separate breaches/violations of Washington State law by Defendant TINSLEY when he posted/"published" the above nine (9) untrue and disparaging statements to a second platform, Twitter.

1.4    Plaintiff WINN alleges, and the evidence supports, that the above outlined eighteen (18) untrue and disparaging statements published to Facebook and Twitter by Defendant TINSLEY on February 22, 2022, **EACH** constitute not only a "Breach of Contract" claim by Defendant TINSLEY for his breach of the "non-disparagement" and confidentiality terms agreed-to and mutually signed between Defendant TINSLEY and Plaintiff WINN in their Settlement Agreement and Mutual Release of Claims dated June 5, 2019 (hereinafter, the "2019 Settlement Agreement", attached hereto as Exhibit 2), but **EACH** of these eighteen (18) untrue and disparaging statements published by Defendant TINSLEY about Plaintiff WINN also constitute violations of Washington State tort laws, including Defamation, False Light, Intentional Infliction of Emotional Distress and Negligence.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

1.5    **BREACH OF CONTRACT**: Defendant TINSLEY's above-outlined actions violated the terms of the 2019 Settlement Agreement which was mutually agreed upon by Plaintiff WINN and Defendant TINSLEY and fully executed on June 5, 2019. By his February 22, 2022, actions outlined above, Defendant TINSLEY breached the terms of the 2019 Settlement Agreement eighteen (18) times.    The evidence and Washington State law support that one unlawful breach/violation of law was made by Defendant TINSLEY for **EACH** of the eighteen (18) disparaging statements that he published on February 22, 2022. Note that truth is not a defense to the claim of breach of contract regarding disparagement. It is enough that the common understanding of the words used would tend to disparage the target. A jury may assess that further disparaging statements were made.

1.6    Defendant TINSLEY breached the terms of the 2019 Settlement Agreement by:

1.6.1    Breaching the agreed terms of confidentiality (Making disparaging remarks about Plaintiff WINN in violation of the 2019 Settlement Agreement) wherein each party specifically agreed to NOT disparage the other party in any way; AND

1.6.2    By disclosing information regarding the case publicly, in violation of the 2019 Settlement Agreement, wherein each party specifically agreed to NOT disclose any information about the case to any person or persons.

1.7    The 2019 Settlement Agreement entered by the parties represents the minds of both parties, and their counsel, at the time of its creation and execution. By repeatedly violating the terms of the 2019 Settlement Agreement, Defendant TINSLEY breached his contract with Plaintiff WINN.

1.8    In agreeing to the terms of their 2019 Settlement Agreement, the parties understood the difficulty in ascertaining a monetary value on something as priceless as privacy and reputation. In consideration of the large value of the 2019 Settlement Agreement itself, and in consideration of the fact that the settlement valuation was considered reasonable by both parties at the time that they

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **4 of 54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

mutually-signed the 2019 Settlement Agreement, the parties agreed to an amount of ***$25,000.00 in***

***liquidated damages owed by the breaching party to the non-breaching party for each violation of the terms***

***of their 2019 Settlement Agreement,*** including but not limited to the non-disclosure clauses of the agreement and

***for each instance of disparagement or other unlawful conduct that either party to the contract***

***made regarding or against the other party.***

    1.9    In addition to Defendant TINSLEY's above-outlined liability to Plaintiff WINN for

"Breach of Contract" for his breach of the parties' 2019 Settlement Agreement, Defendant

TINSLEY's February 22, 2022, Facebook and Twitter publications of the eighteen (18) untrue and

disparaging statements regarding Plaintiff WINN, Defendant TINSLEY **ALSO violated the terms**

**of the 2019 Settlement Agreement regarding liability against a party, "*for each instance of***

***disparagement or other unlawful conduct that either party to the contract made regarding or***

***against the other party.***" Defendant TINSLEY's February 22, 2022, Facebook and Twitter

publications of the eighteen (18) untrue and disparaging statements regarding Plaintiff WINN

constitute violations of Washington State tort law, including Defamation, False Light, Intentional

Infliction of Emotional Distress and Negligence.

    1.10    **DEFAMATION:** The evidence supports that Defendant TINSLEY violated

Washington State Defamation Tort laws when he published to Facebook and Twitter on February

22, 2022, the eighteen (18) untrue and disparaging statements regarding Plaintiff WINN. Defendant

TINSLEY's actions meet the 4 elements of a claim for Defamation under Washington State law

because he:

        1.10.1  Made a false statement of fact;

        1.10.2  The statement was made to someone other than the plaintiff;

        1.10.3  The statement harmed the plaintiff's reputation, and

        1.10.4  The defendant was (if a private figure) "negligent" and careless about whether
        his statement(s) were true or false or (if Plaintiff is a public figure), that the Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **5** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

acted with malice or recklessness when he published the false statement(s) about Plaintiff, knowing the statement(s) were false and/or with reckless disregard for the truth of the statement(s). *Mark v. Seattle Times*, 96 Wn.2d 473, 635 P.2d 1081 (1981)

1.11 **FALSE LIGHT:** The evidence supports that Defendant TINSLEY violated Washington State False Light Tort laws when he published to Facebook and Twitter on February 22, 2022, the eighteen (18) untrue and disparaging statements regarding Plaintiff WINN. Defendant TINSLEY's actions meet the three (3) elements of a claim for False Light under Washington State law because he:

    1.11.1 Publicized a matter that placed the Plaintiff in a false light;

    1.11.2 "The false light would be highly offensive to a reasonable person;" and

    1.11.3 Defendant TINSLEY "knew of or recklessly disregarded the falsity of the publication and the false light in which the target of such published statements would be placed." *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 722 P.2d 1295, 1297 (1986) A false light plaintiff "must allege falsity," meaning that the plaintiff must identify a statement by the defendant that is "provably false." *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 438 P.3d 606, 616 (2019) "A provably false statement is one that, as a statement of either fact or opinion, falsely expresses or implies provable facts about the plaintiff."[1] *Id.* at 612. To prevail on a false impression theory, "the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts." <u>Mohr v. Grant, 153 Wn.2d 812, 108 P.3d 768, 776 (2005)</u>. See *Percival v. Poon*, No. C20-1040-JCC, 9-10 (W.D. Wash. Aug. 2, 2021)

1.12 **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:** The evidence supports that Defendant TINSLEY violated Washington State Tort of Outrage laws when he published to Facebook and Twitter on February 22, 2022, the eighteen (18) untrue and disparaging

---

[1] In *Seaquist*, the Washington Court of Appeals left open the question of "whether falsity by implication can support a false light claim." 438 P.3d at 616 n.4. The Court concludes that false light plaintiffs would likely be able to recover for implied falsehoods because the Washington Supreme Court has allowed defamation plaintiffs to do so and has suggested that a plaintiff that can establish a defamation claim can always establish a false light claim, as if false light is a lesser-included tort. See *Eastwood*, 722 P.2d at 1297 ("While all false light cases need not be defamation cases, all defamation cases are potentially false light cases."); see also *id.* ("The two torts overlap . . . when the statement complained of is both false and defamatory."). Therefore, the case law regarding defamation sets the boundaries of a false light claim by implication. See *Percival v. Poon*, No. C20-1040-JCC, 10 n.3 (W.D. Wash. Aug. 2, 2021).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

statements regarding Plaintiff WINN. Defendant TINSLEY's actions meet the four elements of a claim for Intentional Infliction of Emotional Distress under Washington State law because:

1.12.1 Defendant TINSLEY has engaged in extreme and outrageous conduct.

1.12.2 Defendant TINSLEY'S conduct has been intentional or reckless and has caused emotional distress to Plaintiff WINN.

1.12.3 Plaintiff WINN has suffered severe emotional distress as an actual result of such conduct; and

1.12.4 Because of the intentional infliction of emotional distress, Plaintiff WINN has been damaged in an amount to be determined at trial.

1.13 **NEGLIGENCE:** The evidence supports that Defendant TINSLEY violated Washington State Tort laws when he published to Facebook and Twitter on February 22, 2022, the eighteen (18) untrue and disparaging statements regarding Plaintiff WINN. Defendant TINSLEY's actions meet the elements of a claim for Negligence under Washington State law because:

1.13.1 Defendant TINSLEY had a duty to abide by the Parties' mutually agreed upon terms in the 2019 Settlement Agreement, including to use reasonable care not to cause injury to Plaintiff WINN.

1.13.2 Defendant TINSLEY'S conduct with his February 22, 2022, Facebook and Twitter posts was intentional, reckless and/or negligent.

1.13.3 Because of Defendant TINSLEY'S conduct that breached Section 7 (page 3 of the 2019 Settlement Agreement, attached hereto as Exhibit 2) "Mutual Confidentiality" and Section 8 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2) "Mutual Non-Disparagement," Plaintiff WINN has been damaged and is owed "Liquidated Damages" per Section 9 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties mutually agreed upon terms of "Liquidated Damages" owed by the breaching party as follows:

- "The Parties agree that a breach of the confidentiality and non-disparagement provisions in Sections 6 and 7 of this Agreement would constitute an irreparable harm, and that in the event of any breach of Section 6 or 7, the injured Party may obtain an injunction prohibiting future breaches. The availability of injunctive relief is in addition to other remedies available under this Agreement, including the right to damages and any reasonable attorneys' fees and costs available under this Agreement for enforcing this provision.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

- It is agreed that in the event of a breach of Section 6 or 7, damages would be difficult to quantify, and the amount of liquidated damages provided herein is a reasonable estimation of such damages. Therefore, the Parties agree that in the event of such a breach of Section 6 or 7, **the injured Party shall be entitled to payment in the amount of Twenty-Five Thousand Dollars ($25,000) as liquidated damages for each such breach, in addition to all other remedies that the Party might be entitled to seek for such breaches."**

Section 9 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties mutually agreed upon terms of "Liquidated Damages" (*emphasis added*).

1.13.4  Additionally,  because of Defendant  TINSLEY'S  conduct  that  breached Section 7 (page 3 of 2019 Settlement Agreement, attached hereto as Exhibit 2), mutually agreed upon "Mutual Confidentiality" and Section 8 (page 4 of 2019 Settlement Agreement, attached hereto as Exhibit 2), mutually agreed upon "Mutual Non-Disparagement,", Plaintiff WINN has been damaged and owed compensatory damages, plus any and all other available damages in an amount to be proven at trial, any and all other available remedies under Washington State law (injunctive or otherwise), per Section 13 (page 5 of 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties mutually agreed upon "Remedies for Breach" as follows:

- "The Parties agree that each Party, in addition to any other remedy it may have under this Agreement or at law, *shall be entitled to injunctive and other equitable relief to prevent or curtail any breach of any provision of this Agreement."* (*emphasis added*).

## II. PARTIES

2.1    Plaintiff WINN is an individual, a resident of the State of Washington, and a former employee of Defendant TINSLEY.

**2.2    Defendant TINSLEY is an individual, a resident of the State of Virginia, and former employer of Plaintiff WINN.**

2.3    Plaintiff WINN and Defendant TINSLEY shall hereinafter be referred to collectively as "the Parties."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

### III.  JURISDICTION AND VENUE

3.1    Plaintiff WINN re-alleges and incorporates by reference paragraphs 1.1 through 2.3 of this Complaint.

3.2    This Court has jurisdiction over the subject matter of this suit and venue is proper in this court pursuant to RCWs 4.12.020 and 49.60.030(2), the latter of which authorizes "a civil action in a court of competent jurisdiction" to remedy a violation of RCW 49.60, including violations of the prohibition of sex discrimination found in RCW 49.60.010; RCW 49.60.030(1) and RCW 49.60.180. *See Griffin v. Eller*, 130 Wn.2d 58, 922 P.2d 788 (1996).

3.3    Further, jurisdiction is proper in this court, as mutually agreed upon by the Parties in Section 14 (page 6 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties mutually agreed upon "Governing Law and Jurisdiction" as follows: "This Agreement shall be governed and conformed in accordance with the laws of the state of Washington without regard to its conflict of laws provision." Further, all acts or omissions relevant to this Complaint took place in Washington State and the contract breached by Defendant TINSLEY (the 2019 Settlement Agreement, *attached hereto as Exhibit 2 – Settlement Agreement and Mutual Release of Claims dated June 5, 2019*) was mutually signed and fully executed by the Parties in King County, Washington State.

3.4    Further, jurisdiction and venue are proper in this Court because the band "Crystal Garden" was based in Seattle, Washington (Fremont), located in King County. Defendant TINSLEY created, managed, and paid the wages, rent, and all living expenses for the band members of "Crystal Garden" (*i.e.,* his employees, including band member, Plaintiff WINN). Defendant TINSLEY leased and paid for in full the Fremont/Seattle, Washington, apartment that he secured for the Crystal Garden band members/employees to live in together while working on their music. Defendant TINSLEY paid

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

monthly wages to and living expenses for his employees (the Crystal Garden band members, including Plaintiff WINN) – all of which occurred in Seattle, Washington (located in King County).

## IV.  **STATEMENT OF FACTS**

4.1    The underlying facts that gave rise to the 2019 Settlement Agreement are as follows. Plaintiff WINN was an employee of Defendant TINSLEY starting in 2007 when Defendant TINSLEY discovered Plaintiff WINN, who was a nearly homeless street musician in San Francisco, California.  Defendant TINSLEY soon-after hired Plaintiff WINN and created a "boy band" called "Crystal Garden." The band members of Crystal Garden were Mr. Joel Jacobs (drums); Mr. Mycle Wastman (vocals); Mr. Charlie Csontos (bass); Mr. Matt Frewen (drums); and Plaintiff WINN (trumpet).

4.2    In the years that followed, Plaintiff WINN was catapulted by Defendant TINSLEY into a world of luxury and living his lifelong dream of playing music worldwide – a dream come true for Plaintiff WINN. Traveling the world playing live shows, recording music with international music talent, 5-star hotels, first-class food, drinks & friends – all supplied by Defendant TINSLEY for his employee, Plaintiff WINN.

4.3    Defendant TINSLEY began sexually harassing his employee, Plaintiff WINN, in 2015 – sexually flirting with verbal sexual comments, physically touching, sexting – including communicating to Plaintiff WINN that he provided "this life" and "these things" to Plaintiff WINN and that Plaintiff WINN "owed him." Defendant TINSLEY's harassment towards Plaintiff WINN was nothing short of disturbing to Plaintiff WINN – the harassment was in no way welcome and destroyed Plaintiff WINN emotionally.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

4.4     After months of enduring Defendant TINSLEY's sexually charged harassment as a cost for maintaining his employment with Defendant TINSLEY, Plaintiff WINN was left with no choice but to walk away from the dream-turned-nightmare that he had been living. Defendant TINSLEY opened doors for Plaintiff WINN to the musical world that Plaintiff WINN had previously only imagined – a dream lived and tragically lost for Plaintiff WINN because of Defendant TINSLEY's sexually predatory harassment.

4.5     Examples of communications from Defendant TINSLEY to Plaintiff WINN include (but are not limited to):



4.6     In 2018, Plaintiff WINN had the legal basis to bring an action for relief against his former employer, Defendant TINSLEY. The full details of facts giving rise to Plaintiff WINN's

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

2018 lawsuit filed against Defendant TINSLEY are outlined in Plaintiff WINN's 2018 Complaint for Damages, filed May 17, 2018, in King County Superior Court. *Attached hereto as Exhibit 1 – King County Superior Court Complaint dated May 17, 2018.* The facts outlined in Plaintiff WINN's 2018 Complaint for Damages and applicable Washington State law supported the following four claims for Plaintiff WINN against Defendant TINSLEY:

### 4.6.1 Sexual Harassment – *Quid Pro Quo* in Violation of RCW § 49.60

Defendant TINSLEY sexually harassed Plaintiff WINN under the *quid pro quo* theory in violation of Washington State's Law Against Discrimination (hereinafter, "WLAD") (RCW 49.60) when Defendant TINSLEY required his employee (Plaintiff WINN) to submit to unwelcome sexual conduct as a condition of receiving pay and/or tangible job benefits.

### 4.6.2 Sexual Harassment – Hostile Work Environment in Violation of RCW § 49.60

Defendant TINSLEY sexually harassed Plaintiff WINN under the hostile work environment theory in violation of RCW 49.60 when Defendant TINSLEY directed conduct or behavior toward his employee (Plaintiff WINN) because of Plaintiff WINN's sex that created an intimidating, hostile, or offensive working environment for Plaintiff WINN.

### 4.6.3 Retaliation in Violation of RCW § 49.60 – Discrimination Against Employee Opposing Unfair Practice Protected by WLAD

Defendant TINSLEY retaliated against Plaintiff WINN in violation of RCW 49.60. Plaintiff WINN opposed Defendant TINSLEY's illegal activity several times, including but not limited to when he complained to Defendant TINSLEY following the November 2015 incident, making it clear to Defendant TINSLEY that the sex-based behavior was wrong, unwelcome, and needed to stop. Defendant TINSLEY thereafter continued to harass Plaintiff WINN, tying Plaintiff WINN's compliance with the sex-based demands to Plaintiff WINN's continued "success" with the band. Plaintiff WINN's submitting to Defendant TINSLEY's sexual demands equates to the adverse "tangible employment action" required to establish a retaliation claim under WLAD.

### 4.6.4 Constructive Discharge – WA State Common Law Tort

Defendant TINSLEY committed the Washington State Common Law Tort of Constructive Discharge against Plaintiff WINN when Defendant TINSLEY's sexual

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

harassment of his employee (Plaintiff WINN) deliberately created intolerable working conditions for Plaintiff WINN that gave Plaintiff WINN no choice but to either endure Defendant TINSLEY's sexual advances as a condition of his employment – or resign. Plaintiff WINN's resignation is viewed by Washington State law as the Tort of Constructive Discharge if a "reasonable person" in Plaintiff WINN's shoes would feel the working conditions created by his employer (Defendant TINSLEY) left Plaintiff WINN with no choice but to resign.

4.7    The Parties thereafter agreed to Mediation, which occurred in May 2019 in King County, Washington State. The Mediation resulted in settlement, whereby the Parties mutually signed a Settlement Agreement and Mutual Release of Claims ("2019 Settlement Agreement"), executed June 5, 2019. *Attached hereto as Exhibit 2 – Settlement Agreement and Mutual Release of Claims dated June 5, 2019.* The February 22, 2022, breach of that 2019 Settlement Agreement, by Defendant TINSLEY is the basis of this Cause of Action brought by Plaintiff WINN against Defendant TINSLEY.

4.8    On February 22, 2022, Defendant TINSLEY created and shared content regarding Plaintiff WINN in violation of the 2019 Settlement Agreement, first posted by Defendant TINSLEY on his Facebook page (*Attached hereto as Exhibit 3 - Tinsley Facebook Post date stamped February 22, 2022*), then "shared" the same day (February 22, 2022) by Defendant TINSLEY to his Twitter page, for which he had 98,000 "Twitter followers" at the time who could view his post. His statements included numerous untrue disparaging attacks regarding and against Plaintiff WINN. *Attached hereto as Exhibit 4 – Copies of Facebook posts that were also shared to his Twitter Account.* These attacks include, but are not limited to the below nine (9) written remarks identifying Plaintiff WINN:

- "This accusation is a total lie."

- "There is a pattern of me being victimized by mentally unstable and money grabbing people."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

- "This latest individual that I am speaking of concocted this incredulous story of sexual harassment, which is a complete and total lie.

- "This is from the mind of a very troubled and disturbed person."

- "On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind."

- "He said he felt like hurting someone. Never did I think it would be me."

- "He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food, and playing pinball at an arcade in the neighborhood.

- "Music went out the window and it was all about getting drunk and playing pinball."

- "I never harassed this individual; this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual."

4.9    In addition, the sharing by either Party of ANY information regarding their 2019 settlement, in and of itself, is in violation of the Section 7 (page 3 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), of the Parties mutually agreed upon "Mutual Confidentiality" terms.

Section 7. Mutual Confidentiality states:

In consideration of the obligations under this Agreement, the parties agree that this Agreement, the terms and conditions hereof, are strictly and shall forever remain confidential and the Parties their spouses, heirs, agents, executors, board members, directors, officer, attorneys, legal representatives, or assigns shall not disclose or disseminate, directly or indirectly, any information concerning any such terms to any third person(s), including but not limited to, representatives of the media and present or former employees of Tinsley under any circumstances. If asked about the outcome of the litigation, the Parties will respond that the matter has been resolved, or words to that effect.

Notwithstanding anything to the contrary, nothing in this agreement shall prevent the disclosure of confidential information or the terms hereunder to lawyers, accounts auditors, insurers/reinsurers (if any), together with such insurers/reinsurers' third party service providers, actuaries or intermediaries (collectively "Recipients") or regulators,

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

provided the disclosure of the information is reasonably necessary to effectuate the terms of this Agreement, or is required for tax, financial reporting, or governmental compliance purposes or to transact the business of insurance. Prior to disclosure, the Recipients shall be informed of the confidential nature of the information and shall agree to keep such information confidential. Additionally, to the extent the request is from a regulator or pursuant to a subpoena then the receiving Party must promptly notify the other Party, so that the other Party may timely object to the production.

4.10    Further, Defendant TINSLEY's February 22, 2022, breach of the 2019 Settlement Agreement disparaged Plaintiff WINN in violation of Section 8 (page 4 of 2019 Settlement Agreement, attached hereto as Exhibit 2) of the Parties mutually agreed upon "Mutual Non-Disparagement" terms and is subject to claims of breach of contract, defamation, false light, intentional infliction of emotional distress, and/or negligence, by indicating that Plaintiff WINN brought false charges against Defendant TINSLEY and by stating that Plaintiff WINN brought an action against Defendant TINSLEY because Plaintiff WINN was "mentally unstable," rather than due to the fact that Defendant TINSLEY had been first grooming, then coercing through money & fame, then sexually harassing, then sexually assaulting Plaintiff WINN throughout Plaintiff WINN's employment relationship with Defendant TINSLEY.

Section 8. Mutual Non-Disparagement states:

The parties agree to refrain from making any disparaging, negative or uncomplimentary statements whether public or private, in writing or orally, regarding the other Parties, unless in response to a valid subpoena, truthful, and only after providing the Party, through his counsel, a copy of the subpoena so that a timely objection may be made. Such prohibited statements shall include, but not be limited to, any discussion of the facts and circumstances related to the allegations set forth in the Lawsuit.

As part of this non-disparagement agreement, Winn agrees to immediately delete all previous social media and public comments and postings within his control regarding Tinsley and further agrees to refrain from creating or contributing to any social media, news, or other public commentary regarding Tinsley, this Lawsuit, or claims relating directly or indirectly to the allegations in the Lawsuit. Winn further agrees that should any third parties re-post, share or comment on his prior posts, to the extent possible, he will immediately delete such posts. The Parties recognize that

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **15** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

some media content was made public before the parties entered into this Agreement and that Winn cannot identify and does not possess control over every third party who may have downloaded, saved, copies or otherwise had access to such content.

4.11    The 2019 Settlement Agreement states specifically that nothing prevents either party from bringing further action if merited. In a letter from Plaintiff WINN's counsel, Jason Hatch, to Defendant TINSLEY'S counsel, Henry Willett (dated August 29, 2022). *Attached hereto as Exhibit 5 – Letter to Henry Willett, Esq. dated August 29, 2022.* Plaintiff WINN's attorneys informed Defendant TINSLEY that they would be willing to discuss the defamation matter in mediation as well. *Id.*

4.12    Mediation was held on April 18, 2023, and the parties could not come to an agreement for settlement of this matter.

## V.  **PROCEDURAL HISTORY**

5.1    Plaintiff WINN incorporates by reference each and every allegation set forth in paragraphs 1.1 through 4.12 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

5.2    The following list highlights recent procedural history and is by no means exhaustive:

- **January 30, 2018:** Plaintiff WINN's counsel sends comprehensive Demand Letter to Defendant TINSLEY.

- **May 17, 2018:** Plaintiff WINN files Complaint for Damages in King County Superior Court of Washington. Defendant TINSLEY subsequently removes case to USDC Western District of Washington at Seattle.

- **June 5, 2019:** Parties, Plaintiff WINN and Defendant TINSLEY, entered into a Confidential Settlement Agreement and Mutual Release of All Claims

- **February 22, 2022:** Defendant TINSLEY posts, in violation of the 2019 Settlement Agreement, a multitude of disparaging remarks towards Plaintiff WINN and in violation of the 2019 Settlement Agreement Defendant TINSLEY disclosed information regarding the existence and/or nature of the 2019 Settlement Agreement between Plaintiff WINN and Defendant TINSLEY, AND; in violation

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

of the 2019 Settlement Agreement, Defendant TINSLEY still maintained images and information regarding Plaintiff WINN on Defendant TINSLEY'S own social media.

- **March 2, 2022:** Plaintiff WINN's counsel sends a comprehensive letter as notice of Defendant Boyd Tinsley's Breach/Violation of the Parties' signed 2019 Confidential Settlement Agreement & Mutual Release of All Claims. The notice was sent March 2, 2022, to Defendant TINSLEY and to Defendant TINSLEY's attorney at the time of settlement, Christopher E. Hawk, Esq.

- **April 18, 2023:** The Parties engaged in full-day mediation with Teresa Wakeen. Those participating in mediation were legal counsel for Defendant TINSLEY (Henry Willett), the Plaintiff (James Winn), and legal counsel for the Plaintiff WINN (Stephanie Stocker and Jason Hatch). Resolution was not reached between the Parties. Defendant TINSLEY denied liability for breach of the 2019 Confidential Settlement Agreement & Mutual Release of All Claims and further claimed that, if he had breached the Agreement, he did not have the financial resources to pay Liquidated and/or additional damages owed for such breaches. Counsel for Plaintiff WINN presented evidence showing that, contrary to the Defendant TINSLEY's assertions, Defendant TINSLEY's net worth is estimated at nearly $70 million[2] and thus DOES in fact have the financial resources to pay Liquidated and/or additional damages owed for his breach of the 2019 Settlement Agreement, including evidence of the Defendant TINSLEY's extensive musical career, including that Defendant TINSLEY continues to receive royalties from his extensive work as a founding member of the Dave Matthews Band, including (but not limited to):

  o In 1992, Defendant TINSLEY became a founding member of the Dave Matthews Band (hereinafter, "DMB"), which went on to win multiple Grammy Awards and sell over 50 million records worldwide, making the band one of the top 100 highest-selling music acts of all time.[3] DMB won the 1996 Grammy Award for Best Rock Vocal Performance by a Duo or Group for "So Much to Say" and has been nominated for thirteen (13) additional Grammys. The band has received three (3) American Music Awards nominations and six (6) MTV Video Music Awards nominations. Overall, Dave Matthews Band has received six (6) awards from twenty-eight (28) nominations. In 2019, the Dave Matthews Band was nominated for induction into the Rock and Roll Hall of Fame.[4] Defendant TINSLEY

---

[2] *Celebrity Net Worth*, https://www.celebritynetworth.com/richest-celebrities/rock-stars/boyd-tinsley-net-worth/#What%20Is%20Boyd%20Tinsley's%20Net%20Worth? (site visited 9.12.2023)

[3] *Wikipedia*, https://en.wikipedia.org/wiki/List_of_awards_and_nominations_received_by_Dave_Matthews_Band (site visited 9.12.2023).

[4] *Wikipedia*, https://en.wikipedia.org/wiki/List_of_awards_and_nominations_received_by_Dave_Matthews_Band (site visited 9.12.2023).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

performed on all ten (10) of DMB's studio albums,[5] and its fourteen (14) live albums, as well as composed the music for and shared song-writing credits on several of the band's top-of-the-chart singles, including Defendant TINSELY and fellow DMB band-member, Peter Griesar, sharing song-writing credits with Dave Matthews on the song "So Much to Say," which won the band its first Grammy Award in 1997 (won for "Best Rock Performance by a Duo or Group with Vocal" at the 39th Annual Grammy Awards in 1997).  After Defendant TINSLEY joined the DMB in 1992, the band went on to release ten (10) studio albums, eighty-five (85) live albums, three (3) compilation albums, eight (8) video albums, two (2) extended plays, thirty-six (36) singles (including one as a featured artist), and twenty-one (21) music videos. DMB has sold over 33 million albums in the United States.[6]

o   Defendant TINSLEY composed the music for and received co-song-writing credits with members of the DMB for nineteen (19) of the band's top-of-the-charts singles, including:

- "41;"

- "American Baby;"

- "Everybody Wake Up (Our Finest Hour Arrives);"

- "Funny the Way It Is;"

- "Pig;"

- "Proudest Monkey;"

- "Too Much;"

- "Why I Am;"

- "Grux;"

- "Shake Me Like a Monkey;"

- "Funny the Way It Is;"

- "Lying in the Hands of God;"

- "Why I Am;"

- "Drunken Soldier;"

---

[5] *Wikipedia,* https://en.m.wikipedia.org/wiki/Boyd_Tinsley (site visited 9.12.2023).
[6] *Wikipedia,* https://en.m.wikipedia.org/wiki/Dave_Matthews_Band_discography (site visited 9.12.2023).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

- ▪ "Can't Stop;"

- ▪ "Baby Blue;"

- ▪ "Snow Outside;" and

- ▪ "Idea of You".

- ▪ He also co-wrote the Jurassic 5 song "Work It Out", and a song which he co-wrote, "Break Free", appeared on DMB's 2023 album "Walk Around the Moon."

- In addition to his work with DMB, Defendant TINSLEY has had several other successful projects, including:

  o In 2000, made a guest appearance on The Getaway People's second album, Turnpike Diaries[7];

  o In 2003, Defendant TINSLEY released a solo album, "True Reflections," featuring the title track he had written over a decade earlier. Defendant TINSLEY was the principal songwriter of the album, which reached #3 on the Billboard Internet Sales chart;[8]

  o On March 20, 2009, Defendant TINSLEY appeared with former U.S. poet laureate, Rita Dove, at the Paramount Theater in Charlottesville when she launched her poetry book, <u>Sonata Mulattica</u>, about 19th-century violin virtuoso, George Bridgetower; Defendant TINSLEY is mentioned in the first poem in the book, "The Bridgetower." He composed and performed a musical piece for the event, read a poem from the book and discussed with Dave Matthews his musical life and the importance of communities cultivating classically trained African American musicians.[9]

  o Defendant TINSLEY was the producer, writer and composer for the 80-minute cinematic opera, "Faces in the Mirror," in which he also appeared as an actor. The film premiered at the Woodstock Film Festival on October 13, 2012;[10] and

---

[7] *Wikipedia,* https://en.wikipedia.org/wiki/Boyd_Tinsley#Other_work [*citing* Bessman, Jim (May 27, 2000), "Getaway People Tour For 2nd Columbia Set". *Billboard.* 112 (22):15]. Site visited 9.12.2023.

[8] *Wikipedia,* https://en.wikipedia.org/wiki/Boyd_Tinsley#Other_work (*citing "Boyd Tinsley: 'True Reflections'". NPR.org. - August 2003*) (site visited 9.12.2023).

[9] *Wikipedia,* https://en.wikipedia.org/wiki/Boyd_Tinsley#Other_work (*citing "Inside the Word". University of Virginia Magazine. Summer 2009. Archived from the original on August 28, 2011. Retrieved May 3, 2012)* - Site visited 9.12.203.

[10] *Wikipedia,* https://en.wikipedia.org/wiki/Boyd_Tinsley#Other_work [*citing Allen, Jim. "Five Questions with..." filmmakermagazine.com. Filmmaker Magazine. Retrieved July 26, 2023. "Faces in the Mirror (FacesFilm) on Twitter" (Archived from the original on January 9, 2013; Retrieved December 10, 2012)].* Site visited 9.12.2023.

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **19** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

o   In August 2015, Defendant TINSLEY formed the band "Crystal Garden" with Plaintiff WINN, Mycle Wastman, Charlie Csontos and Matt Frewen. For two (2) years, he looked for a specific group of musicians who would form a modern-day rock band. On the forming of the band, Defendant TINSLEY commented:

▪   "The band was an idea I had maybe three years ago. I really wanted to create a young rock band – not a pop band – but a real rock band that had the same sensibility that rock from the 1960s and 1970s had. You know, something rocking from the heart and expressing something real."

o   In their first week of recording sessions at Defendant TINSLEY's studio in Virginia, Crystal Garden tracked the bulk of their first studio album, "Let The Rocks Cry Out," which Defendant TINSLEY produced. The album was released digitally on all platforms March 14, 2017, and physically on April 22, 2017. The band appeared on numerous morning shows.[11]

*  *  *  *  *  *  *

• At the Parties' April 18, 2023 mediation, Counsel for Defendant TINSLEY countered the Plaintiff WINN's above assertions regarding Defendant TINSLEY'S financial status, arguing that that Defendant TINSLEY's financial resources were "greatly reduced" following: (1) his 2018 divorce from his wife of 18 years, Anne-Hudson "Emily" LePere (from which his now ex-wife was awarded approximately 50% of Defendant TINSLEY's net worth); (2) the 2019 Settlement Agreement with Plaintiff WINN for claims of sexual harassment; (3) Defendant TINSLEY thereafter being fired from DMB in 2019; and (4) in November 2019, Defendant TINSLEY having to sell his 52-acre $3 million family estate, which was located in North Garden, Virginia. At the conclusion of the April 18, 2023, mediation, Counsel for Defendant TINSLEY agreed to send the Plaintiff WINN and mediator, Teresa Wakeen, details regarding Defendant TINSLEY's financial resources. As of today February 21, 2024, Counsel for Defendant TINSLEY has not followed through on his April 18, 2023, agreement to send the Plaintiff WINN details regarding Defendant TINSLEY's financials.

---

[11]   *Wikipedia,* https://en.wikipedia.org/wiki/Boyd_Tinsley#Other_work [*citing "Cultivating The Sound: Boyd Tinsley Discusses DMB, Crystal Garden & More"* (May 5, 2016). FOX. *"Crystal Garden live performance on Good Day LA."* Kirby, Brendan (March 24, 2017). *"Crystal Garden featuring Boyd Tinsley Returns To Fete!.""Crystal Garden (violin player Bord Tinsley of the Dave Matthews Band) stops by the WGN Morning News"* (April 20, 2017)]. Site visited 9.12.2023.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

# VI.  **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**VIOLATION OF WA STATE LAW**

6.1     Plaintiff WINN incorporates by reference each and every allegation set forth above in paragraphs 1.1 through 5.2 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

**A.     Legal Principal of Contract Interpretation**

6.2     The Parties, for valuable consideration, entered into a valid and enforceable contract when they mutually signed the 2019 Settlement Agreement.  Defendant TINSLEY breached the 2019 Settlement Agreement when, on February 22, 2022, he created and shared content regarding Plaintiff WINN in violation of the 2019 Settlement Agreement, first posted by Defendant TINSLEY on his Facebook page *(Attached hereto as Exhibit 3 - Tinsley Facebook Post date stamped February 22, 2022)*, then "shared" the same day (February 22, 2022) by Defendant TINSLEY to his Twitter page, for which he had 98,000 "Twitter followers" at the time who could view his post. His statements included numerous untrue disparaging attacks regarding and against Plaintiff WINN. *Attached hereto as Exhibit 4 – Copies of Facebook posts that were also shared to his Twitter Account.* These attacks include, but are not limited to, the below nine (9) written remarks identifying Plaintiff WINN:

- "This accusation is a total lie."

- "There is a pattern of me being victimized by mentally unstable and money grabbing people."

- "This latest individual that I am speaking of concocted this incredulous story of sexual harassment, which is a complete and total lie.

- "This is from the mind of a very troubled and disturbed person."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

- "On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind."

- "He said he felt like hurting someone. Never did I think it would be me."

- "He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food, and playing pinball at an arcade in the neighborhood.

- "Music went out the window and it was all about getting drunk and playing pinball."

- "I never harassed this individual; this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual."

These statements were posted on Facebook initially, February 22, 2022, and then later, separately, on Twitter. These items may have also been posted or discussed by Defendant TINSLEY on Instagram, TikTok, or any of several other social media platforms that may have been altered or erased since posting. Discovery will allow us to seek that information.

6.3     Under Washington State law, breach of contract occurs when a party to a valid contract fails to adhere to the duties imposed by that contract, and another party is damaged by that failure. Here, Defendant TINSLEY plainly acted outside the boundaries of a basic settlement agreement by discussing the circumstances around the lawsuit and by publishing disparaging remarks about Plaintiff WINN.

6.4     Under Rev. Code of Wash. §4.16.040(1), "an action upon a contract in writing, or liability express or implied arising out of a written agreement" must be brought no later than six (6) years after the date of the breach. Here, the 2019 Settlement Agreement is a "contract in writing" and, thus, a cause of action for a party's breach of that contract "must be brought no later than six (6) years after the date

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

of the breach." In February 2022, Defendant TINSLEY breached the 2019 Settlement Agreement that he signed with Plaintiff WINN; Plaintiff WINN is bringing this cause of action for breach within the statutorily required six (6) years following the date of Defendant TINSLEY'S February 2022 breach.

6.5    The court interprets settlement contracts the same way that it interprets other contracts. *McGuire v Bates,* 169 Wn.2d 185, 234 P.3d 205 (2010). In discussions with opposing counsel, much has been made of the fact that Washington follows the "single publication rule" for defamation. In doing so, counsel for Defendant TINSLEY would moderate damages by claiming that each disparaging remark made is part of a total picture that was used to defame Plaintiff WINN. Here, it is simply enough to state that we are dealing specifically with the breach of our 2019 Settlement Agreement; a valid contract. We are not dealing with defamation, or the "single publication rule."

6.6    The touchstone of contract interpretation is the parties' intent. *Tanner Elec. v. Puget Sound*, 128 Wn.2d 656, 911 P.2d 1301 (1996). In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Scott Galvanizing v. Nw. Environservices,* 120 Wn.2d 573, 844 P.2d 428 (1993) (*quoting Berg v. Hudesman,* 115 Wn.2d 657, 801 P.2d 222 (1990). Here, Plaintiff WINN and Defendant TINSLEY knew the valuation of their contract. The high dollar amount paid by Defendant TINSLEY reflected the value of Plaintiff WINN adhering to the terms of non-disclosure and non-disparagement. All parties understood the difficulty in valuing a breach in this matter, but agreed that a reasonable

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **23** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

amount, in relation to the parties' valuation of the matter, as a whole, could be considered liquidated damages.

6.7    When interpreting contracts, we will normally give words their "generally and ordinary accepted meaning and connotation" unless otherwise defined by the parties or the dictates of the context. *Blue Mt. Mem'l v. Dep't of Licensing*, 94 Wn. App. 38, 971 P.2d 75 (1999) (following *Keeton v. State*, 34 Wn. App. 353, 661 P.2d 982 (1983)). This is an important aspect because "disparagement" does not have the same definition as "defamation." Plaintiff WINN and Defendant TINSLEY knew, and the 2019 Settlement Agreement reflects, that they were trying to do two (2) basic things with this agreement. First, they wanted the matter to be over publicly. They wanted to ensure that the silence of the other on the matter was complete and codified. Second, they wanted to make sure that neither party even took the time to discuss anything about the other, with a most specific emphasis on the parties not disparaging one another publicly in any manner. This violation of the non-disparagement clause, in particular, is egregious and comes out of left field, as Plaintiff WINN had only recently been able to settle back into a normal existence.

6.8    Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 334 P.3d 116 (2014)

6.9    Subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 202 P.3d 960 (2009)

6.10    The court will adopt the interpretation that is most reasonable and just. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 334 P.3d 116 (2014)

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.11    In our instance the parties' intentions are clear. The only reasonable reading of the contract provides liquidated damages to the aggrieved party when the other party violates non-disclosure and/or non-disparagement agreements made in the 2019 Settlement Agreement.

### B.    Definition of "Violation" for Imposing Liquidated Damages

6.12    For the purpose of determining the meaning of "violation" in the 2019 Settlement Agreement, it is important to place the term within the context of the liquidated damages provision it is a part of. In Washington, a provision for liquidated damages will be upheld unless "it is a penalty or otherwise unlawful." *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 881 P.2d 1010 (1994)

6.13    Liquidated damages agreements "fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss" should be enforced. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 881 P.2d 1010 (1994)

6.14    The injured party does not have to show actual loss, except to show what loss was anticipated. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 881 P.2d 1010 (1994)

6.15    Here, there was clearly a thing of value to be protected by both parties. In the case of Defendant TINSLEY, his income and potential income are both able to be affected by publication of things the 2019 Settlement Agreement keeps from being public. From Plaintiff WINN'S perspective, exactly the harm we had anticipated is occurring. He has received threatening correspondence from people he does not know and has been subjected to massive online discussions (*Attached hereto as Exhibit 4 – Copies of Facebook posts that were also shared to his Twitter Account*). It is exactly what the 2019 Settlement Agreement was intended to avoid, and the damages from such an occurrence are naturally intangible (having the person who sexually assaulted you later violate the terms of your agreement and post disparaging remarks about you on social media, bringing your worst memories again to the forefront of not only your mind but to the minds of millions).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.16    It cannot be overstated that this was not a discussion amongst amateurs with decisions made lightly, and that Defendant TINSLEY and his array of counsel understood both the value of what they were protecting and the actual harm a violation on the part of Defendant TINSLEY could cause Plaintiff WINN, and vice versa.

### C.    Liquidated Damages

6.17    Liquidated damages provisions are enforceable if (1) the amount so fixed is a reasonable forecast of just compensation for the harm caused by the breach, and (2) the harm caused by the breach is incapable or very difficult of accurate estimation. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 881 P.2d 1010 (1994)

6.18    Reasonableness of the forecast will be judged as of the time the contract was entered into. *Walter Implement v. Focht*, 107 Wn.2d 553, 730 P.2d 1340 (1987)

6.19    Here, at the time of the contract was signed, both parties understood the huge amounts of money that were on the line for Defendant TINSLEY and the huge threat to reputation which Defendant TINSLEY could impose on Plaintiff WINN via his fame and social media connectivity. Nearly one-hundred thousand (100,000) of Defendant TINSLEY'S social media followers were directly introduced to the private information intended to be kept as private, personal knowledge by the 2019 Settlement Agreement. And as every post made by a person-of-note in social media gets re-posted and shared, it is impossible to ascertain how many millions of people have likely accessed the information the 2019 Settlement Agreement was meant to keep private.

6.20    Determination of whether the test is met depends on a case-by-case evaluation of the facts and circumstances of each case. *Walter Implement v. Focht*, 107 Wn.2d 553, 730 P.2d 1340 (1987)

6.21    In our situation, we seem to have an even more intangible set of damages to assess, which makes the case for liquidated damages even stronger. We have knowledge of the parties'

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

valuation of the matter. At the heart of the matter is the fact that the 2019 Settlement Agreement was the only way to protect both parties' interests in a matter that was highly valued by both parties (especially for the agitating party here).

6.22    A recent unpublished opinion (*NW Motorsports, Inc. v. SUNSET Chevrolet, Inc.*, No. 52799-5-II (Wash. Ct. App. Oct. 13, 2020)) gives a full discussion of recent matters around liquidated damages from publication of items online and in social media. Relying on *Wallace*, it states: "Liquidated damages are based on anticipated losses resulting from the improper conduct. As it applies to this case, each day that [Defendant] had open bids on a prohibited word there was the possibility [of a violation]...Therefore, it is entirely reasonable to apply the liquidated damages provision through a "per-day" definition of violation. Because a "per-day" definition of violation results in a reasonable application of the liquidated damages provision, the superior court did not err in interpreting the settlement agreement."

6.23    Plaintiff WINN does not contend that the daily violation is relevant to our situation, but it is important to note that our liquidated damages were agreed to in anticipation of the actual level of damages that either party could expect from a breach.

### D.    Disparagement Rather Than Defamation

6.24    As noted earlier, it is important to make a distinction between disparagement causing a breach of contract and defamation as an independent action. The historical difference can be noted in *Waechter v. Carnation Co.*, 5 Wn. App. 121, 485 P.2d 1000 (1971), where the court discusses defendants contention that in a disparagement case the burden of proving the statement is false is on the plaintiff, stating the contention "would be correct if this were only a disparagement case" and going on to note that jury instructions had already left only the question of whether statements made had injured the plaintiff's reputation in their trade or business, in which event the words were

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

actionable per se. This is reflective of the Court noting that defamation is a specific cause of action, while disparagement issues generally arise out of an agreement not to disparage.

6.25    *TES Franchising, LLC v. Feldman*, 286 Conn. 132, 943 A.2d 406 (Conn. 2008), bears some likeness to our facts, where the plaintiff (TES) found the defendant had violated their settlement agreement by disclosing confidential information and making disparaging remarks. In that instance the court found that none of the defendant's arguments were valid. These included: (1) the settlement agreement was void as against public policy because it prevents the defendant from contacting state regulator's about allegedly illegal business practices; (2) immunity should be based on statements being made to state agencies; (3) the lawsuit is an invalid strategic lawsuit against public participation (SLAPP); (4) the settlement agreement provision for liquidated damages is a penalty; and (5) plaintiff breached the agreement first.

6.26    While the trial court did not articulate the merits of each claim in its opinion, it is assumed that an appellate court may presume a trial court has examined all evidence.

6.27    In that instance it was shown that signing of items that show an understanding that there is a confidentiality clause and non-disparagement clause do in fact give rise to probable cause when defendant violates these written terms. This is clear cut in our current matter.

6.28    *TES Franchising* involves a prejudgment remedy situation, where the trial court simply awarded $49,000.00 five (5) times (for $245,000) for what it considered five (5) different breaches that had been claimed. The case concluded that in a pretrial remedy the trial court can rely on liquidated damages clauses to estimate the size of the remedy.

6.29    Further case law from other jurisdictions may prove helpful as there is limited case law (in general) around the topics of disparagement and liquidated damages.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.30    The court in *Fisher v. BioZone Pharms., Inc.*, No. C 12-03716 WHA (N.D. Cal. Mar. 11, 2013) made an order enforcing settlement (Case No 12-cv-03716-LB) that made it clear that "the settlement's non-denigration term does not implicate First Amendment rights. See *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996)... Nor is the point whether the defendants have established a tort such as defamation. The information that the plaintiff continued to disseminate... are disparaging in the normal sense, and certainly in the broad sense intended by the settlement agreement. Even if what the plaintiff said was old information, and probably even if it was true, this still breached the broad mandate of the settlement agreement's non-disparagement clause."

6.31    This is an important aspect as violation of a non-disparagement agreement is its own monster. Also important in *Fisher* is the reference to "further disparaging comments... [and that] further violations of the settlement agreement will be considered both a breach of the settlement agreement and contempt of court. While defamation is to be looked at as the totality of any single false publication, disparagement is nothing more than its dictionary definition.

6.32    Another out of jurisdiction case is *Eichelkraut v. Camp*, 236 Ga. App. 721, 513 S.E.2d 267 (Ga. Ct. App. 1999) which provides the following guidance:

> In construing contracts, we are bound to ascribe to words "their usual and common signification." OCGA § 13-2-2(2). "The term, 'disparagement,' is defined in Webster's Third New Intl. Dictionary (1961) as 'diminution of esteem or standing and dignity; disgrace ..., the expression of a low opinion of something; detraction.'" *City Group v. Ehlers*, 198 Ga. App. 709, 710(1), 402 S.E.2d 787 (1991). See also Webster's New Universal Unabridged Dictionary (2nd ed.1983) (defining disparagement as "anything that detracts or discredits"). *Eiche/kraut v. Camp*, 513 S.E.2d 267, 236 Ga. App. 721 (Ga. App. 1999).

6.33    *Halco v. Davey*, 919 A.2d 626, 2007 Me. 48 (Me. 2007) is a Maine case that deals with a non-disparagement agreement. It states that, "The court also properly concluded as a matter of law that the parties' agreement not to "disparage or discredit" each other was unambiguous. The plain

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

and ordinary meanings of the words "disparage or discredit" require a specific attack on a person's reputation or credibility. The dictionary definition of disparage is: "1. To speak of in a belittling way: DECRY. 2. To reduce in rank or esteem." *Webster's II New Riverside University Dictionary* 387 (1984). The relevant dictionary definition of discredit is: "1. To damage the reputation of: DISGRACE. 2. To cause to be distrusted or doubted." Id. At 384. The statements that the settlement was a "payoff'" that "only promotes more lawsuits" and that the defendants "had beaten this guy the whole way through," when viewed in the light most favorable to Halco, could establish injury to his reputation because the statements can be understood as suggesting that his claim was frivolous." *Halco v. Davey,* 919 A.2d 626, 2007 Me. 48 (Me. 2007)

6.34    *Olson v. Doe* (Cal 2022) is a California Supreme Court case. It states, "the non-disparagement clause must be understood in connection with the media agreement as a whole... with the various individual provisions interpreted together so as to give effect to all." Also in Olson, the parties contracted not to discuss one another with "nongovernmental third parties" and in this instance it was found that such language was intended to stop rumors and gossip spreading, rather than providing release from liability or claims.

6.35    Another case from the Court of Appeals, Third District, *Wentland v. Wass*, 126 Cal.App.4th 1484, 25 Cal. Rptr. 3d 109 (Cal. Ct. App. 2005) clarifies that a person may contract to waive the anti-SLAPP protections. They stated "the Supreme Court majority in *Navellier* had stated that a defendant contracts not to speak or petition has waived the right to anti-SLAPP protection if he later breached the contract. *Navellier v. Sletten*, 106 Cal.App.4th 763, 131 Cal. Rptr. 2d 201 (Cal. Ct. App. 2003) *Wentland* further states that the parties' agreement to not disparage was breached by negative comments "not because such comments were false... but because they had promised not to continue to make such comments. The cross-complaint sounds in contract, not tort."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.36    In summation, we have a case of breach of contract, defamation and several other claims raised by Defendant TINSLEY'S February 2022 breach of the 2019 Settlement Agreement he signed with Plaintiff WINN. There is no requirement that Defendant TINSLEY'S disparaging remarks be true or false – further, there is no measurement other than that of whether a reasonable person would consider the statements used by Defendant TINSLEY in his February 2022 breach against Plaintiff WINN to be disparaging in the common usage of the term.

## SECOND CAUSE OF ACTION
### DEFAMATION
### A WA STATE TORT

6.37    Plaintiff WINN incorporates by reference each and every allegation set forth above in paragraphs 1.1 through 5.2 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

6.38    Defamation happens when someone (here Defendant TINSLEY) makes a false statement about another person (Plaintiff WINN) - verbally or in writing (here, in writing) - that damages the reputation of and identifies the Plaintiff.  Washington State law supports that identification can occur by naming the plaintiff, showing the plaintiff's image through a photo or drawing, or (like here) by the Defendant's libelous act(s) *describing the plaintiff through recognizable descriptive characteristics*.

6.39    In a defamation action, it is clear that a party need not be identified by name if there is sufficient Personally Identifiable Information ("PII"). "This is not to say that it is necessary that a plaintiff be mentioned by name in order to recover damages, but it is sufficient if viewers, hearers or readers will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed." *Ryan v. Hearst Publ'ns*, 3 Wn.2d 128, 100 P.2d 24 (1940) The court in *Ryan* continues, "We find in *P. Ashley, Say It Safely 30* (3d ed. 1966), the following:  The test is not whom the story intends

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

to name but who a part of the audience may reasonably think is named, not who is meant but who is hit, as one court put it." *Sims v. Kiro, Inc.*, 20 Wn. App. 229, 580 P.2d 642 (1978)

6.40    The statute of limitations for defamation in Washington is two (2) years. See Wash. Rev. Code § 4.16.100. Here, Plaintiff WINN brings this action within two (2) years of Defendant TINSLEY'S two (2) February 22, 2022, social media posts that each included nine (9) untrue disparaging comments that included Personally Identifiable Information ("PII") regarding Plaintiff WINN. *See* ¶ 4.8 above, as well as *attached hereto as Exhibit 4 - "Copies of Facebook posts that were also shared to his Twitter Account."*

6.41    Verbal defamation is called "slander." Written defamation is called "libel." Here, Defendant TINSLEY libelously defamed Plaintiff WINN through his February 22, 2022, Facebook & Twitter posts that each included nine (9) or more disparaging statements identified herein by Plaintiff WINN as disparaging to him and that clearly identified him through "recognizable descriptive characteristics" and "Personally Identifiable Information" ("PII").

6.42    A plaintiff suing for online defamation must show that the defendant:

      6.42.1  Made a false statement of fact;

      6.42.2  The statement was made to someone other than the plaintiff;

      6.42.3  The statement harmed the plaintiff's reputation, and

      6.42.4  The defendant was (if a private figure) "negligent" and careless about whether his statement(s) were true or false or (if plaintiff is a public figure), that the Defendant acted with malice or recklessness when he published the false statement(s) about Plaintiff, knowing the statement(s) were false and/or with reckless disregard for the truth of the statement(s). *Mark v. Seattle Times*, 96 Wn.2d 473, 635 P.2d 1081 (1981)

6.43    A text message dated November 16, 2022, between Charlie Csontos (the bass player from Crystal Garden) and a fan from the Crystal Garden band days openly states that Defendant TINSLEY has done similar unethical and/or illegal things to him, and the entire band he had cultivated. The

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **32 of 54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

indication from this text is that Defendant TINSLEY has lied in his posts regarding Plaintiff WINN. This evidence supports the fact that Defendant TINSLEY knew he was lying when posting multiple falsehoods and otherwise disparaging information and was doing so with ill intent.



PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **33** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

bassface16

I don't talk to ANYONEA ABOUT THIS. Because clearly. But Boyd fucked us all over and fucked our lives up hard

I trust you not to tell people or post that

Yeah I know

Cuz I still don't want him to suffer anymore regardless of how he made me

It's why I have never said anything, but, it really really really really destroyed everything I spent a decade working for

And I almost killed myself teice

Twice because of it

I'm so sorry

The day I met him , I got a weird vibe with him

I'm sorry that you had  to deal with him

He isn't well

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com



No he isn't

And that's why I was able to honestly accept it all and just move on healthily

But it took a while and, I'm not where I should be because I was set back 4 years

But hey, figured out of all the people who deserve to know it's you

And I trust you

And I should be able to share my pain with others who have shared theirs w me.



While it's not exactly the same experience. I know how it is. I have PTSD from trauma 10 years ago

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.44    Here, we have a trove of evidence from all over the internet that would lead any reasonable person to be able to identify Plaintiff WINN as the subject of disparagement and defamation. Our 2019 Settlement Agreement with Defendant TINSLEY states that no disparaging remark shall be made regarding the opposing party by either party, and that each such disparaging remark shall be subject to liquidated damages. This has nothing to do with the single publication rule, and both parties were entirely competent to make and enter into such an agreement. This is the contractual clause which we determine to have been violated.

6.45    Here, Plaintiff WINN meets these four (4) elements of a defamation claim against Defendant TINSLEY, as Defendant TINSLEY'S February 22, 2022, defamatory comments posted to his Facebook and Twitter pages:

6.45.1    **Made not one (which is all that is required under Washington State law),** _**but eighteen (18), false statements of fact**_ regarding Plaintiff WINN (see Paragraph 4.8 above and _attached hereto as Exhibit 4 – "Copies of Facebook posts that were also shared to his Twitter Account."_);

6.45.2    **The statement was made to someone other than the plaintiff** (here, Defendant TINSLEY'S February 22, 2022, posts to his Facebook and Twitter pages that included eighteen (18) defamatory untrue remarks about (and which identified) Plaintiff WINN were "made to someone other than the plaintiff" _(i.e._, Defendant TINSLEY'S Facebook & Twitter followers, which includes persons "other than the Plaintiff WINN");

6.45.3    **The statement harmed the Plaintiff's reputation.** Here, Defendant TINSLEY'S February 22, 2022, Facebook and Twitter defamatory post that included eighteen (18) untrue defamatory remarks about Plaintiff WINN harmed Plaintiff WINN's reputation. In 2021, Plaintiff WINN had finally come out of the darkness of his PTSD caused by Defendant TINSLEY'S sexual harassment for which the Parties settled Plaintiff WINN's lawsuit with their 2019 Settlement Agreement. Plaintiff WINN had started to play his trumpet again for the first time in years, had started to play live shows again, and was excited to explore his lifelong dream of doing stand-up comedy. Defendant TINSLEY'S February 22, 2022, defamatory social media posts regarding Plaintiff WINN re-ignited the "pro-Tinsley" social media world of "Plaintiff WINN haters" and devout Defendant TINSLEY followers, re-opening the open sores of Plaintiff WINN's emotional distress caused by the years of Defendant TINSLEY'S sexual harassment against him. Plaintiff WINN was again thrust into the limelight of social media through the hateful and

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

dishonest social media voice of Defendant TINSLEY'S via his February 22, 2022, defamatory social media posts regarding Plaintiff WINN.

6.45.4  **The defendant was (if a private figure) "negligent"** (careless) about whether the statement was true or false or (**if plaintiff is a public figure), that the defendant acted with malice or recklessness** when he published a false statement about plaintiff knowing the statement was false or with reckless disregard for the truth of the statement.

6.45.5  Here, Plaintiff WINN argues herein in the alternative (and the evidence supports) **BOTH** that:

6.45.5.1  If Plaintiff WINN is a private figure, Defendant TINSLEY was "negligent" (careless) about whether the nine (9) untrue statements he published about Plaintiff WINN in his February 22, 2022, social media posts were true or false; and

6.45.5.2  If Plaintiff WINN is a public figure or limited purpose public figure, that Defendant TINSLEY acted with malice or recklessness when he published not one, but nine (9) false statements that identify Plaintiff WINN, knowing the nine (9) statements were false or with reckless disregard for the truth of each of the nine (9) remarks (*see Paragraph 4.8 above and attached hereto as Exhibit 4 – "Copies of Facebook posts that were also shared to his Twitter Account"*).

6.46  **Issues of Public & Private Concern**.  Just as there are public and private figures in U.S. defamation law, there are also issues of public and private concern. It is in society's best interest to discuss some issues of public concern without fear of censorship or legal liability. As established in *Thornhill v. Alabama*, 310 U. S. 88 102 (1940).:

"Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period."

Id. In one foundational 1971 case, George Rosenbloom was arrested on obscenity charges for distributing nudist magazines in the Philadelphia area. *Rosenbloom v. Metromedia, Inc.*, 403 US 29 (1971). The local news reported on his arrest but did not use the words "allegedly" or "reportedly"—and other reporters called Rosenbloom a "smut distributor."  The Supreme Court held that the story was a matter of public

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page 37 of 54

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

concern, so even though Rosenbloom was a private citizen, the "actual malice" standard applied to the case. Id.

6.47    In another case, *Time, Inc. v. Hill*, 385 US 374 (1967), the magazine publisher was accused of defamation when they reported that a stage play about a kidnapped family was based on the real experience of James Hill and his family. In the play, the family suffered extreme abuse at the hands of their kidnappers—but in reality; Hill and his family were treated courteously. Hill alleged that Life Magazine gave a false impression that the play mirrored his family's experience. But the court ruled in the magazine's favor since the article was "a subject of legitimate news interest" at the time it was published, and it was "published in good faith without any malice whatsoever." Id.

6.48    "It is not necessary to 'state in the complaint any extrinsic facts,' but the Plaintiff is at least required to 'state generally that the [defamatory matter] was published or spoken concerning the Plaintiff.' See *Rorebeck v. Franciscan Health*, Case No. 3:18-CV-05423 (W.D. Wash. Apr. 1, 2019) (*citing* RCW 4.36.120). RCW 4.36.120 requires that, when bringing a claim for libel or slander, the Plaintiff must plead as follows:

> *"In an action for libel or slander, it shall not be necessary to state in the complaint* any extrinsic facts, for the purpose of showing the application to the plaintiff, of the defamatory matter out of which the cause arose, but it shall be sufficient to state generally*, that the same was published or spoken concerning the plaintiff;* and if such allegation be controverted, the plaintiff shall be bound to establish on trial that it was so published or spoken."

RCW 4.36.120 (emphasis added). In *Rorebeck v. Franciscan Health*, Case No. 3:18-CV-05423 (W.D. Wash. Apr. 1, 2019), Plaintiff Rorebeck's defamation claim "was based on some unidentified false statement that some unidentified Defendant allegedly put in her employment file." *Id*. "Defendants argued that Rorebeck's defamation claim [was] not plausible because she ha[d] not identified the statement, the speaker, or any third party to whom it was published." *Id. (citing* Dkt. #45 at 6). The

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

appellate court denied the Defendant's Motion to Dismiss the defamation claim, holding that "[d]efendants [were[ correct that the claim as currently pled [was] not plausible because there [was] no mention that any defamatory statements were spoken, sent, or forwarded to other employers or anyone else." *Id.* "But the corrective action is for Rorebeck to amend it, if she can, to address and resolve these deficiencies." *Rorebeck v. Franciscan Health*, CASE NO. 3:18-cv-05423 (W.D. Wash. Apr. 1, 2019) Here, Defendant TINSLEY's defamatory comments were published on Facebook, then shared to his Twitter page, from which (in accordance with RCW 4.36.120), Plaintiff WINN has identified herein the statement (see ¶ 4.5 above[12]), the speaker (Defendant TINSLEY posted the defamatory remarks on his clearly identified Facebook and Twitter social media pages), AND any third party to whom it was published (Defendant TINSLEY'S Facebook friends and his 98,000 Twitter followers).

      6.49   **Public vs. Private Figures**. In legal terms, a public figure is an individual who is at the forefront of public issues or performs a prominent role in society. Those with a certain amount of fame or renown can also be considered public figures. For example, the following people would be considered public figures in a defamation law case:

- Government officials and politicians,
- Prominent business leaders,
- Celebrities, and
- Famous sports figures and athletes.

Washington State takes the idea of public figures one step further by expanding the public figure classifications into three (3) types: public officials, all-purpose public figures, and limited-purpose public figures.

---

[12] See ¶ 4.8 above and *Attached hereto as Exhibit 4 – Copies of Facebook posts that were also shared to his Twitter Account.*

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.50    **The Difference Between All-Purpose Public Figures & Limited-Purpose Public Figures?**  Aside from public officials, other public figures are split into two (2) categories: all-purpose and limited purpose. An all-purpose public figure has achieved "pervasive fame or notoriety," like a traditional celebrity. On the other hand, a limited-purpose public figure is injected into "a particular public controversy" and thereby becomes a public figure for a limited range of issues.

6.51    A limited-purpose public figure can be voluntarily or involuntarily drawn into the public eye. Examples of voluntary limited-purpose public figures include minor athletes or actors, social activists, or those who enter into the public debate about a controversial topic. An involuntary limited-purpose public figure did not choose to become involved in a controversy or important event.  In the significant court case of *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736 (D.C. Cir. 1985), the Plaintiff (Merle Dameron) was the sole air traffic controller on duty the day of a plane crash near Dulles airport in 1974. While he was never found at fault for the crash, local magazine *The Washingtonian* issued claims that he was partly to blame for the passengers' deaths.  The court found that while Dameron did not "inject" himself into the public debate, he did become involved in this public affair without his consent. He was, therefore, considered a limited-purpose public figure. *Dameron vs. Washington Magazine, Inc.*, 779 F.2d 736 (D.C. Cir. 1985) established a three-part framework for determining whether an individual is a limited-purpose public figure:

> 1. There is a public controversy;
>
> 2. The plaintiff played a central role in the controversy; and
>
> 3. The defamation was pertinent to the plaintiff's involvement in the controversy.

6.52    Washington courts rely heavily on the "vortex" notion of a limited-purpose public figure. See *Camer v. Seattle Post-Intelligencer*, 45 Wn. App. 29, 723 P.2d 1195 (1986). The definition of a limited-purpose public figure is covered in the general Actual Malice and Negligence section of this

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

guide under the limited-purpose public figures discussion (scroll down to the topic heading "limited-purpose public figures"). The guide states a person becomes a limited-purpose public figure only if he voluntarily "draw[s] attention to himself" or uses his position in the controversy "as a fulcrum to create public discussion." *Wolston v. Reader's Digest Association*, 443 U.S. 157, 168 (1979). He must, therefore, "thrust himself into the vortex of [the] public issue [and] engage the public's attention in an attempt to influence its outcome." See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974).

6.53    For example, a businessman who was involved in a commercial real-estate development project was considered a limited-purpose public figure in a defamation lawsuit against a newspaper which had printed articles about the development project that stated he was a tax felon. The court reasoned the businessman was a limited-purpose public figure because he "thrust himself into the vortex of [the] public issue" when he sent letters to residents of the real-estate development area telling the residents about the development project and advising them, he would be updating them on its progress. *Clardy v. Cowles Publ'g*, 81 Wn. App. 53, 912 P.2d 1078 (1996)

6.54    **A public figure,** on the other hand, is someone who, although not a government official, still has power and influence over society. There are two (2) types of public figures: all-purpose public figures and limited-purpose public figures.  Public figures, like politicians and celebrities, have to show more than negligence. Public figures have to show that the defendant acted with "actual malice." Actual malice means the Defendant made a false statement knowing it was false or with reckless disregard for the truth of the statement. All-purpose public figures "occupy positions of such pervasive power and influence that they are deemed public figures for all purposes." *Gertz v. Welch*, 418 U.S. 323 (1974). Typically, these are individuals with widespread fame, such as celebrities and professional athletes. Like public officials, plaintiffs classified as all-purpose public figures must show that the Defendant acted with actual malice in publishing the defamatory statement.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.55    Here, Plaintiff WINN could be considered a public figure, as he was arguably a "celebrity" (however, only for the two short years that he was a band member of Defendant TINSLEY'S "Crystal Garden" band from 2014-2016).

6.56    **Alternatively, limited-purpose public figures** "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Welch*, 418 U.S. 323 (1974).   Typically, these are individuals who have gained prominence in a particular field or in connection with a particular controversy. For limited-purpose public figures, the standard of actual malice only applies to the area(s) that make the individual a public figure. For example, a minor-league athlete falsely accused of doping would need to prove actual malice—but not if the defamatory statement pertains to his private life instead.

6.57    Here, Plaintiff WINN could be considered a limited-purpose public figure, as he arguably "thrust [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved" when he filed in 2018 (and very publicly settled in 2019) his lawsuit against his former employer (Defendant TISNLEY), asserting claims of enduring years of workplace sexual harassment from Defendant TINSLEY while Plaintiff WINN was employed from 2014-2016 as a band member of Defendant TINSLEY'S band, "Crystal Garden."

6.58    **A Private Figure**, in terms of defamation law, is not in the public eye. Unlike public figures, they have not been drawn into a public controversy—whether voluntarily or involuntarily—and they are not a public official or a celebrity. Since private figures have not entered the public spotlight through their career or role in a public controversy, the law aims to protect their privacy. Private individuals, therefore, have a less strict burden of proof in a defamation matter. A private figure plaintiff must only prove that the Defendant acted with ordinary negligence—not actual malice or reckless

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

disregard. "Ordinary negligence" means the Defendant did not act with the caution an ordinary person would take in a similar situation.

6.59    Here, Plaintiff WINN could arguably be a private figure, public figure or a limited-purpose public figure. This is common in defamation cases, as there is gray area and overlap between the three (3) types of Plaintiff public figures. As such, Plaintiff WINN argues herein in the alternative (and the evidence supports) that:

> 6.59.1.  If Plaintiff WINN is found by the court to be a private figure, Defendant TINSLEY was "negligent" (careless) about whether the nine (9) untrue statements he published about Plaintiff WINN in his February 22, 2022, social media posts were true or false; OR

> 6.59.2.  If Plaintiff WINN is found by the court to be a public figure or limited-purpose public figure, that Defendant TINSLEY acted with malice or recklessness when he published not one, but nine (9) false statements about Plaintiff WINN, knowing the nine statements were false and with reckless disregard for the truth of each of the nine (9) untrue remarks regarding Plaintiff WINN (*see* Paragraph 4.8 above and attached hereto as Exhibit 4 – "*Copies of Facebook posts that were also shared to his Twitter Account*").

* * * * *

6.60    Plaintiff WINN meets the five (5) elements of a claim for defamation:

6.61    First, the above outlined nine (9) or more disparaging statements spread by Defendant TINSLEY about Plaintiff WINN through his February 22, 2022, Facebook & Twitter posts were and are false and untrue.

6.62    Second, the above-outlined statements and rumors spread by Defendant TINSLEY were and are unprivileged communication.

6.63    Third, Defendant TINSLEY was negligent, reckless, malicious and/or intentional in making the defamatory statements.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.64    Fourth, the statements by Defendant TINSLEY were "published to other persons" and "identified" Plaintiff WINN through "recognizable descriptive characteristics" and/or "Personally identifiable Information (PII);" and,

6.65    Fifth, as a result of Defendant TINSLEY'S libelous defamation, Plaintiff WINN has been damaged in an amount to be determined at trial.

6.66    **DEFENSES TO DEFAMATION CLAIMS**.  In Washington State, truth is an absolute defense against libel and slander. If a statement is proved accurate, there are no grounds for a defamation claim. Privilege and Section 230 of the Communications Decency Act are also common defenses against slander and libel in Washington.  Section 230 of the Communications Decency Act, passed in 1996, is commonly known as the safe harbor provision.  Section 230 absolves U.S. website operators from liability if third parties use their platforms to post defamation statements.  Here, the nine (9) false statements published by Defendant TINSLEY in his February 22, 2022, Facebook and Twitter posts about Plaintiff WINN are (and the evidence supports) 100% untrue and are malicious in nature. *See ¶ 4.8 above and attached hereto as Exhibit 4 – "Copies of Facebook posts that were also shared to his Twitter Account"*).  As such, Defendant TINSLEY would not prevail in arguing the "truth defense" against Plaintiff WINN's defamation claim, even if Defendant TINSLEY asserts that his February 22, 2022, Facebook and Twitter statements regarding Plaintiff WINN are true statements regarding Plaintiff WINN.

E.    **ADDITIONAL DEFENSES RAISED BY TINSLEY, INCLUDING "The Single Publication Rule;"**

6.67    As of today, the only defense raised by Defendant TINSLEY and his counsel have been that Washington follows the "single publication rule" regarding defamation and that Plaintiff WINN was not personally named in the materials, the publication of which constitute a breach of the 2019 Settlement Agreement.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.68    Insofar as the single publication rule has been noted by counsel for Defendant TINSLEY, we are in complete agreement. The state of Washington does use the single publication rule, meaning that when seeking compensation for damages brought about through defamation, one looks at the totality of any single publication and determines if that publication, as a whole, is defamatory.

6.69    The state of Washington has a clear policy on whether a Defendant has been "named" or not in a publication. It is not necessary "... that a plaintiff be mentioned by name in order to recover damages, but it is sufficient if viewers, hearers or readers will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed." *Ryan v. Hearst Publ'ns*, 3 Wn.2d 128, 100 P.2d 24 (1940) (emphasis added). The test is not who the story intends to name, but who a part of the audience may reasonably think is named [i.e., "not who is meant, but who is hit." *Sims v. Kiro, Inc.*, 20 Wn. App. 229, 580 P.2d 642 (1978)].

6.70    Defendant TINSLEY'S statements in his February 22, 2022, Facebook post and his Twitter "share"/re-post contain enough Personally Identifiable Information (PII) to clearly identify that Plaintiff WINN is the subject of his online attacks. PII is defined as, "any representation of information that permits the identity of an individual to whom the information applies to be reasonably inferred by either direct or indirect means." Following his February 22, 2022, breach, Defendant TINSLEY made statements online, including but not limited to:

6.70.1 Defendant TINSLEY made the following statement in his February 22, 2022, posting. "This whole thing started one day when I asked the band he was in (and that I was supporting) to rehearse for a big show in L.A., however he had been visiting his girlfriend and was under some delusion that I was trying to split them up, which wasn't the case at all."

6.70.2 "He had this crazy idea that I had called the rehearsal in some elaborate plan to separate him from his girlfriend."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.71   Defendant TINSLEY also made multiple references to Plaintiff WINN playing pinball, and to locations where Plaintiff WINN was in local proximity.

6.72   As provided in the attached exhibits, there are a multitude of posts by countless people who discuss Defendant TINSLEY'S 2019 Settlement Agreement, his breaching and defamatory social media posts in February 2022 against Plaintiff WINN. It is clear that the person "meant" is irrelevant where the person "hit" is so clearly Plaintiff WINN. Within the posts where people are discussing Defendant TINSLEY'S February 22, 2022, posts, some people discuss that Defendant TINSLEY has done this before and deleted the online activity shortly after. We will likely need to enter into full discovery to access all the potential violations, but it has now become clear to us that Defendant TINSLEY has been shirking his obligations to the 2019 Settlement Agreement for much longer than Plaintiff WINN had known.

### THIRD CAUSE OF ACTION
### FALSE LIGHT
### A WA STATE COMMON LAW TORT

6.73   Plaintiff WINN incorporates by reference each and every allegation set forth above in paragraphs 1.1 through 5.2 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

6.74   To state a claim for false light, a plaintiff must allege that the defendant:

1.   Publicized a matter that placed the plaintiff in a false light;

2.   "The false light would be highly offensive to a reasonable person;" and

3.   The defendant "knew of or recklessly disregarded the falsity of the publication and the false light in which the target of such published statements would be placed." *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 722 P.2d 1295, 1297 (1986) A false light plaintiff "must allege falsity," meaning that the plaintiff must identify a statement by the defendant that is "provably false." *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 438 P.3d 606, 616 (2019) "A provably false statement is one that, as a statement of either fact or opinion, falsely

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

expresses or implies provable facts about the plaintiff."[13] *Id.* at 612. To prevail on a false impression theory, "the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts." *Mohr v. Grant*, 153 Wn.2d 812, 108 P.3d 768, 776 (2005). See *Percival v. Poon*, No. C20-1040-JCC, 9-10 (W.D. Wash. Aug. 2, 2021)

6.75    In *Percival v. Poon*, No. C20-1040-JCC, 10 (W.D. Wash. Aug. 2, 2021), Plaintiff Ina Percival and Defendant Laina Poon were in a registered domestic partnership for over ten years before they separated in September 2018 and later divorced in 2019. (Dkt. No. 18 at 2.) Ms. Percival alleged that about a month after they separated, Ms. Poon audio recorded Ms. Percival in her home, then pushed her into a closet and forced her to stay there by threatening to publish the audio recording and to harm her and their children. (Id. at 2-4, 6.) The next day, Ms. Poon allegedly disseminated an edited version of the recording that reflected poorly on Ms. Percival. (Id. at 3, 7.)

6.76    Nearly two years later, after the parties' divorce proceedings concluded, Ms. Percival filed her lawsuit, asserting a federal cause of action under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-23, along with eight claims arising under Washington law. (Dkt. No. 1 at 3-6.)

6.77    The court in *Percival* held that "In proving falsity . . . a plaintiff must prove either a statement was false or a statement left a false impression by omitted facts."); *See Percival v. Poon*, No. C20-1040-JCC, 10 (W.D. Wash. Aug. 2, 2021) [*citing Harris v. City of Seattle*, 315 F.Supp.2d 1112, 1123-34 (W.D. Wash. 2004)]. Ms. Percival alleged that the edited audio recording left listeners with the

---

[13] In *Seaquist*, the Washington Court of Appeals left open the question of "whether falsity by implication can support a false light claim." 438 P.3d at 616 n.4. The Court concludes that false light plaintiffs would likely be able to recover for implied falsehoods because the Washington Supreme Court has allowed defamation plaintiffs to do so and has suggested that a plaintiff that can establish a defamation claim can always establish a false light claim, as if false light is a lesser-included tort. See *Eastwood*, 722 P.2d at 1297 ("While all false light cases need not be defamation cases, all defamation cases are potentially false light cases."); see also *id.* ("The two torts overlap . . . when the statement complained of is both false and defamatory."). Therefore, the case law regarding defamation sets the boundaries of a false light claim by implication. See *Percival v. Poon*, No. C20-1040-JCC, 10 n.3 (W.D. Wash. Aug. 2, 2021).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

impression that "she was [an] unfit mother" and not "emotionally stable," (Dkt. No. 18 at 7), but the court held that she did not identify the statements in the audio recording that left that impression. *See Percival v. Poon*, No. C20-1040-JCC, 10 (W.D. Wash. Aug. 2, 2021).

6.78    In contrast, in the present case, Plaintiff WINN clearly identifies nine (9) disparaging libelous statements made by Defendant TINSLEY in his February 22, 2022 Facebook & Twitter posts - those nine (9) outlined statements left the impression with viewers of the post that Defendant TINSLEY'S posts were clearly about Plaintiff WINN and clearly left the impression with viewers of the posts that Plaintiff WINN was and is what Defendant TINSLEY's untrue statements clearly communicated to viewers of his February 22, 2022 posts (not opinion).

6.79    Here, the statements made by Defendant TINSLEY in his February 22, 2022, Facebook & Twitter posts were and are false and placed Plaintiff WINN in a false light.

6.80    The false light created by the false statements was and is highly offensive to Plaintiff WINN and would be highly offensive to a reasonable person.

6.81    Defendant TINSLEY knew of or recklessly disregarded the falsity of the publications and the false light in which Plaintiff WINN would be placed.

6.82    As a result of the false light, Plaintiff WINN has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## A WA STATE TORT OF OUTRAGE

6.83    Plaintiff WINN incorporates by reference each and every allegation set forth above in paragraphs 1.1 through 5.2 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

6.84    Defendant TINSLEY has engaged in extreme and outrageous conduct.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

6.85    Defendant TINSLEY'S conduct has been intentional or reckless and has caused emotional distress to Plaintiff WINN.

6.86    Plaintiff WINN has suffered severe emotional distress as an actual result of such conduct.

6.87    Because of the intentional infliction of emotional distress, Plaintiff WINN has been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### NEGLIGENCE
### A WA STATE TORT

6.88    Plaintiff WINN incorporates by reference each and every allegation set forth above in paragraphs 1.1 through 5.2 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

6.89    Defendant TINSLEY had a duty to abide by the Parties' mutually agreed upon terms in the 2019 Settlement Agreement, including to use reasonable care not to cause injury to Plaintiff WINN.

6.90    Defendant TINSLEY'S conduct with his February 22, 2022, Facebook and Twitter posts was intentional, reckless and/or negligent.

6.91    Because of Defendant TINSLEY'S conduct that breached Section 7 (page 3 of the 2019 Settlement Agreement, attached hereto as Exhibit 2) "Mutual Confidentiality" and Section 8 (page 4 of 2019 Settlement Agreement, attached hereto as Exhibit 2) "Mutual Non-Disparagement," Plaintiff WINN has been damaged and is owed "Liquidated Damages" per Section 9 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties' mutually agreed upon terms of "Liquidated Damages" owed by the breaching party as follows:

- "The Parties agree that a breach of the confidentiality and non-disparagement provisions in Sections 6 and 7 of this Agreement would constitute an irreparable harm, and that in the event of any breach of Section 6 or 7, the injured Party may

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **49** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

obtain an injunction prohibiting future breaches. The availability of injunctive relief is in addition to other remedies available under this Agreement, including the right to damages and any reasonable attorneys' fees and costs available under this Agreement for enforcing this provision.

- It is agreed that in the event of a breach of Section 6 or 7, damages would be difficult to quantify, and the amount of liquidated damages provided herein is a reasonable estimation of such damages. Therefore, the Parties agree that in the event of such a breach of Section 6 or 7, **the injured Party shall be entitled to payment in the amount of Twenty-Five Thousand Dollars ($25,000) as liquidated damages for each such breach, in addition to all other remedies that the Party might be entitled to seek for such breaches."**

Section 9 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), whereby the Parties' mutually agreed upon terms of "Liquidated Damages" (*emphasis added*).

6.92    Additionally, because of Defendant TINSLEY'S conduct that breached Section 7 (page 3 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), mutually agreed upon "Mutual Confidentiality" and Section 8 (page 4 of the 2019 Settlement Agreement, attached hereto as Exhibit 2), mutually agreed upon "Mutual Non-Disparagement,", Plaintiff WINN has been damaged and owed compensatory damages, plus any and all other available damages in an amount to be proven at trial, any and all other available remedies under Washington State law (injunctive or otherwise), per Section 13 (page 5 of the 2019 Settlement Agreement attached hereto as Exhibit 2), whereby the Parties mutually agreed upon "Remedies for Breach" as follows:

"The Parties agree that each Party, in addition to any other remedy it may have under this Agreement or at law, ***shall be entitled to injunctive and other equitable relief to prevent or curtail any breach of any provision of this Agreement."***

(*emphasis added*).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

# VII.  <u>CONCLUSION</u>

7.1    Pursuant to Section 9 of the 2019 Settlement Agreement, attached hereto as Exhibit 2, entitled liquidated damages, Plaintiff WINN is entitled to payment in the amount of twenty-five thousand dollars ($25,000.00) for ***EACH OF DEFENDANT TINSLEY'S EIGHTEEN (18) BREACHES*** of the confidentiality and non-disparagement clauses:

1. "This accusation is a total lie."

2. "There is a pattern of me being victimized by mentally unstable and money grabbing people."

3. "This latest individual that I am speaking of concocted this incredulous story of sexual harassment, which is a complete and total lie.

4. "This is from the mind of a very troubled and disturbed person."

5. "On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind."

6. "He said he felt like hurting someone. Never did I think it would be me."

7. "He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food, and playing pinball at an arcade in the neighborhood.

8. "Music went out the window and it was all about getting drunk and playing pinball."

9. "I never harassed this individual; this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual."

7.2    Defendant TINSLEY and Plaintiff WINN agreed, by and through their counsel, to adhere to the entirety of the 2019 Settlement Agreement. Plaintiff WINN has kept his word and his oath, promised when he signed the 2019 Settlement Agreement, having kept his word even as his reputation and personal safety have been again threatened by Defendant TINSLEY'S words in his

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

February 22, 2022, breach of the 2019 Settlement Agreement and disparaging attacks against Plaintiff WINN, personally and professionally.

## VIII.  **PRAYER FOR RELIEF**

**WHEREFORE PLAINTIFF PRAYS** that the Court grant them the following:

8.1    Judgment in favor of Plaintiff WINN;

8.2    For "Liquidated Damages" in the amount agreed upon by the Parties in the 2019 Settlement Agreement – *i.e.*, Twenty-five thousand dollars ($25,000.00) for each of the eighteen (18) disparaging comments published by Defendant TINSLEY, which under Washington State law is calculated as Defendant breaching a non-disparagement clause by **EACH** libelous statement the Defendant makes that is untrue, that identifies the Plaintiff through "recognizable descriptive characteristics" and/or "Personally identifiable Information (PII)," and that is made public/published by the Defendant. Twenty-five thousand dollars ($25,000.00) of liquidated damages per each of the eighteen (18) breaching disparaging comments published by Defendant TINSLEY equates to four hundred fifty thousand dollars ($450,000.00) in liquidated damages owed by Defendant TINSLEY to Plaintiff WINN.

8.3    For damages for lost compensation, including but not limited to past and future lost wages in an amount to be proven at trial;

8.4    For general damages for emotional distress, suffering, loss of enjoyment/quality of life, and injury to reputation in an amount to be proven at trial;

8.5    For prejudgment interest;

8.6    For any tax relief warranted;

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

8.7    For Plaintiff WINN's reasonable and actual attorney' fees, costs of suit and expenses incurred;

8.8    Lost fringe benefits; and

8.9    Such other and further relief as this Court deems just and proper.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues so triable.

DATED this __21st__ day of February, 2024.

HENDERSON LAW GROUP, PLLC

Stephanie Henderson Stocker
WSBA No. 33567
1800 Cooper Pt. Rd. SW, Bldg. 1
Olympia, WA 98502
Email: stephanie@hendersonlaw.net
Tel: (360) 943-7710
Fax: (360) 943-2782

Attorney for Plaintiff

Jason Hatch
WSBA No. 31798
368 Newell St
Seattle, WA 98109-1858
Tel: (206) 227-2916
Fax: (206) 216-5853
Email: jayhatch11@gmail.com
Attorney for Plaintiff

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **53** of **54**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATION OF PLAINTIFF

**JAMES WINN**, hereby certifies as follows:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint, know the contents thereof, and believe the same to be true.  I certify and declare that the foregoing is true and correct, under penalty of perjury under the laws of the State of Washington, RCW 9A.72.085.

DATED at ___Seattle___, Washington, this __20__ day of ___February___, 2024.

_James Frost-Winn_
James Frost-Winn (Feb 20, 2024 15:08 PST)
**JAMES WINN**

PLAINTIFF'S COMPLAINT FOR DAMAGES - Page **54** of **54**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

# Exhibit 1

King County Superior Court Complaint dated May 17, 2018

FILED

18 MAY 17 PM 12:58

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-12456-5 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| JAMES WINN,<br><br>                              Plaintiff,<br><br>vs.<br><br>BOYD TINSLEY,<br><br>                              Defendant. | CASE NO.:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>I.  SEXUAL HARASSMENT (*QUID PRO QUO*) IN VIOLATION OF WA LAW AGAINST DISCRIMINATION ("WLAD") (RCW § 49.60)<br><br>II.  SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF WLAD (RCW § 49.60)<br><br>III.  RETALIATION IN VIOLATION OF WLAD (RCW § 49.60) DISCRIMINATION AGAINST PERSON OPPOSING UNFAIR PRACTICE<br><br>IV.  TORT OF CONSTRUCTIVE DISCHARGE (WA STATE COMMON LAW TORT) |

   **COMES NOW** Plaintiff, JAMES WINN, by and through his attorneys of record, STEPHANIE HENDERSON STOCKER of HENDERSON LAW GROUP, PLLC, and JASON HATCH, and for the causes of action alleged herein states, alleges, and complains as follows:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 1

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

# I.  **INTRODUCTION**

1.      This is an action for relief brought by Plaintiff JAMES WINN ("Plaintiff WINN") against his former employer, Defendant BOYD TINSLEY ("Defendant" or "Defendant TINSLEY"). Plaintiff WINN was a street musician in San Francisco, CA, when he was discovered in 2007 by Defendant TINSLEY.  Defendant TINSLEY hired Plaintiff WINN and created a "boy band" called Crystal Garden.  The band members of Crystal Garden were: Mr. Joel Jacobs (drums); Mr. Mycle Wastman (vocals); Mr. Charlie Csontos (bass); Mr. Matt Frewen (drums); and Plaintiff WINN (trumpet).

2.      In the years that followed, Plaintiff WINN was catapulted by Defendant TINSLEY into a world of luxury and living his lifelong dream of playing music worldwide – a dream come true for Plaintiff WINN.   Traveling the world playing live shows, recording music with international music talent, 5-star hotels, first-class food, drinks & friends – all supplied by Defendant TINSLEY for his employee, Plaintiff WINN.

3.      As the facts below describe, Defendant TINSLEY began sexually harassing his employee, Plaintiff WINN, in 2015 – sexually flirting with verbal sexual comments, physically touching, sexting – including communicating to Plaintiff WINN that he provided "this life" and "these things" to Plaintiff WINN and that Plaintiff WINN "owed him."  Defendant TINSLEY's harassment towards Plaintiff WINN was nothing short of disturbing to Plaintiff WINN – the harassment was in no way welcome and destroyed Plaintiff WINN emotionally.

4.      After months of enduring Defendant TINSLEY's sexually-charged harassment as a cost for maintaining his employment with Defendant TINSLEY, Plaintiff WINN was left with no choice but to walk away from the dream-turned-nightmare that he had been living.  Defendant

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

TINSLEY opened doors for Plaintiff WINN to the musical world that Plaintiff WINN had previously only imagined – a dream lived and tragically lost for Plaintiff WINN because of Defendant TINSLEY's sexually predatory harassment.

Examples of communications from Defendant TINSLEY to Plaintiff WINN include:



5.    Plaintiff WINN has the legal basis to bring an action for relief against his former employer, Defendant TINSLEY.  The facts herein outlined and applicable Washington State law support the following four claims for Plaintiff WINN against Defendant TINSLEY:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 3

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

6.    **Sexual Harassment – *Quid Pro Quo* in Violation of RCW § 49.60**

Defendant TINSLEY sexually harassed Plaintiff WINN under the *quid pro quo* theory in violation of Washington State's Law Against Discrimination (hereinafter, "WLAD") (RCW 49.60) when Defendant TINSLEY required his employee (Plaintiff WINN) to submit to unwelcome sexual conduct as a condition of receiving pay and/or tangible job benefits.

7.    **Sexual Harassment – Hostile Work Environment in Violation of RCW § 49.60**

Defendant TINSLEY sexually harassed Plaintiff WINN under the hostile work environment theory in violation of RCW 49.60 when Defendant TINSLEY directed conduct or behavior toward his employee (Plaintiff WINN) because of Plaintiff WINN's sex that created an intimidating, hostile, or offensive working environment for Plaintiff WINN.

8.    **Retaliation in Violation of RCW § 49.60 – Discrimination Against Employee Opposing Unfair Practice Protected by WLAD**

Defendant TINSLEY retaliated against Plaintiff WINN in violation of RCW 49.60. Plaintiff WINN opposed Defendant TINSLEY's illegal activity several times, including but not limited to when he complained to Defendant TINSLEY following the November 2015 incident, making it clear to Defendant TINSLEY that the sex-based behavior was wrong, unwelcome, and needed to stop. Defendant TINSLEY thereafter continued to harass Plaintiff WINN, tying Plaintiff WINN's compliance with the sex-based demands to Plaintiff WINN's continued "success" with the band. Plaintiff WINN's submitting to Defendant TINSLEY's sexual demands equates to the adverse "tangible employment action" required to establish a retaliation claim under WLAD.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 4

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

9.      **Constructive Discharge – WA State Common Law Tort**

Defendant TINSLEY committed the Washington State Common Law Tort of Constructive Discharge against Plaintiff WINN when Defendant TINSLEY's sexual harassment of his employee (Plaintiff WINN) deliberately created intolerable working conditions for Plaintiff WINN that gave Plaintiff WINN no choice but to either endure Defendant TINSLEY's sexual advances as a condition of his employment – or resign.  Plaintiff WINN's resignation is viewed by Washington State law as the Tort of Constructive Discharge if a "reasonable person" in Plaintiff WINN's shoes would feel the working conditions created by his employer (Defendant TINSLEY) left Plaintiff WINN with no choice but to resign.

## II.      PARTIES

10.      Plaintiff WINN is an individual, a resident of the State of Washington, and a former employee of Defendant TINSLEY.

11.      Defendant TINSLEY is an individual, a resident of the State of Virginia, and former employer of Plaintiff WINN.  At relevant times herein, Defendant TINSLEY employed eight (8) or more employees (including Plaintiff WINN) and thus was an "employer" as defined by RCW 49.60.040(11).

12.      The WLAD applies to employers with eight or more employees and thus applies to Plaintiff WINN's former employer, Defendant TINSLEY. *See* RCW 49.60.040(11).  "Employer" is defined to include "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons." RCW § 49.60.040(11).  *See* WASH. ADMIN. CODE ("WAC") § 162-16-220 (regarding counting the number of persons employed) and WAC 162-16-230(3) (regarding employee's status based on "economic realities test," which includes analysis of 11

PLAINTIFF'S COMPLAINT FOR DAMAGES – 5

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

factors, keeping in mind that "**no one factor is determinative,**" *Larner v. Torgerson Corp*., 93 Wn.2d 801, 613 P.2d 780 (1980) (emphasis added)). The number of persons employed is determined by the names on the employer's payroll for the period covering the pertinent dates, regardless of whether the individual has labelled themselves as an "independent contractor" or has 1099 status for tax purposes. *See* WAC 162-16-220; WAC 162-16-230(k) ("The tax laws do not have the same purposes as the law against discrimination, so employee status for tax purposes is helpful but not controlling.") (emphasis added); *Anaya v. Graham*, 89 Wn. App. 588, 591-93, 950 P.2d 16 (Div. I, 1998); *see also: Cole v. Harveyland*, LLC, 163 Wn. App. 199, 203, 258 P.3d 70 (Div. I, 2011) (discussing *Anaya* with approval). It is immaterial whether the employer is comprised of just one owner/individual, like here with Defendant TINSLEY. *See Patten v. Ackerman*, 68 Wn. App. 831, 834-35, 846 P.2d 567 (Div. III, 1993). Corporate officers generally count as well. *See Id*. at 835-36.

13.     Defendant TINSLEY was Plaintiff WINN's employer. An employment contract is not required under WA law to establish an employer/employee relationship, however the existence of such a contract is certainly evidence of such a relationship. The actions of the parties establish an employer/employee relationship, which clearly occurred here, based on several factors, including but not limited to emails, phone calls, in-person conversations, and texts exchanged between Defendant TINSLEY, his supervisor-level employees, and his employee, Plaintiff WINN. Defendant TINSLEY sent at least three separate written employment contracts to Plaintiff WINN (Aug. 2015, Sept. 2015, Feb. 2016), using words including "[t]his … constitutes the formal agreement ('Contract') between Boyd Tinsley and [James Frost-Winn], whereby you are being hired for compensation to play/perform." *See* Session Musician/Vocalist Release Contract drafted

PLAINTIFF'S COMPLAINT FOR DAMAGES – 6

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

and sent by Defendant TINSLEY to Plaintiff WINN on Sept. 2, 2015. Plaintiff WINN has volumes of receipts showing compensation payment from Defendant TINSLEY to Plaintiff WINN, spanning several years and reflecting the agreed terms of Plaintiff WINN's employment with Defendant TINSLEY.

### III.    STATUTE OF LIMITATIONS

14.    Plaintiff WINN re-alleges and incorporates by reference paragraphs 1-13 of this Complaint.

15.    Plaintiff WINN brings his claims herein plead against Defendant TINSLEY within the applicable WA State statute of limitations. WA State applies a three-year statute of limitations to actions brought under RCW 49.60. *See* RCW 4.16.080(2)[1]. In 2004, the WA State Supreme Court in *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (2004) rejected WA State's existing precedent under the "continuing violation doctrine"[2] when it adopted the reasoning of the court in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) for determining liability under the WLAD for hostile work environment claims. The court in *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004) held that the *Morgan* analysis, "more fully advances the legislature's intent to end discrimination." *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004). The holding, in effect, "extends" beyond the three-year time limitation for purposes of the WLAD when discriminatory

---

[1] The WLAD does not contain its own statute of limitations period. Discrimination claims must be brought within three years under the general three-year statute of limitations for personal injury actions. RCW 4.16.080(2); *see Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004); *Washington v. Boeing Co.*, 105 Wn.App. 1, 19 P.3d 1041, (Div. 1 2000); *Goodman v. Boeing Co.*, 75 Wash.App. 60, 77, 877 P.2d 703 (1994), aff'd, 127 Wash.2d 401, 899 P.2d 1265 (1995).
[2] *See, e.g., Washington v. Boeing Co.*, 105 Wash.App. 1, 8, 19 P.3d 1041 (2000).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 7

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

conduct is ongoing – allowing a plaintiff, like Plaintiff WINN, to allege otherwise time-barred discriminatory acts and recover damages against Defendant TINSLEY based on those acts.

16.     In adopting the reasoning of *Morgan*, the WA State court's holding in *Antonius* did not view the issue of acts occurring before the limitations period in a hostile work environment case as a matter of an equitable exception to the statute of limitations. Instead, the holding in *Morgan* (and controlling WA State legal precedent of the court's holding in *Antonius*) focused on the nature of the claim itself as "***a series of acts that collectively constitute one unlawful employment practice***." *See Antonius*, 103 P.3d 729, *supra*. "As a unitary whole, the claim is not untimely if one of the acts occurs during the limitations period because the claim is brought after the practice, as a whole, occurred and within the limitations period." *Id.* "***In its early stages [the acts] may not be diagnosable as sex discrimination ... or may not cause sufficient distress*** ... or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures." *Antonius*, 103 P.3d 729 (emphasis added)[3]  The Court in *Antonius* distinguished those cases involving discrete retaliatory or discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, from cases involving claims of a hostile work environment. *Id.* However, the Court in *Antonius* concluded that "hostile work environment claims 'are different in kind from discrete acts' and '[t]heir very nature involves repeated conduct.'" *Id.* (*citing Morgan*, 536 U.S. at 115, 122 S.Ct. 2061). The Court said that "the 'unlawful employment practice' therefore cannot be said to occur on any particular day.'" *Id.* "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of

---

[3] *Citing Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1166 (7th Cir. 1996), *overruled in part by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n. 11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 8

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

harassment may not be actionable on its own.... Such claims are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061. The Court explained that **"[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice**.'" *Antonius*, 103 P.3d 729 (emphasis added)[4]

17.    Here, Plaintiff WINN was constructively discharged by Defendant TINSLEY in August 2016, with the majority of the harassing acts by Defendant TINSLEY against Plaintiff WINN occurring on or after April 2015 (within the *general* three-year statute of limitations – from Plaintiff WINN's April 2015 constructive discharge to today's May 2018 filing of Plaintiff WINN's lawsuit, as herein plead).  However, some of Defendant TINSLEY's unwelcome sexual acts towards Plaintiff WINN began **prior** to April 2015, when Defendant TINSLEY discovered/recruited, financed, groomed, and lured Plaintiff WINN from his life as a homeless street-performer to become a member of Defendant TINSLEY's "boy band"/Crystal Garden, to Plaintiff WINN's constructive discharge in August 2016.

18.    The employer/employee dominant/servant relationship between Defendant TINSLEY and Plaintiff WINN was created during the recruitment process when Defendant TINSLEY discovered, recruited, groomed, and financed Plaintiff WINN to be a member of his "boy band" that would become Crystal Garden.  Under WA State controlling precedent, the cumulative effect of each of Defendant TINSLEY's unwelcome sexual acts against Plaintiff WINN – no matter how slight or, conversely, how egregious – created one continuous, connected hostile work environment for Plaintiff WINN.

---

[4] *Citing Morgan*, 536 U.S. at 117, 122 S.Ct. 2061 (*quoting* 42 U.S.C. § 2000e-5(e)(1)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 9

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

19.      In establishing his prima facie case for each of the four claims herein alleged, Plaintiff WINN does not rely heavily on TINSLEYS's unwelcome sex-based acts towards him that occurred <u>prior</u> to April 2015 (outside the general statute of limitations).  However, WA law supports that <u>all</u> acts of Defendant TINSLEY's unwelcome, sex-based behavior towards Plaintiff WINN (including acts occurring prior to April 2015 and acts occurring up to Plaintiff WINN's constructive discharge in August 2016) are included in "a series of separate acts that collectively constitute one 'unlawful employment practice'" creating a hostile work environment for Defendant TINSLEY's employee, Plaintiff WINN.

20.      These collective acts demonstrate how Defendant TINSLEY, like any seasoned sexual predator, spent years financing, grooming, luring, and otherwise ***building the trust*** of his victim, Plaintiff WINN. Enticing Plaintiff WINN with a world that a homeless street musician like Plaintiff WINN had only dreamed of prior to Defendant TINSLEY targeting him, financing his musical ascent, then predicating Plaintiff WINN's continued employment on repeated compliance with Defendant TINSLEY's unwelcome, sex-based demands.

21.      Defendant TINSLEY's creepy, sex-based behavior towards Plaintiff WINN began ***prior*** to April 2015 and continued through Plaintiff WINN's constructive discharge in August 2016.  <u>All</u> of these acts are "part of ***one unlawful employment practice***" by Defendant TINSLEY against Plaintiff WINN under controlling WA State law set in *Antonius*.

## IV.      <u>JURISDICTION</u>

22.      Plaintiff re-alleges and incorporates by reference paragraphs 1-21 of this Complaint.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 10

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

23.     Jurisdiction and venue are proper in this Court because the band "Crystal Garden" was based in Seattle, WA (Fremont), located in King County.  Defendant TINSLEY created, managed, and paid the wages, rent, and all living expenses for the band members of "Crystal Garden" (*i.e.,* his employees, including band member, Plaintiff WINN).  Defendant TINSLEY leased and paid for in full the Fremont/Seattle, WA, apartment that he secured for the Crystal Garden band members/employees to live in together while working on their music.  Defendant TINSLEY paid monthly wages to and living expenses for his employees (the Crystal Garden band members, including Plaintiff WINN) – all of which occurred in Seattle, WA (located in King County).

24.     This Court has jurisdiction over the subject matter of this suit and venue is proper herein.  RCW 49.60.030(2) authorizes "a civil action in a court of competent jurisdiction" to remedy a violation of RCW 46.60, including violations of the prohibition of sex discrimination found in RCW 49.60.010; RCW 49.60.030(1) and RCW 49.60.180. *See Griffin v. Eller*, 130 Wn.2d 58, 922 P.2d 788 (1996)

## Personal Jurisdiction

25.     This Court has personal jurisdiction over Defendant TINSLEY.  Jurisdiction is proper in WA State for Plaintiff WINN's claims against Defendant TINSLEY are pursuant to personal jurisdiction under WA State's long-arm statute.  WA State's long-arm statute, RCW 4.28, authorizes the court to exercise jurisdiction over a non-resident defendant to the extent permitted by the due process clause of the United States Constitution.[5]  WA State has personal jurisdiction

---

[5] *See SeaHAVN, Ltd. v. Glitnir Bank*, 154 Wn.App. 550, 226 P.3d 141, (Div. 1 2010); *MBM Fisheries, Inc. v. Bollinger Machine Shop and Shipyard, Inc*., 60 Wash.App. 414, 418, 804 P.2d 627 (1991).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 11

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

over Defendant TINSLEY based on the "transaction of business within the state" under RCW 4.28.185(1) and based on "the ownership, use, or possession of any property whether real or personal situated in this state" under RCW 4.28.185(c).

RCW 4.28.185 provides in pertinent part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

    a)  The transaction of any business within this state;

      …

    c)  The ownership, use, or possession of any property whether real or personal situated in this state;
      …

RCW 4.28.185(1)(a) and (c).

26.    To exercise specific personal jurisdiction over a foreign defendant under RCW 4.28.185, the following three-part "minimum contacts" test must be met:

1. The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

2. The cause of action must arise from, or be connected with, such act or transaction; and

3. The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 767, 783 P.2d 78 (1989); *see also SeaHAVN, Ltd.*, 226 P.3d 141, 149.  Additionally, pursuant to RCW 4.28.185(3), "only causes of action arising from acts enumerated [under RCW 4.28.185] may be asserted against a defendant in an action in which jurisdiction over him or her is based upon [RCW 4.28.185]." *See* RCW 4.28.185(3).

27.    Here, WA State establishes personal jurisdiction over Defendant TINSLEY for his unlawful acts against his former employee, Plaintiff WINN.  Defendant TINSLEY meets the "minimum contacts" test for specific personal jurisdiction over a Defendant in WA State. *See* RCW 4.28.185.  WA State establishes specific personal jurisdiction over Defendant TINSLEY under RCW 4.28.185(1)(a) and (c) based on Defendant TINSLEY's signed lease for the Seattle, WA (Fremont neighborhood) AirBNB apartment leased for his employees (Crystal Garden band members, including Plaintiff WINN) and paid for in-full by Defendant TINSLEY – this signed lease for the use of real property in Seattle, WA, constitutes Defendant TINSLEY's "ownership, use, or possession of any property whether real or personal situated [within WA State]" under RCW 4.28.185(1)(c).

28.    The WA court examined the "minimum contacts" 3-part test in *John Does 1-9 v. CompCare, Inc.*, 52 Wash.App. 688, 763 P.2d 1237 (1988), where victims of sexual abuse sued the Diocese of Lafayette, Louisiana and three court officials. The lawsuit alleged the Diocese negligently placed and supervised its priest in Spokane, Washington. On appeal, ***the court held that Washington acquired jurisdiction over the Diocese under the long-arm statute.*** The court cited a number of purposeful contacts including:

- Payment of the expenses to relocate the priest to Spokane;

PLAINTIFF'S COMPLAINT FOR DAMAGES – 13

- Continuing to pay the priest a subsidy;

- Payment of psychiatric treatment and hospitalization; and

- Telephone conversations between the Louisiana Diocese with the priest and the Spokane Diocese.

*Does 1-9*, 52 Wash.App. at 697-98, 763 P.2d 1237. In reaching the conclusion that the Diocese *engaged in purposeful conduct in WA State*, the court relied on the direct benefit to the Diocese of the discipline and treatment of the priest in Washington. *Does 1-9*, 52 Wash.App. at 698, 763 P.2d 1237.

29.    Here, like the employer in *Does 1-9*, Defendant TINSLEY had "purposeful contacts" with WA State, including:

- Defendant TINSLEY's payment of expenses to relocate Plaintiff WINN and his band-mates to Seattle, WA, Defendant TINSLEY paying Plaintiff WINN and his band-mates a monthly salary while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY);

- Defendant TINSLEY paying all living expenses and food for Plaintiff WINN and his band-mates while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY);

- Defendant TINSLEY paying for all transportation for Plaintiff WINN and his band-mates (via Lyft and Uber) while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY).

30.    Additionally, just as the WA State court held in *Does 1-9* that there was a "direct benefit" to the out-of-state employer (Diocese) of the discipline and treatment of its priest employee in WA State, here there exists a "direct benefit" to employer (Defendant TINSLEY) of the treatment of his employee, Plaintiff WINN, in WA State.  WA State establishes "purposeful contacts" over Plaintiff WINN's former employer, Defendant TINSLEY.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 14

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

31.    Lastly, Defendant TINSLEY meets the requirements of RCW 4.28.185(3), via Defendant TINSLEY's signed Seattle, WA, apartment lease – which stemmed from Defendant TINSLEY's employer/employee relationship with Plaintiff WINN and the other Crystal Garden band members who lived and worked in the Seattle, WA, apartment (leased by Defendant TINSLEY).  Defendant TINSLEY leased the Seattle, WA, apartment for the sole purpose of his employees (incl. Plaintiff WINN) using the apartment to live and work in accordance with their employee/employer relationship with Defendant TINSLEY.  The causes of action that Plaintiff WINN herein asserts against Defendant TINSLEY arise from Defendant TINSLEY's employer/employee relationship with Plaintiff WINN and, as such, meets the requirements of RCW 4.28.185(3).

## V.    <u>FACTUAL ALLEGATIONS</u>

32.    Plaintiff re-alleges and incorporates by reference paragraphs 1-31 of this Complaint.

33.    Defendant TINSLEY (born May 16, 1964) is a U.S. citizen, composer, violinist, and mandolinist who has performed as a core member of the Dave Matthews Band ("DMB") for over 25 years. Within the DMB, Defendant TINSLEY has collaborated in writing songs, harmonizing, and singing backing vocals – DMB has released several successful albums and toured worldwide to sold-out crowds for over 25 years.  Outside of DMB, Defendant TINSLEY has pursued solo projects that he has created and managed, including creating and managing the band of which Plaintiff WINN was a member, "Crystal Garden."  Defendant TINSLEY's net worth is estimated at over $70 million.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

34.     Plaintiff WINN is a Caucasian male born in 1989 in Honolulu, Hawaii. Plaintiff WINN grew-up in Las Vegas, NV, with his parents and a brother who left home when Plaintiff WINN was eight (8) years old.  Plaintiff WINN's family was poor. They received food stamps and government assistance. His father was on disability and his mother was on SSI. They also had constant renters occupying rooms in the home throughout his upbringing, until Plaintiff WINN himself started paying rent at the age of 16.

35.     Plaintiff WINN attended high school at the Las Vegas Academy – he applied and was accepted to this prestigious arts school in 2004.  After his first year, Plaintiff WINN's grades were not sufficient, and he had to leave and attend Desert Pines High School. In his junior year, Plaintiff WINN re-applied and was again accepted into the Las Vegas Academy. This is a rare occurrence and a testament to Plaintiff WINN's talent as a musician. At the Academy, Mr. Tom Snelson, the para-professional trumpet instructor and former member of the Glenn Miller Band (among numerous other professional gigs), told Plaintiff WINN that he had raw talent.

36.     Plaintiff WINN played in the All County Band for Clark County in 2003.  Plaintiff WINN moved to San Francisco, CA, in 2007. He went for the 40th anniversary of the Summer of Love.  Plaintiff WINN ended-up staying in San Francisco on a whim to start creating music with other musicians he met. Plaintiff WINN played street music with Benny Langfur, a notable street musician in San Francisco who asked Plaintiff WINN to travel with him. They won a battle of the bands together to play at the Haight-Ashbury street fair in 2011.  What started as a three-day vacation to San Francisco, ended up being Plaintiff WINN's new home until 2015.

37.     Plaintiff WINN has played on a number of albums with different bands and individual musicians. There was a large collection of street musicians that worked together –

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Plaintiff WINN's band "Morph Dwarf" (2010-12) gave rise to the current San Francisco successful band, "Be Calm Hancho." Plaintiff WINN also played with the band, "Love Dimension" (2016), a professional, local, well-established San Francisco band that opened for the bands "Big Brother" and "The Holding Company."  Plaintiff WINN has also played with "Down Dirty Shake" (2016), "The Jugtown Pirates" (2008-9), Josh Brough (2008) of the band "Poor Man's Whiskey," Salvatore Geloso (2009-14) (2nd place in Rolling Stone's street musician ranking, representing New Orleans) and numerous others.

38.    The Haight Ashbury show had thousands in attendance, and his show with Chris Jeffries (Plaintiff WINN is on his album, "Homeless Romantic," along with Salvatore Gesso (2014)) was at the legendary San Francisco club, "Bottom of the Hill."  Plaintiff WINN was hand-selected by the president of the Haight Ashbury street fair in San Francisco to book music and run the Masonic music stage. The Haight Ashbury street fair was originally organized and created with the assistance of Harvey Milk, and has been continuing for over 40 years. It was created to express the return of a vibrant community to the area. Plaintiff WINN was also on the Board of Directors for the fair for the year 2015.  Plaintiff WINN would have stayed on the Board and continued to run that stage and grown his opportunities at one of the largest and most well-known fair events in the country, but he had to stop his work with The Haight Ashbury street/music fair to join "Crystal Garden."

39.    One of Crystal Garden's earliest shows, and probably the most well attended show of Crystal Garden to date, was at the Haight Ashbury fair in June 2016 on the stage that Plaintiff WINN booked for the band.  Plaintiff WINN personally forfeited the $250.00 that the street fair still owed him in exchange for a headlining spot at the fair.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

40.     Defendant TINSLEY used the band name "Crystal Garden" based on Plaintiff WINN having found some crystals on Defendant TINSLEY's property.  Defendant TINSLEY has told Plaintiff WINN several times that he started the band for Plaintiff WINN specifically, including when Plaintiff WINN left the band for the second time in August 2016 (the first time being in Nov. 2015 when Defendant TINSLEY ejaculated next to Plaintiff WINN and touched Plaintiff WINN's buttocks while Plaintiff WINN was sleeping).  Defendant TINSLEY told Plaintiff WINN repeatedly that Plaintiff WINN "could not leave the band," as it was "James' band;" that Defendant TINSLEY had created the band around Plaintiff WINN.  The first t-shirt Defendant TINSLEY designed/made for Crystal Garden is an image of Plaintiff WINN; Defendant TINSLEY wore this shirt on multiple occasions while performing with the Dave Matthews Band.

41.     Below is a personal statement written by Plaintiff WINN about his inherent passion for playing the trumpet – a passion that has been deeply wounded by the extreme depression and humiliation suffered by Plaintiff WINN as a result of the harassment and retaliation he endured from his former employer, Defendant TINSLEY:

> "In certain ways, I feel like the trumpet chose me. I started playing the trumpet when I was 11 years old; I joined the school band and quickly became top trumpet player in my class – I never lost the top position once I obtained it. I successfully auditioned for All State Band (5th chair in the state of Nevada) and received entry twice into the Las Vegas Academy of the Arts, a prestigious arts school.  The trumpet is how I met most of my closest friends in San Francisco. I can honestly say that my love for playing the trumpet changed the course of my life numerous times.  I have recorded on many positively-received albums.  I have performed with many well-known local

PLAINTIFF'S COMPLAINT FOR DAMAGES – 18

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

artists in the San Francisco, CA, area. The trumpet is linked to my spirit – it

is something I genuinely feel I was put on Earth to do."

Plaintiff WINN (in his own words); December 2017.

**<u>2007-2009</u>**

42.    Plaintiff WINN met Defendant TINSLEY for the first time in September 2007. Plaintiff WINN was 18-years old, living on the streets of San Francisco, trying to make it as a musician.  They met at the Peace Café in San Francisco; Defendant TINSLEY was with his friend, Ryan Orr. Defendant TINSLEY was interested in what Plaintiff WINN was saying to his friend, Natalie, who worked at the Café. When Natalie went off to help a customer, Defendant TINSLEY and Plaintiff WINN began talking.

43.    Plaintiff WINN asked Defendant TINSLEY if he was a musician; he said he was, and that he played the violin. Defendant TINSLEY shared that he had been playing for about 30 years. Plaintiff WINN asked Defendant TINSLEY if he wanted to play at an open mic night with his friend, Ms. Kerry Gulbrabson; Defendant TINSLEY gladly accepted and gave Plaintiff WINN his phone number.

44.    The next day, Plaintiff WINN was doing a street performance with Ms. Gulbrabson. Defendant TINSLEY came to watch them play and offered to get them some food.  Defendant TINSLEY came back with Indian food for Plaintiff WINN and Kerry, as well as two very nice jackets, saying to Plaintiff WINN and Kerry that it had started to get cold out and that he thought they would like them.

45.    A few days later, Defendant TINSLEY texted Plaintiff WINN saying that he was very glad to have met him and that he had another gift for Plaintiff WINN, to be delivered by

PLAINTIFF'S COMPLAINT FOR DAMAGES – 19

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Defendant TINSLEY's friend/employee, Mr. Ryan Orr.   A few days later, Mr. Orr brought Plaintiff WINN a DMB CD, autographed by Defendant TINSLEY, that read, "James, you have a beautiful soul."

46.    In August 2009, Plaintiff WINN received backstage passes from Defendant TINSLEY for "Outside Lands," a San Francisco music festival at which Defendant TINSLEY was performing.  After the show, Defendant TINSLEY invited Plaintiff WINN back to his hotel room. Plaintiff WINN wanted to bring his friends with him, but Defendant TINSLEY said he did not feel like "hosting a party." As such, Plaintiff WINN declined the invite; he felt uncomfortable accepting Defendant TINSLEY's invitation without bringing along his friends who had accompanied him to the festival.

47.    Soon after, Plaintiff WINN received a text from Defendant TINSLEY[6], wherein Defendant TINSLEY referred to Plaintiff WINN as "sweet, tender, and innocent." Plaintiff WINN responded, making it clear that he just wanted to be friends and was not interested in anything else. Defendant TINSLEY replied, writing that he "speaks poetically" and that Plaintiff WINN had "nothing to worry about."  Defendant TINSLEY concluded the message by saying, "sometimes people do good things without wanting anything in return." This response made Plaintiff WINN feel guilty about confronting Defendant TINSLEY.

**2009-2014**

48.    In late summer 2011, Defendant TINSLEY was on tour and was staying in San Francisco.  Defendant TINSLEY texted Plaintiff WINN and asked if Plaintiff WINN would come

---

[6] Sent by Defendant TINSLEY to Plaintiff WINN's girlfriend's phone (where Defendant TINSLEY knew Plaintiff WINN could be reached), as Plaintiff WINN did not have his cell phone with him that evening.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 20

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

and "hang out" at his hotel. Plaintiff WINN had brought Defendant TINSLEY a t-shirt from his band, which Defendant TINSLEY immediately put on. Plaintiff WINN played some of his recorded music for Defendant TINSLEY and the two hung-out for a few hours.  During this time, Defendant TINSLEY showed Plaintiff WINN a portion of a film he was working on titled "Gypsy Fire Dance" (this was immediately following Defendant TINSLEY and Plaintiff WINN listening to a song of Plaintiff WINN's called "Dance of the Fire Gypsy.")  Defendant TINSLEY told Plaintiff WINN to order whatever he wanted from room service and then paid for Plaintiff WINN's ride home.

49.    In September 2011, Defendant TINSLEY invited Plaintiff WINN to the DMB Caravan at the Gorge Amphitheater (located in WA State).  Defendant TINSLEY gave Plaintiff WINN tickets to the event and access to the "VIP Campground."  Plaintiff WINN went to see the premiere of Defendant TINSLEY's movie screening on Saturday.  That night, Plaintiff WINN hung-out on Defendant TINSLEY's personal tour bus at the Gorge VIP Campground (with Defendant TINSLEY, Defendant TINSLEY's employee, Mr. Ryan Orr, Ryan Orr's girlfriend, and the bus driver). They stayed-up talking and smoked marijuana together – Defendant TINSLEY returned to his yurt.

50.    Plaintiff WINN had not had cell phone reception while they were at Gorge that weekend.  After Plaintiff WINN left the Gorge on Sunday, Plaintiff WINN regained cell reception. A text from late the night before popped-up on Plaintiff WINN's cell phone from Defendant TINSLEY.  Defendant TINSLEY had texted Plaintiff WINN to come hang-out, "alone" together in his yurt.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

51.     In mid-2012, Defendant TINSLEY asked Plaintiff WINN if he would like to come visit him.  Plaintiff WINN agreed, and Defendant TINSLEY proposed Toronto, Canada. Plaintiff WINN accepted, but did not have a passport. Defendant TINSLEY assured Plaintiff WINN that he would have someone help him and they would expedite the process; the get-together was planned for just a couple of weeks away. Defendant TINSLEY paid for Plaintiff WINN's trip, his passport, and a very nice room in a 5-star hotel.

52.     Plaintiff WINN was in Toronto, Canada for just a few days and interacted only briefly with Defendant TINSLEY. The majority of the interaction was on the tour bus, where they rode to the DMB show together.  Defendant TINSLEY gave Plaintiff WINN a backstage pass to the show and cab money for his trip.  Plaintiff WINN did not have cell service in Canada. Upon his return to the States, Plaintiff WINN had a late-night text from the previous evening pop-up from Defendant TINSLEY, asking him to come "hang out" in his room.

53.     During 2014, Defendant TINSLEY again invited Plaintiff WINN to join him at his hotel in San Francisco while he was in town, on tour with DMB.  Defendant TINSLEY paid for Plaintiff WINN's transportation (to and from the hotel) and for Plaintiff WINN's food and expenses while on the trip to visit Defendant TINSLEY.  Defendant TINSLEY told Plaintiff WINN that he was interested in making a documentary about a "boy band" that he created "from nothing" through them becoming "famous" – Defendant TINSLEY asked Plaintiff WINN if he was interested.  Plaintiff WINN said it sounded like a great project and they agreed to begin working out the details.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

**2015**

54.     In spring of 2015, Plaintiff WINN's mother passed away.  In July 2015, Plaintiff WINN contacted Defendant TINSLEY and shared the news that his mother had recently passed. Defendant TINSLEY again discussed with Plaintiff WINN his idea of making the documentary about the "boy band."  Defendant TINSLEY told Plaintiff WINN that he was going to start searching more seriously for the other musicians to do this project and that he would keep Plaintiff WINN informed.

55.     In late August 2015, Defendant TINSLEY called Plaintiff WINN and said he had recruited the other band members to join Plaintiff WINN and start the band they had discussed: Matthew Frewen, Mycle Wastman, Joel Jacobs, and Charlie Contoso.  He told Plaintiff WINN it was time for them to start work on music and paid for Plaintiff WINN to fly to his home/recording studio compound located in Charlottesville, Virginia, to record with the band members.  Defendant TINSLEY named the band, "Crystal Garden," and the employment relationship between owner/manager Defendant TINSLEY and "Crystal Garden" band member, Plaintiff WINN, began. Defendant TINSLEY hired two (2) professional music producers to work with him and the band members of "Crystal Garden."  Everything for the trip was financially paid for by Defendant TINSLEY, including meals, accommodations, marijuana, and alcohol. The recording session lasted approximately five (5) days, after which Defendant TINSLEY flew Plaintiff WINN back to San Francisco.

56.     In September 2015, Plaintiff WINN, along with the other Crystal Garden band members, were contacted by Defendant TINSLEY and asked to come out to The Gorge, in Washington State. They were all put up in a 5-star hotel in downtown Seattle, WA, and taken to a

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Seahawks game, where they sat in a box suite, and parked in the Seahawks private "players garage." Defendant TINSLEY hired a professional videographer/photographer (Mr. Ivan Agerton) and sound person (Ms. Carli Plute) to document the "Crystal Garden" band members. Defendant TINSLEY had also hired a writer, Craig Heimbuch, to begin writing a book about the forming of the "Crystal Garden" band.

57.    One morning in November 2015, Plaintiff WINN was woken-up at 5 AM by a phone call from Defendant TINSLEY. Defendant TINSLEY asked Plaintiff WINN if he would come to Europe to join him and Charlie Csontos (member of the Crystal Garden band) so they could do some more filming for the "boy band" documentary. Plaintiff WINN agreed to Defendant TINSLEY's requests and Defendant TINSLEY paid for Plaintiff WINN to fly-out to London that night. When Plaintiff WINN arrived, he was detained in customs because he did not have much money and did not know where he was going to stay.

58.    Plaintiff WINN was finally released from customs after Defendant TINSLEY got in touch with customs and cleared-up everything for Plaintiff WINN. Defendant TINSLEY, Plaintiff WINN, and Charlie Csontos (member of the Crystal Garden band with Plaintiff WINN) walked around London exploring. Defendant TINSLEY bought Plaintiff WINN and Charlie Csontos crystals and vaporizers.

59.    Later that day, Plaintiff WINN rode with Defendant TINSLEY and Charlie Csontos on a private tour bus to Manchester, England (for the DMB show that was that night). They spent the next day in Glasgow, Scotland; Plaintiff WINN and Charlie Csontos watched the DMB show that night from the side stage area.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 24

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

60.     The next day they went to Dublin, Ireland, and were put up by Defendant TINSLEY in a luxury hotel.  Defendant TINSLEY gave Plaintiff WINN and Charlie Csontos spending money and paid for all their accommodations and food.  **While in Dublin, Ireland, Defendant TINSLEY asked Plaintiff WINN for his socks.  Plaintiff WINN grabbed a clean pair and handed them to Defendant TINSLEY – Defendant TINSLEY said he wanted the ones Plaintiff WINN was wearing (witnessed by Charlie Csontos).  Plaintiff WINN reluctantly obliged, thinking it was weird that Defendant TINSLEY wanted his dirty socks.  Defendant TINSLEY immediately put on Plaintiff WINN's dirty socks and got ready to go play.** After the show, Defendant TINSLEY and Plaintiff WINN flew on a private jet from Dublin to London with the bass player, trumpet player, and drummer from DMB.  They then all flew to New York City the following day.

61.     While Plaintiff WINN and Defendant TINSLEY were in New York City, Plaintiff WINN expressed interest in watching the Giants-Patriots game with his friends who were also in town visiting.  Defendant TINSLEY asked if Plaintiff WINN wanted to take his friends to the actual game, which he did.  **Defendant TINSLEY bought five (5) tickets to the game for Plaintiff WINN and his friends, saying to Plaintiff WINN "man you better suck my dick or something."** Defendant TINSLEY had his paid driver take them to the game and wait to drive them back.

62.     The next day, Defendant TINSLEY said to Plaintiff WINN and the other band members that, "due to the cost of things he had paid for on the trip," he wanted them to take an Uber rather than fly to his home/recording studio compound in Charlottesville, Virginia.  Plaintiff WINN and the other band members agreed and took an Uber from New York City to Defendant

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

TINSLEY's home/recording studio compound in Charlottesville, Virginia, where they met up with Defendant TINSLEY.

**November 2015**

63.    For the next few days (in November 2015), Plaintiff WINN, the other "Crystal Garden" band members, Defendant TINSLEY and Defendant TINSLEY's music sound engineers all stayed together and recorded at Defendant TINSLEY's home/recording studio compound in Charlottesville, Virginia.  Defendant TINSLEY was also able to get Stanley Jordan to record with them for part of the time.

64.    At one point, Defendant TINSLEY was telling the drummer what to play and an argument ensued between the two – in anger, Defendant TINSLEY smashed a vintage guitar in the production room.  He then yelled at the band members, asking if they understood how big of an opportunity this was and questioned their commitment to the project.  After several minutes, Charlie Csontos and Plaintiff WINN were finally able to calm Defendant TINSLEY down. Defendant TINSLEY then said sternly to the band members that this project would propel them much further "if they just did what he told them to do."  Plaintiff WINN had not seen this angry, controlling side of Defendant TINSLEY until that that moment – it was a completely different personality than the Defendant TINSLEY he had come to know.

65.    That same night, Plaintiff WINN, the other "Crystal Garden" band members, Defendant TINSLEY, and Defendant TINSLEY's music sound engineers all stayed up until about 7 AM together working on music – some were together in the main house and some were working together out in the recording studio. Plaintiff WINN and Defendant TINSLEY were working together on music in the living room located on the first floor of the main house.  Plaintiff WINN

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

was getting tired and began falling asleep on the couch.  As Plaintiff WINN would fall asleep, Defendant TINSLEY would begin touching Plaintiff WINN's leg, putting his feet on his buttocks and rubbing his back.  This woke-up Plaintiff WINN in disgust and made Plaintiff WINN feel incredibly uncomfortable – Plaintiff WINN told Defendant TINSLEY to stop.  Plaintiff WINN returned to falling back asleep.  Defendant TINSLEY again waited until Plaintiff WINN was asleep before he began touching Plaintiff WINN's leg, putting his feet on his buttocks and rubbing Plaintiff WINN's back.  Plaintiff WINN again woke-up in disgust and again told Defendant TINSLEY to stop – this time Plaintiff WINN pushed Defendant TINSLEY away, got-up from the couch and moved to a couch upstairs where he fell asleep.

66.    After being asleep for a period of time, Plaintiff WINN woke-up horrified to feel and see Defendant TINSLEY ejaculating right next to him while rubbing his penis with one hand, Defendant TINSLEY's other hand was on Plaintiff WINN's buttocks – Plaintiff WINN had been passed-out asleep.  Plaintiff WINN was disgusted and yelled "what the fuck?!"  Plaintiff WINN jumped off the couch and began walking quickly towards the other building on the property (where the recording studio was located).  Defendant TINSLEY ran towards Plaintiff WINN calling out, "James wait!"  Seeing Defendant TINSLEY coming after him, Plaintiff WINN quickly ran out of the studio back towards the main house; he heard Defendant TINSLEY follow him into the main house. Plaintiff WINN hid in the bathroom out of fear for what Defendant TINSLEY would do next to him physically.  After Plaintiff WINN heard Defendant TINSLEY go upstairs in the main house, Plaintiff WINN ran back out to the studio building to hide.  Plaintiff WINN sat hiding in the studio for several hours, staring-off into space – he felt like he had been punched in the stomach. He was in complete shock by what Defendant TINSLEY had just done to him.  Plaintiff

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

WINN had built what he thought was a respectful, trusted relationship with his manager, Defendant TINSLEY. Plaintiff WINN's sexual orientation is straight, but regardless of that, he has never been remotely interested in Defendant TINSLEY sexually.[7] Plaintiff WINN felt humiliated and scared that Defendant TINSLEY continued his sexual advances towards Plaintiff WINN after Plaintiff WINN had told him to stop. Plaintiff WINN didn't know what to do next – he sat hiding in the recording studio shaking from shock.

67.     After hiding in the recording studio for several hours, Plaintiff WINN decided he needed to tell someone what Defendant TINSLEY had done to him and ask for help. Plaintiff WINN got up and walked to find their band's music engineer, Mr. Craig Conard, an old friend of Defendant TINSLEY's who was there onsite at Defendant TINSLEY's home/recording studio. Plaintiff WINN told Mr. Conard what had happened over the past several hours – Mr. Conard responded to Plaintiff WINN that he was disgusted by Defendant TINSLEY's behavior. Mr. Conard continued, saying to Plaintiff WINN that Plaintiff WINN may have to leave the "Crystal Garden" band if Defendant TINSLEY continued with the sexual behavior towards Plaintiff WINN and that Defendant TINSLEY would likely need to pay Plaintiff WINN money to keep him quiet about this. Plaintiff WINN just wanted to keep playing music with the band and wanted this nightmare to end. Charlie Csontos walked into the room and told Plaintiff WINN that Defendant TINSLEY wanted to speak with him immediately. Plaintiff WINN flat-out refused, saying he didn't want to be alone with Defendant TINSLEY. He then shared with Charlie Csontos what had

---

[7] Plaintiff WINN's sexual orientation, whether straight/gay/bi-sexual or other, is irrelevant to the validity of Plaintiff WINN's claims against his former employer, Defendant TINSLEY. Defendant TINSLEY's sex-based behavior towards Plaintiff WINN was underlined unwelcome by Plaintiff WINN – period. This is what the court looks at in determining Defendant TINSLEY creating & perpetuating a hostile work environment against Plaintiff WINN.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 28

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

happened that morning with Defendant TINSLEY sexually touching him repeatedly and chasing him.  Charlie Csontos was disgusted to hear about what Defendant TINSLEY had done to Plaintiff WINN.  Mr. Csontos told Plaintiff WINN that something similar had happened to him in Europe before Plaintiff WINN had arrived and that he had almost quit the band as well – he comforted Plaintiff WINN and then tried to convince Plaintiff WINN to stay.

68.    Plaintiff WINN demanded a flight home.  He did not want to be around Defendant TINSLEY at all.  Defendant TINSLEY put Plaintiff WINN on a first-class flight home to San Francisco (the only time that Defendant TINSLEY ever flew Plaintiff WINN first-class).  A week later, Defendant TINSLEY texted Plaintiff WINN, apologizing to Plaintiff WINN and texting that he was "messed up" – that he had "confused his pills."  He told Plaintiff WINN that he didn't remember what he had done that night and wasn't aware of what he had done that night to Plaintiff WINN.  Defendant TINSLEY told Plaintiff WINN that he would do whatever he needed to "regain James' trust," and it would never happen again.  Plaintiff WINN decided to take Defendant TINSLEY's word for it and decided to remain in the "Crystal Garden" band.  Defendant TINSLEY immediately bought Plaintiff WINN a brand-new iPhone and Mophie phone case – Defendant TINSLEY told Plaintiff WINN he would pay all fees and monthly bills for Plaintiff WINN's cell phone.

69.    In late December 2015, Defendant TINSLEY decided that Seattle, WA, would be a good location for the "Crystal Garden" band to be based.  All four band members would live together and work on their music.  Defendant TINSLEY's employee and friend, Ryan Orr, drove Plaintiff WINN and his belongings from San Francisco to a hotel in Seattle, WA, until the AirBNB apartment that Defendant TINSLEY had leased for the band members was available.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 29

**2016-2017**

70.     In January 2016, the band members moved into the Seattle, WA (Fremont neighborhood) AirBNB apartment leased by Defendant TINSLEY and paid for in-full by Defendant TINSLEY.  Defendant TINSLEY sent the band members payment of $750 per month (per person) – in addition to paying 100% of the band members' rent on the lease, grocery costs, and all housing-related expenses for the Seattle, WA, apartment in which the four band members lived and worked together on their music for "Crystal Garden."  Defendant TINSLEY even had the band members use his credit card for Lyft/Uber transportation for their travel in and outside of Seattle, WA.

71.     In February 2016, the band members went to San Francisco for a DMB show, and then they all drove to Las Vegas, Nevada, together that night. They stayed in a luxe suite at the Cosmopolitan Hotel, reserved and paid for by Defendant TINSLEY.  At one point, Defendant TINSLEY handed Plaintiff WINN $200 to put in a slot machine; Plaintiff WINN immediately won a couple hundred dollars. Defendant TINSLEY told Plaintiff WINN to keep it. He also took Plaintiff WINN to a pipe shop and bought him a $300 vaporizer pen.

72.     In March 2016, Defendant TINSLEY again asked Plaintiff WINN for Plaintiff WINN's dirty socks for his own pleasure, as well as other band members' dirty socks (incl. Charlie Csontos).  Plaintiff WINN received a text message from Defendant TINSLEY in late March saying that he wanted to "sexually exploit him for the band's success."  Defendant TINSLEY told Plaintiff WINN via text that Plaintiff WINN "is a sex symbol," and said to Plaintiff WINN that he (Defendant TINSLEY) "was masturbating at the thought of a sexy photo shoot of James." Defendant TINSLEY's text to Plaintiff WINN on March 28, 2016, at 10:09 PM, read, in part:

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

"You're such boner material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

73.    Plaintiff WINN was embarrassed by Defendant TINSLEY's sexual text messages yet felt he had to respond to the text messages. Plaintiff WINN continued hoping that Defendant TINSLEY would stop sending him sexual messages; that he knew Plaintiff WINN was clearly not interested in reciprocating.

74.    In April 2016, Defendant TINSLEY flew the band members to perform their first show in Charlottesville, Virginia, at the Tom Founders Festival. The show was a success, creating more fans and positive press for the band. It was also around this time that Plaintiff WINN was excited to have reconnected with his ex-girlfriend – they started dating again. Defendant TINSLEY's attitude toward Plaintiff WINN and the other band members immediately started to change; he did not like that they had girlfriends. The lead singer, Mycle Wastman, had a serious girlfriend in Seattle; Charlie Csontos was seriously seeing a girl – and now Plaintiff WINN was dating his ex-girlfriend again.

75.    On July 4, 2016, Defendant TINSLEY arranged for the band to do a "periscope" (*i.e.*, a live, online broadcast.") The band did the periscope from their home practice studio in Seattle, WA, a "meet the band" type of broadcast. On July 11, 2016 the band played a show with legendary guitarist Stanley Jordan joining them for a performance in Rhode Island. In the weeks leading up to that show, Defendant TINSLEY was texting with Plaintiff WINN about how he wanted Plaintiff WINN to play. Defendant TINSLEY texted Plaintiff WINN, in part:

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

> "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

76.     Plaintiff WINN was embarrassed by Defendant TINSLEY's sexual text messages yet felt he had to respond to the text messages.  Plaintiff WINN continued hoping that Defendant TINSLEY would stop sending him sexual messages; that he knew Plaintiff WINN was clearly not interested in reciprocating.

77.     In June 2016, the band played the Haight Street Fair in San Francisco, CA. Defendant TINSLEY was very distant – noticeably rude – towards Plaintiff WINN's girlfriend. Defendant TINSLEY became increasingly more demanding about Plaintiff WINN's physical appearance. He wanted Plaintiff WINN to grow his hair out and start working out.  On June 29, 2016, Defendant TINSLEY texted Plaintiff WINN, writing in part:

> "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw … Dude you're the bait. Our secret (weapon)."

78.     Plaintiff WINN responded to Defendant TINSLEY's request by sending a few head shots to Defendant TINSLEY via text.  Plaintiff WINN sent the headshots to Defendant TINSLEY with the understanding and hope that the days of Defendant TINSLEY preying on him sexually were behind them and they could focus on the success of band.  Plaintiff WINN felt he had to respond to Defendant TINSLEY – he felt he could not ignore the person paying his salary.  While he tried to be light-hearted at first about Defendant TINSLEY's creepy, sex-laden text messages to him, responding with jokes to deflect, Plaintiff WINN always made it clear he was not interested in Defendant TINSLEY's advances.  Plaintiff WINN would reluctantly respond to Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES – 32

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

TINSLEY's texts with things like "haha" and tried to skirt the questioning of Defendant TINSLEY by keeping things as business-oriented as possible.

79.    Defendant TINSLEY replied to Plaintiff WINN's headshot texts: "Damn you're hot!" Defendant TINSLEY continued to text Plaintiff WINN over the next several days, demanding that Plaintiff WINN take pictures that would increase Plaintiff WINN's sex appeal and how this was important for the continued success of the band.  Defendant TINSLEY texted to Plaintiff WINN, in part:

> "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

80.    Plaintiff WINN replied to Defendant TINSLEY's text, saying that he was trying and asked what kind of work-out Defendant TINSLEY recommended: at home, or at a gym? Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part:

> "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?"

*See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

81.    In June 2016, the band played a show at a Speakeasy in New York City.  Defendant TINSLEY arranged for TMZ to interview him outside of the venue, as well as having a local newscaster, Tamar Laine, interview the band.  On this night, Plaintiff WINN drank excessively, and the last thing he remembers is going to sleep in a bed on Defendant TINSLEY's tour bus.

82.    In July 2016, Defendant TINSLEY booked a show for the band in Indiana only three (3) days in advance of the show date; the show was scheduled for Plaintiff WINN's birthday,

PLAINTIFF'S COMPLAINT FOR DAMAGES – 33

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

June 23rd. Plaintiff WINN and his girlfriend had confirmed plans that day for her to fly from her home in Redwood City to Seattle to spend Plaintiff WINN's birthday with him. Plaintiff WINN refused to go to the Indiana show unless Defendant TINSLEY agreed to fly Plaintiff WINN's girlfriend to Indiana, as well. After a heated argument between Plaintiff WINN and Defendant TINSLEY, Defendant TINSLEY reluctantly agreed to fly Plaintiff WINN's girlfriend to Indiana so she and Plaintiff WINN could spend Plaintiff WINN's birthday together. Shortly after the Indiana show/trip, Defendant TINSLEY asked his employee, Ryan Orr, to tell Plaintiff WINN that he "was not taking this seriously enough" (which Ryan Orr told Plaintiff WINN on behalf of Defendant TINSLEY).

83.     Defendant TINSLEY then demanded to all the band members that "none of the band members should be in a relationship – period." Plaintiff WINN and the other band members felt that Defendant TINSLEY did not have the right to dictate whether they could be in a relationship; the band members continued to date their respective girlfriends. While other members of the band had girlfriends, it was only after Plaintiff WINN had a girlfriend that Defendant TINSLEY demanded the band members not to be in relationships.

84.     In late July 2016, the band played a show in West Palm Beach, Florida. Upon arrival, Defendant TINSLEY said he had a "big burrito" for Plaintiff WINN when he got to Miami. When Plaintiff WINN arrived in Miami, Plaintiff WINN realized that the "big burrito" was a clear innuendo from Defendant TINSLEY regarding Defendant TINSLEY's penis. Defendant TINSLEY continued sending Plaintiff WINN text messages asking him to work-out and eat healthy, as his "sex appeal is crucial to this band …" Defendant TINSLEY texted Plaintiff WINN in July 2016, in part:

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

> "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."

*See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

85.     While on this trip to Miami, Defendant TINSLEY took the band out shopping.  He bought Plaintiff WINN three (3) pairs of shoes, around a dozen shirts, a few pairs of pants, and a leather jacket. Defendant TINSLEY also gifted Plaintiff WINN a couple pairs of designer sunglasses. That night, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear.

86.     Yet again, Plaintiff WINN was disgusted by Defendant TINSLEY's gross obsession with Plaintiff WINN's dirty undergarments – but Plaintiff WINN continued to endure Defendant TINSLEY's sexual obsessions for the sake and success of the band.  Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of Plaintiff WINN's dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all the lavish gifts Defendant TINSLEY had just bought him.

87.     In mid-August 2016, the band played a show at the United Service Organizations Inc. ("USO") in Washington DC.[8]  After the show, the band and Defendant TINSLEY traveled to Defendant TINSLEY's house/recording studio compound in Charlottesville, Virginia.  Band member, Matt Frewen, decided he wanted to go back to see his family in Canada.  Charlie Csontos,

---

[8] United Service Organizations Inc. (USO) is a nonprofit organization that provides live entertainment, such as comedians and musicians, and other programs to members of the United States Armed Forces and their families.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 35

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Plaintiff WINN, and Defendant TINSLEY were talking in the living room when Defendant TINSLEY spontaneously began talking about "the time he had masturbated next to James." He spoke about it in full detail and said that "the reason he did it" was because of "the way James looked while he was sleeping" – that "he could not stop himself." Plaintiff WINN hearing Defendant TINSLEY explain with absolute detail and clarity what he had done to Plaintiff WINN in Nov. 2015 (when Defendant TINSLEY ejaculated next to Plaintiff WINN while masturbating and touching Plaintiff WINN's buttocks, then chased Plaintiff WINN through the compound) – Plaintiff WINN realized that Defendant TINSLEY had lied to him when telling Plaintiff WINN that he had mixed-up his pills and that "he couldn't remember what he had done" to Plaintiff WINN that night in Nov. 2015. Plaintiff WINN immediately became nauseous in coming to this harsh realization about Defendant TINSLEY – he decided to immediately fly back to San Francisco to see his girlfriend.

88.     Plaintiff WINN did not tell Defendant TINSLEY that he was going to San Francisco; Defendant TINSLEY assumed Plaintiff WINN was flying back to Seattle. The next day, when Defendant TINSLEY found out where Plaintiff WINN had gone, Defendant TINSLEY became enraged – Mr. Csontos told Plaintiff WINN how enraged Defendant TINSLEY had become and that Defendant TINSLEY had demanded that the whole band fly back to Seattle immediately for their next gig. Plaintiff WINN complied, but only so that he would be able to collect his belongings and leave the band. Upon arriving in to Seattle, Plaintiff WINN was told that the band needed to practice that night; he refused. He was angry at Mr. Csontos and disgusted by Defendant TINSLEY.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

89.     Defendant TINSLEY called Plaintiff WINN that evening, and Plaintiff WINN outlined for Defendant TINSLEY the numerous occasions on which Defendant TINSLEY had sexually harassed him.  Plaintiff WINN also told Defendant TINSLEY that what he did was inexcusable, predatory, and that Plaintiff WINN could no longer trust him after learning how Defendant TINSLEY had sexually assaulted him.  Defendant TINSLEY pleaded with Plaintiff WINN, trying to convince Plaintiff WINN to stay.  Towards the end of their conversation, when it was becoming clear to Defendant TINSLEY that Plaintiff WINN would not change his mind and stay with the band, Defendant TINSLEY accused Plaintiff WINN of "wanting something to happen" in New York City after the Speakeasy show in June 2016.  Plaintiff WINN laughed and asked Defendant TINSLEY what he was talking about, to which Defendant TINSLEY answered that Plaintiff WINN had been blacked-out drunk that night and had climbed into the bed on the tour bus with Defendant TINSLEY and another man (Matt Foley) and that Plaintiff WINN was "humping him" (Defendant TINSLEY).

90.     Defendant TINSLEY claimed he didn't know that Plaintiff WINN was blacked-out drunk, which is why he says Plaintiff WINN wanted something; he thought Plaintiff WINN was sober, but that was clearly not the case. Plaintiff WINN immediately told Defendant TINSLEY that he was done with the band and that Defendant TINSLEY was a sexual predator.  Plaintiff WINN immediately moved out of the band's Seattle apartment and returned to San Francisco to be with his girlfriend.  Defendant TINSLEY paid for Plaintiff WINN's trip back to San Francisco, his moving storage box, and gave him $1,000.00 to get situated.  Plaintiff WINN has not directly spoken with Defendant TINSLEY since then and has had no contact with Defendant TINSLEY since getting a new phone.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

91.     It was a huge decision for Plaintiff WINN to decide to leave the band – to walk away from the musical success and fulfillment he had only dreamed-of before Crystal Garden.  He felt that if he had stayed, he would be living in shame. Plaintiff WINN felt there was no honor in simply staying for the money and the lifestyle he had lived through Defendant TINSLEY – he knew it would not have felt right to continue living a lie – knowing that Defendant TINSLEY had sexually preyed on him, lied to him, and would continue doing so.

92.     Upon his return to San Francisco, Plaintiff WINN was not well – he was physically nauseous 24 hours a day.  He lost his appetite and could hardly eat.  He couldn't sleep and cried frequently – all he wanted to do was sit alone in a dark room.  Plaintiff WINN didn't even want to listen to music or attend live shows, much less perform live music with his friends like he had before he moved to Seattle.  Plaintiff WINN had slipped into a deep depression after leaving Crystal Garden.  He began seeing a therapist weekly.  Since leaving Crystal Garden, Plaintiff WINN has not been able to perform a musical show of his own.  Plaintiff WINN has performed at only a couple of open mic shows recently, playing other people's music – he has not been able to write or perform any of his own music since leaving behind his life and employment with Defendant TINSLEY.

93.     After months of Plaintiff WINN's worsening inability to "be present" with his girlfriend in most all situations, Plaintiff WINN's girlfriend broke-up with him.  Plaintiff WINN became suicidal.  Plaintiff WINN start working and became obsessed with staying busy – to the point of exhaustion.  Plaintiff WINN worked non-stop just so he would not have to be alone with his thoughts.  Plaintiff WINN then abruptly quit all his jobs in early 2017 to focus on getting well – his depression was not improving.  Plaintiff WINN considered legal action against Defendant

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

TINSLEY at that time, but he was too scared to do so.  He felt so alone – he was afraid of having to re-live what Defendant TINSLEY had done to him and worried about the effects it would have on his worsening depression.

94.    As a result of the unlawful acts inflicted on Plaintiff WINN by his former employer, Defendant TINSLEY, Plaintiff WINN has suffered physical and emotional repercussions for which he has been treated by health professionals, including but not limited to:

- Serious depression
- Anxiety disorder and panic attacks
- Nausea and vomiting
- Severe stomach and digestive issues, including ongoing diarrhea
- Severe headaches
- Chest pain and heart palpitations
- Severe stress
- Insomnia
- Loss of romantic relationships, including that Plaintiff WINN's beloved girlfriend broke-up with him due to the severe emotional distress & depression;
- Loss of community/social network; and
- Loss of desire and ability to write and perform music to the level he was able prior to the last month of his employment with Defendant TINSLEY.

## VI.    <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
### SEXUAL HARASSMENT – *QUID PRO QUO*
### Violation of WLAD/RCW § 49.60

95.    Plaintiff re-alleges and incorporates by reference paragraphs 1-94 of this Complaint.

96.    Defendant TINSLEY violated the WLAD (RCW § 49.60, *et seq*.) when he required his employee (Plaintiff WINN) to submit to unwelcome sexual conduct as a condition of receiving pay and/or tangible job benefits.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 39

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

### A.  General Background of WLAD and Sexual Harassment

97.     Sexual harassment constitutes a form of gender discrimination prohibited under the WLAD (RCW 49.60).  The WLAD is potent – a broad and remedial statute that was originally enacted in 1949 as an WA State employment discrimination law.  Washington State enacted the WLAD 15 years **before** the federal Civil Rights Act of 1964.  WLAD contains a sweeping policy statement both denouncing discrimination in a variety of forms and mandating that the law be liberally construed for the accomplishment of the purposes thereof.  In 1971, sex discrimination was added as a prohibited unfair practice in the WLAD (RCW 49.60).[9]

98.     RCW 49.60.010 provides, in part:

> The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of … sex …are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

RCW 49.60.030(1) provides that:

> The right to be free from discrimination because of ... sex ... is recognized as and declared to be a civil right. This right shall include, but not be limited to: (a) The right to obtain and hold employment without discrimination …

RCW 49.60.180(1)-(3) provides that:

> [I]t is an unfair practice for any employer to "refuse to hire  any person," to "discharge or bar any person from employment," or to "discriminate against any person in compensation or in other terms or  conditions of employment because of … sex."  "Sex" means "gender." RCW 49.60.040(14).

---

[9] *See*: Laws 1971, 1st Ex.Sess., ch. 81, § 3. *See also*: **J.S.K. Enterprises**, *supra* at 54 (discussing the 1971 amendment).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

B. **Elements of Sex Harassment Claim**

99.     Two theories, "disparate impact" and "disparate treatment," are available to a plaintiff attempting to prove discrimination in employment pursuant to RCW 49.60. In disparate treatment cases, the plaintiff must prove an unlawful discriminatory motive, meaning that the employer treats the plaintiff less favorably than others because of sex.  The disparate impact theory does not require proof of discriminatory intent because it addresses the discriminatory consequences of seemingly objective employment practices.  Plaintiff WINN's claims against Defendant TINSLEY fall under the "disparate treatment" theory because Defendant TINSLEY (employer) treated Plaintiff WINN less favorably than others because of sex.

100.     In disparate treatment cases like Plaintiff WINN's, the ultimate burden of proof is carried by the plaintiff, who (under the WLAD) must at trial "present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186–87, 23 P.3d 440 (2001) (*quoting Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311 (1995); *citing Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26 (1993), *amended*, 122 Wn.2d 483, 865 P.2d 507 (1994); *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, 149–50, 279 P.3d 500, 507–08 (Div. II, 2012). A "substantial factor" means that the protected characteristic was a significant motivating factor bringing about the employer's decision. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 444, 334 P.3d 541, 545 (2014); Substantial Factor, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.01.01 (6th ed.).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

101.    In resisting a summary judgment motion, the plaintiff's burden is only to "offer evidence that '(give[s] rise to an inference of unlawful discrimination.'" *Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1359 (9th Cir. 1985) (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1982)).  The plaintiff is entitled to select the method by which she or he will prove a *prima facie* case of disparate treatment. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, at 491–92, 859 P.2d 26 (1993); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn.App. 734, 744, 315 P.3d 610, 616 (Div. II, 2013); *Dominguez-Curry v. Nev. Transp. Dep't.,* 424 F.3d 1027, 1037 (9th Cir. 2005). Under any method of proof, the burdens on the plaintiff and defendant "are burdens of production, not of persuasion." *Barker v. Advanced Silicon Materials, LLC.*, 131 Wn.App. 616, 128 P.3d 633 (Div. III, 2006) (*citing Carle v. McChord Credit Union,* 65 Wn.App. 93, 98–102, 827 P.2d 1070 (Div. II, 1992)).

102.    The most common methods of proof for the *prima facie* case are either by direct evidence of discrimination, or by applying the flexible framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). *Id.,* at 490–91. However, the plaintiff may choose "some other method to meet the burden of producing evidence that would allow the fact finder to find unlawful discrimination by a preponderance of the evidence." *Johnson v. Dept. of Social and Health Services*, 80 Wn.App. 212, 227, n. 21, 907 P.2d 1223 (Div. II, 1996) (citing *Parsons v. St. Joseph's Hosp. and Health Care Ctr.*, 70 Wn.App. 804, 809, 856 P.2d 702 (Div. II, 1993)).

## C. *McDonnell Douglas* Burden-Shifting – Prima Facie Case

103.    Under the first prong of the ***McDonnell Douglas*** framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, which creates a presumption of

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

discrimination. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446, 334 P.3d 541, 545 (2014). Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the defendant meets this burden, the third prong of the **McDonnell Douglas** test requires the plaintiff to produce sufficient evidence that defendant's alleged nondiscriminatory reason for the employment action was a pretext." Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose. *Id*.

104.    Not all cases fit into the *McDonnell Douglas* method of proof, but when it is used, the burden shifting is not a rigid, mechanized, or ritualistic process, but instead should be used flexibly to address the facts in different cases. *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, at 158-59, 279 P.3d 500, 507–08 (Div. II, 2012). Thus, the elements for a *prima facie* case are not absolute and vary based on different factual situations. *Hill*, 144 Wn.2d at 181, n.2 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1982)*; McDonnell Douglas*, 411 U.S. at 802; *Grimwood v. Univ. of Puget Sound*, 110 Wn.2d 355, 363, 753 P.2d 517 (1988)). The **McDonnell Douglas** test has been stated variously. *See, e.g. Grimwood*, 110 Wn.2d at 362–64. "To state a *prima facie* case for gender discrimination in violation of Title VII and/or the WLAD, [plaintiff] a plaintiff must show at the summary judgment stage that (1) he/she belonged to a protected class; (2) he/she was qualified for the job; (3) he/she suffered an adverse employment action; and (4) similarly situated employees not in his/her protected class received more favorable treatment." *Wallace v. Grant Cty. Fire Dist. No. 5*, 2016 WL 5886880, at *7 (E.D. Wash. 2016).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

105.    Once the plaintiff has made out the *prima facie* case, the employer then must produce evidence of a legitimate non-discriminatory reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993); *Burdine*, 450 U.S. at 255–56. If the employer fails to meet this production burden, the plaintiff is entitled to an order establishing liability as a matter of law. *Wilmot v. Kaiser Aluminum & Chem. Corp.,* 118 Wn.2d 46, 70, 821 P.2d 18 (1991).

106.    If the employer fulfills the burden of production by showing a non-discriminatory reason for the action, the plaintiff must in turn prove that the employer's articulated reasons are a mere pretext for a discriminatory purpose. "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either: (1) that the defendant's reason is pretextual; or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446–47, 334 P.3d 541, 546 (2014); *see also Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) ("An employee can prove pretext either: (1) directly, by showing that unlawful discrimination more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.") (internal quotation marks omitted). *But see*: *Farah v. Hertz Transporting, Inc.*, 196 Wash. App. 171, 177–78, 383 P.3d 552, 557 (2016) (while

PLAINTIFF'S COMPLAINT FOR DAMAGES – 44

instruction that find employer's explanation to be is not believable might be appropriate, it was not error to refuse to give the instruction as the instructions given were adequate).[10]

### D. *Quid Pro Quo* **Sexual Harassment**

107.    Two types of sexual harassment evolved in the case law: *quid pro quo* and hostile work environment. *Antonius v. King County,* 153 Wn.2d 256, 261, 103 P.3d 729 (2004). *Quid pro quo* harassment exists where a supervisor requires an employee to submit to unwelcome sexual conduct as a condition of receiving tangible job benefits or takes negative, tangible employment actions against an employee for rejecting such advances. *Glasgow v. Georgia Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985); *see also*: *DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996).   Hostile work environment harassment (discussed in detail below under "SECOND CAUSE OF ACTION") exists where co-workers or supervisors direct conduct or behavior toward an employee because of his sex that creates an intimidating, hostile, or offensive working environment. *Id*.

108.    WA State courts continue to recognize *quid pro quo* sexual harassment as distinct from hostile work environment sexual harassment. *See e.g.*: *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729, 735 (2004); *Washington v. Boeing Co.*, 105 Wn. App. 1, 9-10, 19 P.3d 1041 (Div. I, 2000); *Henningsen v. Worldcom*, 102 Wn. App. 828, 836-37, 9 P.3d 948 (Div. I, 2000).

---

[10] If there is no evidence of pretext, the plaintiff has not carried the burden of production and the employer is entitled to dismissal as a matter of law. *Kastanis*, 122 Wn.2d at 491 (citing *Loeb v. Textron, Inc*., 600 F.2d 1003, 1011–12 (1st Cir. 1979) and *Grimwood*, 110 Wn.2d at 365); *Douglas*, 656 F.2d at 535; *Hill*, 144 Wn.2d at 185–86.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

109.    To establish a *quid pro quo* sexual harassment claim, an employee must prove that the supervisor or manager subjected him/her to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened a change in the plaintiff's status or conditions of employment if he/she submitted to the conduct or advances. *See*: *DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996); WPI 330.22. *See also*: *Schonauer v. DCR Entertainment*, 79 Wn. App. 808, 824, 905 P.2d 392 (Div. II, 1995), *rev. den'd*, 129 Wn.2d 1014 (1996).

110.    "In contrast to hostile work environment harassment, the harasser's conduct need not be pervasive, and ***one incident*** may be enough to support a cause of action." *Schonauer*, 79 Wn. App. at 823 (*quoting Keppler v. Hinsdale Township High Sch. Dist. 86*, 715 F. Supp. 862, 867 (N.D. Ill. 1989)) (emphasis added).  Some courts appear to articulate another requirement – that the *quid pro quo* involves a tangible job "benefit" or detriment. In a *quid pro quo* harassment case, the plaintiff "seeks damages from her employer for a supervisor's or the employer's extortion or attempted extortion of 'sexual consideration ... as a *quid pro quo* for job benefits.'" *Thompson v. Berta Enterprises*, 72 Wn. App. 531, 536, 864 P.2d 983 (Div. I, 1994) citing *Glasgow*, 103 Wn.2d at 405; *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399 (1986).  If an employee submits to a supervisor's threat conditioning employment benefits on sexual activity, the "tangible employment action" requirement is met. *Holly D. v. Cal. Inst. Of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003).

111.    Harassment is unlawful when the employee accedes to the supervisor's unlawful demands and receives a beneficial tangible employment benefit, as well. *Henningsen v. Worldcom*, 102 Wn. App. 828, 836-37, 9 P.3d 948 (Div. I, 2000).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 46

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

"[A]lthough the tangible employment action was a **promotion** rather than a demotion or other action having adverse economic consequences, **the promotion was coupled with repeated sexual demands and implicit threats of adverse employment consequences unless [plaintiff] continued to pay what [her supervisor] felt she owed him for the promotion. The hostile work environment was inextricably tied to the tangible employment decision**."

*Henningsen,* 102 Wn. App. at 843 (emphasis added).

112.    Here, like in *Henningsen*, employer Defendant TINSLEY made it clear to employee Plaintiff WINN (verbally and via text messages) that Plaintiff WINN's continued compliance with Defendant TINSLEY's sex-based demands was "inextricably tied" to Plaintiff WINN's continued "success" with the band. ***Just three months after Plaintiff WINN opposed Defendant TINSLEY's illegal activity*** in Nov. 2015 (by complaining to Defendant TINSLEY and Defendant TINSLEY's supervisor-level employee that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop) Defendant TINSLEY continued with his sex-based demands of Plaintiff WINN, tying Plaintiff WINN's compliance with Defendant TINSLEY's demands to Plaintiff WINN's continued "success" with the band:

- <u>March 2016</u> – Defendant TINSLEY texted Plaintiff WINN that he wanted to **"sexually exploit him for the band's success."** (emphasis added)

- <u>March 28, 2016</u>, at 10:09 PM – Defendant TINSLEY texted Plaintiff WINN: "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. **Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)."

- <u>June 2016</u> – Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band.**

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

**You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." (emphasis added)**

113.   Plaintiff WINN can clearly establish a *quid pro quo* sexual harassment claim against Defendant TINSLEY, as the evidence supports that Defendant TINSLEY subjected Plaintiff WINN to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened Plaintiff WINN that conceding to Defendant TINSLEY's sexual advances and/or sex-based demands would equate to Plaintiff WINN's continued employment/financial support/success of himself and even the band as whole.  Examples include, but are not limited to:

- <u>Nov. 2015</u>: Defendant TINSLEY bought five (5) tickets to the Seahawks game for his employee, Plaintiff WINN, and other band members & friends. **Defendant TINSLEY commented on the cost and said to Plaintiff WINN "man you better suck my dick or something."** (emphasis added)

- <u>Nov. 2015</u>: Defendant TINSLEY **ejaculated directly next to (touching) his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks.** Plaintiff WINN immediately awoke, screamed "What the fuck??!" to Defendant TINSLEY and ran out of the room. Defendant TINSLEY then chased Plaintiff WINN through the house and nearby recording studio.  Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- <u>March 2016</u>: Defendant TINSLEY texted Plaintiff WINN that he wanted to "**sexually exploit him for the band's success.**" (emphasis added)

- <u>March 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. **I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear** … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. **I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)." (emphasis added)

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

- <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "**I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny.** :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol." (emphasis added)

- <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. **Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw … Dude you're the bait. Our secret (weapon)."** (emphasis added)

- <u>July 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "**I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."** (emphasis added)

- <u>July 2016</u>: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, **I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?"** *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

- <u>July 2016</u>: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band**. You have one of the most beautiful faces of anyone I've ever known. **I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."** *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

- <u>July 2016</u>: While on tour in Miami, FL, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of his dirty underwear that were in the bathroom; **Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him. Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible.** You can keep your pants on, no belt or underwear or shoes or socks.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 49

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

114.    Defendant TINSLEY exploited his employee, Plaintiff WINN, for his own sexual pleasure and fantasies – as well as for the success of the band, Crystal Garden.  Plaintiff WINN can clearly establish a *quid pro quo* sexual harassment claim against Defendant TINSLEY, as the evidence supports that Defendant TINSLEY subjected Plaintiff WINN to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened Plaintiff WINN that conceding to Defendant TINSLEY's sexual advances and/or sex-based demands would equate to Plaintiff WINN's continued employment/financial support/success of himself and even the band as whole.

### E.   Damages for Violation of WLAD/RCW § 49.60

115.    As a direct result of Defendant TINSLEY's *quid pro quo* sexual harassment against Plaintiff WINN, as herein outlined, Plaintiff WINN has suffered loss for which he is owed damages from Defendant TINSLEY, including lost wages, back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain and suffering, damage to reputation, damage to future earning potential, depression, anxiety, and significant loss of enjoyment of life, attorney's fees and costs.

116.    Remedies for violation of the WLAD are broad.  The WLAD provides that:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or ***to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees*** or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended…

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*See* RCW 49.60.030(2).  This includes, but is not limited to economic damages (back pay/front pay), compensatory damages, lost wages, impact of future earnings, recovery for personal injuries for emotional distress, humiliation, pain and suffering, damage to reputation, damage to future earning potential, depression, anxiety, and significant loss of enjoyment of life, attorney's fees and costs.

117.    Economic damages here will be based primarily on Plaintiff WINN's "Post-Termination Circumstance" and are comprised of Back Pay and Front Pay.

### Back Pay Damages

118.    Back pay damages place the Plaintiff in the proper wage position they would have occupied absent discrimination from the Defendant.  Calculated from the start date of discrimination to the date of judgment (plus 12% annual interest).  *See Martini v. Boeing Co*., 137 Wn.2d 357, 367 (1999).  Once the plaintiff establishes that unlawful discrimination caused her loss, she is entitled to back pay. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975) (holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole).

119.    Back pay damages compensate the victim of discrimination for lost wages "for a reasonably certain period of time that does not exceed the likely duration of the discriminated employment."  *See, e.g., Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 114 Wn. App. 80, 88, 55 P.3d 1208, 1212 (2002) (*citing Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 43 P.3d 1223 (2002)).  Back pay damages are awarded to victims of discrimination based on their "Post-Termination Circumstance" until the time the claims are resolved.  For these damages, WA courts have allowed jury awards of 2.5 years loss of wages and pension benefits as

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

compensation for a Plaintiff employee who, like Plaintiff WINN, has become withdrawn from his former pre-discharge life as a result of his former employer's unlawful actions, is therefore not engaged in "an active employment search," and "[has] not returned to [a] labor market of comparable earnings [to that they were earning at the time of termination." *See, e.g., Collins v. Clark County Fire Dist. No. 5*, 231 P.3d 1211, 155 Wn.App. 48 (Wash.App. Div. 2, 2010).

120.    Since his constructive discharge by Defendant TINSLEY, Plaintiff WINN's humiliation and severe emotional distress have caused him to have paranoia and fear about returning to musical work to the level he had when working for Defendant TINSLEY. He has not engaged in an active employment search and has not returned to a labor market of comparable earnings to that he was earning at the time of his constructive discharge from Defendant TINSLEY. As such, Plaintiff WINN has earned ***far below*** his earning potential (certainly well below what he had earned working for Defendant TINSLEY) and below that which he ***would have earned*** if he still retained his employment position with Defendant TINSLEY.

121.    Back pay is generally awarded from the occurrence of the alleged discrimination until the harm suffered by the plaintiff is redressed. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986).

### Front Pay Damages

122.    Front pay and loss of future earning damages are prospective compensation from the date of trial (or resolution of the case) to a point in the future when the successful plaintiff can be presumed to be re-employed or retired. *See, e.g., Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 114 Wn. App. 80, 88, 55 P.3d 1208, 1212 (2002).    Whereas the calculation of back pay involves ascertaining economic losses already suffered, calculating

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

front pay requires anticipating economic losses that the plaintiff will experience in the future. The method for calculating front pay involves three steps: (1) project the plaintiff's likely earnings from the defendant but for the illegal act for the period he or she could reasonably be expected to have worked for the defendant; (2) from that amount subtract the plaintiff's projected earnings from alternate employment; and (3) reduce the resulting estimated future earnings to a present, lump-sum value.

123.    Plaintiff WINN was employed by Defendant TINSLEY for open-ended, on-going musical work with band, Crystal Garden, as well as for open-ended, on-going work on Defendant TINSLEY's film documentary (featuring Plaintiff WINN). Absent the sexual harassment, retaliation and constructive discharge from Defendant TINSLEY, Plaintiff WINN would have continued to work for Defendant TINSLEY on this open-ended, on-going employment certainly for years following his August 2015 constructive discharge.

124.    Under Washington law, "[o]nce an employee produces evidence from which a reasonable future employment period may be projected, the amount of front pay, including the likely duration of employment, should go to the jury."[11] Jury verdicts with substantial front pay should be upheld where sufficient evidence justifies the award even under the federal anti-discrimination statutes. *See, e.g., Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2nd Cir. 1992) (upholding 17-year front-pay award to age discrimination victim), *cert. den'd*, 506 U.S. 826, 113

---

[11] *Lords v. Northern Automotive*, 75 Wn. App. 589, 607, 881 P.2d 256 (Div. 3, 1994) (the court specifically rejected the trial court's arbitrary limit of five years and remanded the case for a new trial on economic damages, correctly concluding: "[F]ront pay, as well as back pay, is a consideration for the jury."). *Xieng v. Peoples Nat. Bank of Washington*, 63 Wn.App. 572, 583, 821 P.2d 520 (Wash.App. Div. 1 1991); *Hayes v. Trulock*, 51 Wn. App. 795, 802, 755 P.2d 830 (Div. I, 1988); *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 114 Wn. App. 80, 89-90, 55 P.3d 1208 (Div. I, 2002), *rev'd on other grounds*, 151 Wn.2d 203, 69 P.3d 875 (2003); *Ford v. Trendwest Resorts, Inc*., 146 Wn.2d 146, 163, 43 P.3d 1223 (2002).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

S.Ct. 82 (1992); *Newhouse v. McCormick & Co., Inc.*, 910 F. Supp. 1451 (D. Neb. 1996) (finding that a jury could reasonably believe that a vigorous-appearing 63-year-old man who loved his work and had no plans to retire would have worked to age 70) *aff'd in part and rev'd in part*, 110 F.3d 635 (8th Cir. 1997).

### **Compensatory Damages**

125.    The WLAD provides for an award of compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, and loss of quality of life. *Martini v. Boeing Co*., 137 Wn.2d 357, 367 (1999); *Ellingson v. Spokane Mortg. Co*., 19 Wn.App. 48, 573 P.2d 389 (1978); *Dean v. Municipality of Metropolitan Seattle-Metro*, 104 Wn2d 627, 708 P.2d 393 (1985).  Damages for loss of future earning capacity are awarded to claimants like Plaintiff WINN whose ability to earn income will continue to be impaired after the trial (or resolution of their legal case) due to factors including severe emotional distress.  Compensation for loss of earning capacity is, theoretically, not compensation for lost future wages, but is compensation for loss of the <u>ability</u> to earn income as the employee had earned at the time of termination (prior to the extreme emotional distress that followed as a result of the termination or constructive discharge). It is not loss of earnings but, rather, loss of earning capacity for which compensation must be made…. A capital asset has been lost: what was its value? *See, e.g*., *Andrews v. Grand & Toy Alberta Ltd*., 2 S.C.R. 229 at 251 (1978).  This is a question for the jury.

126.    Under the WLAD/RCW 49.60, medical testimony is not necessary to establish the causation of emotional distress damages. *Negron v. Snoqualmie Valley Hosp*., 86 Wn. App. 579, 936 P.2d 55, 1997 Wash. App. LEXIS 706 (Wash. Ct. App. 1997).  Under WLAD/RCW 49.60, a

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

plaintiff is not required to prove that emotional distress was intended or reasonably foreseeable in order to recover damages for distress. *Id*.

## Attorney's Fees

127.    Attorney's Fees are available and awarded to victims of sexual harassment pursuant to WLAD. RCW 49.60.030(2). *See also, Martini v. Boeing Co*., 137 Wn.2d 357, 367 (1999). Washington has two important statutes providing for recovery of attorney's fees, Washington's wage statute, RCW 49.48.030, and the WLAD, RCW 49.60.030.  RCW 49.48.030 provides: "In any action in which any person is successful in recovering judgment for wages or salary owed to him [sic], reasonable attorney fees … shall be assessed against said employer…"

128.    RCW 49.60.030 provides that if a plaintiff prevails, she or he may recover reasonable attorneys' fees.  In determining what constitutes a reasonable fee award, courts should be mindful that this remedy provision is "to be construed liberally in order to encourage enforcement of the Law Against Discrimination." *Blair v. Wash. State Univ*., 108 Wn.2d 558, 572, 740 P.2d 1379 (1987), *citing Anderson v. Gold Seal Vineyard, Inc*., 81 Wn.2d 863, 505 P.2d 790 (1985); *see also*: *Moritzky v. Herberlien*, 40 Wn. App. 181, 183, 697 P.2d 1023 (1985); *Pham v. City of Seattle*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

129.    The courts have viewed prevailing market rates as the best determinate of "reasonable fees."  In *Bowers v. Transamerica Title Ins. Co*., 100 Wn.2d 581, 675 P.2d 193 (1983), the Washington Supreme Court adopted the federal formula for calculating attorneys' fee awards and accepted and expanded on the importance and propriety of a multiplier.

130.    Plaintiff WINN is entitled to, and will seek, attorney's fees against Defendant TINSLEY.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 55

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

### SECOND CAUSE OF ACTION
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### Violation of WLAD/RCW § 49.60

131.    Plaintiff WINN re-alleges and incorporates by reference paragraphs 1-130 of this Complaint.

132.    Defendant TINSLEY violated the WLAD (RCW § 49.60, *et seq.*) when he directed conduct or behavior toward his employee (Plaintiff WINN) because of Plaintiff WINN's sex that created an intimidating, hostile, or offensive working environment for Plaintiff WINN that became a condition of Plaintiff WINN's work environment.

133.    Although Defendant TINSLEY's unlawful acts against Plaintiff WINN meet the elements for quid pro quo sexual harassment in violation of WLAD (as outlined above), Defendant TINSLEY's acts against Plaintiff WINN also meet the criteria for hostile work environment sexual harassment in violation of the WLAD. Pursuant to the Washington State Law Against Discrimination (WLAD):

> "[i]t is an unfair practice for any employer ... [t]o discriminate against any person in compensation or in other terms or ***conditions of employment*** because of age, sex/gender, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability[.]"

*See* RCW 49.60.180(3) (emphasis added).

134.    The WLAD protects employees from hostile work environment. *See, e.g., Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (*citing Coville v. Cobarc Servs., Inc.*, 73 Wash.App. 433, 438, 869 P.2d 1103 (1994); *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985)). To demonstrate a hostile work environment claim, a plaintiff must prove that:

- The harassment was unwelcome;

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

- The harassment was because of sex;
- The harassment affected the terms or conditions of employment; and
- The harassment is imputable to the employer.

*See Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 124 Wn.App. 71 (Wash.App. Div. 1 2004), *citing Robel v. Roundup Corp.*, 148 Wash.2d 35, 44-45, 59 P.3d 611 (2002) and *Glasgow v. Georgia-Pac. Corp.*, 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985). Here, Plaintiff WINN will present clear evidence that he meets all four elements required for gender-based hostile work environment by Defendant TINSLEY in violation of the WLAD (RCW 49.60):

**A.  Defendant TINSLEY's Conduct was Unwelcome by Plaintiff WINN**

135.  Defendant TINSLEY's harassment towards Plaintiff WINN based on his gender/sex was clearly unwelcome. Plaintiff WINN made it very clear on several occasions to Defendant TINSLEY and to supervisor-level employees of Defendant TINSLEY's (*e.g.*, Mr. Craig Conard, Crystal Garden's band music engineer and longtime employee of Defendant TINSLEY) that Defendant TINSLEY's sexual harassing acts toward him were not welcome:

- Immediately after the Nov. 2015 incident at Defendant TINSLEY's home/recording studio, when Defendant TINSLEY ejaculated right next to his sleeping employee (Plaintiff WINN) while touching Plaintiff WINN's buttocks, Plaintiff WINN opposed Defendant TINSLEY's illegal activity of sexually assaulting him when he immediately jumped up saying to Defendant TINSLEY in shock, "What the fuck?!" Plaintiff WINN then ran from Defendant TINSLEY as Defendant TINSLEY followed Plaintiff WINN through the recording studio and house. Plaintiff WINN ultimately had to hide in the bathroom to avoid Defendant TINSLEY's continued sexual advances that evening. Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong, unwelcome, and he complained to his employer (Defendant TINSLEY) that he wanted the behavior to stop.

- A few hours later, Plaintiff WINN again made it clear that Defendant TINSLEY's sex-based behavior towards him was unwelcome when he spoke with Mr. Craig Conard, Crystal Garden's band music engineer and a longtime employee of Defendant TINSLEY's. Plaintiff WINN explained to Mr. Craig

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Conard in detail the sexual acts that Defendant TINSLEY had inflicted upon him just a few hours prior.  Mr. Craig Conard is a longtime employee of Defendant TINSLEY's who worked with Plaintiff WINN and Crystal Garden in the recording of their music.  Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong, unwelcome, and he complained to his employer that he wanted the behavior to stop.

- Defendant TINSLEY tried to convince Plaintiff WINN to stay.  Plaintiff WINN again made it crystal clear that Defendant TINSLEY's sex-based behavior towards him was unwelcome when he flat-out refused to stay, saying that he didn't want to be alone with his employer Defendant TINSLEY due to the unwelcome sexual acts he had just endured from Defendant TINSLEY.

The "unwelcome" element of Plaintiff WINN's hostile work environment claim against Defendant TINSLEY is clearly met.

## B.  The Harassment from Defendant TINSLEY was "Because of Sex"

136.    A plaintiff may demonstrate pretext or discriminatory intent by the employer by showing disparate treatment, *i.e.*, that he was treated differently from similarly situated employees outside the protected class, whether intentionally ***or unintentionally*** by the employer.  The pattern of results regarding treatment of those in and outside the protected class is what the courts consider, not the intentional or unintentional mental state of the employer in carrying out those acts. *See Hume v. Am. Disposal Co.*, 124 Wash.2d 656, 668, 880 P.2d 988 (1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995).

137.    Plaintiffs have used avenues of proof similar to those used in discrimination cases involving other protected classifications, including: (1) adverse treatment compared to similarly situated employees of the other sex, ***Marquis v. City of Spokane***, 130 Wn.2d 97, at 114-115, 922 P.2d 43 (1996); *Crownover v. State ex rel. Dept. of Transp.*, 165 Wn.App. 131, 147, 265 P.3d 971, 980 (Div. III, 2011) *review den'd,* 173 Wn.2d 1030, 274 P.3d 374 (2012) and (2) evidence of

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

hostility to employees of one sex by the actor or decision-maker, *Payne v. Children's Home Society*, 77 Wn.App. 507, 511–13, 892 P.2d 1102 (Div. III, 1995); *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 356-257, 172 P.3d 688 (2007) (hostility to the presence of pregnant women in the workplace suffices to prove sex discrimination).

138.    These avenues of proof also apply in sexual harassment cases, where there is the additional avenue of proof that plaintiff suffered sexually offensive verbiage or conduct raising an un-rebutted inference that the conduct was directed at her or him because of sex. *Rene v. MGM Grand Hotel, Inc*., 305 F.3d 1061, 1165–67 (9th Cir. 2002) (plurality of *en banc* panel) (Plaintiff stated a Title VII claim because "[s]uch harassment – 'grabbing, poking, rubbing or mouthing areas of the body linked to sexuality' – is inescapably 'because of ... sex.'") (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)). In sexual harassment cases involving "explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998).

139.    Here, Defendant TINSLEY's sex-based pervasive workplace harassment towards Plaintiff WINN was directed towards Defendant TINSLEY's employees of the <u>male gender</u>, including Plaintiff WINN.  As a male employee targeted sexually by his employer, Defendant TINSLEY, Plaintiff WINN's male gender becomes Plaintiff WINN's "protected class" because his male gender is one of the motivating factors for Defendant TINSLEY's harassment towards Plaintiff WINN (as opposed to if Plaintiff WINN were female gender – Defendant TINSLEY did not target the female gender).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

### a) **Pattern by Defendant TINSLEY of sexually harassing his male gender employees**

140.    In addition to Plaintiff WINN, other current and former male employees of Defendant TINSLEY have endured sex-based harassment.  Charlie Csontos (Plaintiff WINN's Crystal Garden band-mate) shared with Plaintiff WINN in Nov. 2015 that he had experienced similar creepy sexually harassing acts from their employer, Defendant TINSLEY, when he and Defendant TINSLEY were in London a few months prior.  Charlie, like Plaintiff WINN, is male and this continues the pattern by Defendant TINSLEY of sexually harassing his male gender employees.  There have also been complaints brought forward by other former young male employees of Defendant TINSLEY, claiming similar sexually harassing acts as Plaintiff WINN and Charlie experienced.  Those claims were settled out of court for an undisclosed financial sum.  Here, Plaintiff WINN can clearly demonstrate pretext or discriminatory intent by Defendant TINSLEY by showing disparate treatment.

### C. **Harassment affected the terms or conditions of Plaintiff WINN's employment**

141.    The WA state Supreme Court addressed this element in *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985), stating:

> Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.

*See Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (*citing Glasgow*, 103 Wash.2d at 406, 693 P.2d 708); *see also Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004) (*citing Glasgow*, 103 Wash.2d at 406-07, 693 P.2d 708).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 60

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

142.    Here, Defendant TINSLEY's pervasive workplace harassment towards his employee, Plaintiff WINN, continued for twelve (12) months and Defendant TINSLEY's consistent failure to cease the clearly unwelcome sex-based harassment he was inflicting upon Plaintiff WINN clearly affected the terms and conditions of Plaintiff WINN's employment with Defendant TINSLEY.    Defendant TINSLEY's consistent sex-based harassing work-place behavior towards Plaintiff WINN was not "casual, isolated or trivial," as evidenced by:

- The egregious nature of the Nov. 2015 incident where Defendant TINSLEY ejaculated directly next to (touching) his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks, then Defendant TINSLEY chased Plaintiff WINN through the house and nearby recording studio.  Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- The numerous sexual text messages and other sex-based demands from Defendant TINSLEY to Plaintiff WINN from January-August 2016 (at which time Plaintiff WINN finally felt he had no choice but to resign from his employment with Defendant TINSLEY/constructive discharge due to the ongoing pervasive sexual harassment he was forced to endure), including, but not limited to:

  ✓ <u>March 2016</u>: Defendant TINSLEY texted Plaintiff WINN that he wanted to "sexually exploit him for the band's success."

  ✓ <u>March 2016</u>: Defendant TINSLEY texted Plaintiff WINN that he "was masturbating at the thought of a sexy photo shoot of James."

  ✓ <u>March 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

✓ <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

✓ <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw … Dude you're the bait. Our secret (weapon)."

✓ <u>July 2016</u>: Defendant TINSLEY texted to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

✓ <u>July 2016</u>: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?" *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ <u>July 2016</u>: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ <u>July 2016</u>: While on tour in Miami, FL, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of his dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him. Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or

PLAINTIFF'S COMPLAINT FOR DAMAGES – 62

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

143.    Defendant TINSLEY's 12+ months of sex-based harassing acts towards Plaintiff WINN were clearly not "casual, isolated or trivial." The pervasiveness of Defendant TINSLEY's sex-based text messages, sex-based verbal demands and sex-based physical acts towards his employee, Plaintiff WINN, clearly affected the terms or conditions of Plaintiff WINN's employment and meet the third element required for proving hostile work environment.

**D.    Imputable to the Employer (Defendant TINSLEY) – Vicarious Liability**

144.    The fourth element of Plaintiff WINN's prima facie case for hostile work environment against his employer, Defendant TINSLEY, involves imputing the actions of Plaintiff WINN's harasser (Defendant TINSLEY) to Plaintiff WINN's employer – in this case, the two are one in the same. This fourth element is also referred to as Vicarious Liability.    This element is clearly met here.

145.    Harassment is imputed to an employer in one of two ways. *See Davis v. Fred's Appliance, Inc*., 287 P.3d 51 (Wash.App. Div. 3 2012) (*citing Glasgow*, 103 Wash.2d at 407, 693 P.2d 708); *see also Vance v. Ball State University*, 133 S. Ct. 2434 (2013).

- First, it can be imputed to the employer if the harasser is an owner, partner, corporate officer, or manager.[12]

    **OR**

- Second, it can be imputed to the employer if the harasser is the plaintiff's supervisor or co-worker if the employer "authorized, knew, or should have

---

[12] Under WA law, harassment by a company owner, manager, partner, or corporate officer is automatically imputed to the employer. *Glasgow*, 103 Wn.2d at 405; *see also*: *DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 63

known of the harassment and ... failed to take reasonably prompt and adequate corrective action."

*Id.*  Only one of these two scenarios is required under the law to meet the fourth element in proving hostile work environment.  The first scenario exists here: Defendant TINSLEY (the harasser) was at all times relevant the creator and owner of Crystal Garden and the employer of Plaintiff WINN.  As such, Defendant TINSLEY qualifies as "an owner, partner, corporate officer, or manager" of Plaintiff WINN's employer and thus liability for Defendant TINSLEY's sex-based harassment towards Plaintiff WINN is clearly "imputed" to Defendant TINSLEY.  This factor is more at issue in scenarios where the harasser is the supervisor of a large company and the company denies ever having knowledge of the harassing acts of that supervisor towards the plaintiff's employee.[13]

146.    Plaintiff WINN will present clear evidence at trial that he meets all four elements required for proving that his employer (Defendant TINSLEY) created and perpetuated a pervasive gender/sex-based hostile work environment in violation of the WLAD (RCW 49.60).

\* \* \* \* \*

147.    It is worth noting that evidence of intentional discrimination or even intent by the employer is not required for establishing disparate treatment and hostile work environment claims, but rather "[t]he purpose of showing disparate treatment is to create an inference of discriminatory

---

[13] Regarding this element of hostile work environment, the federal Equal Employment Opportunity Commission ("EEOC") has noted: "When an employer receives a complaint or otherwise learns of alleged … harassment in the workplace, the employer should investigate promptly and thoroughly.  The employer should take immediate and appropriate corrective action by doing whatever is necessary to end the harassment, make the victim whole by restoring lost employment benefits or opportunities, and prevent the misconduct from recurring.  Disciplinary action against the offending supervisor or employee, ranging from reprimand to discharge, may be necessary. Generally, the corrective action should reflect the severity of the conduct." *See Perry v. Costco Wholesale, Inc*., 98 P.3d 1264, 123 Wn.App. 783 (Wash.App. Div. 1 2004) (*citing* U.S. EEOC, Policy Guidance on Current Issues of Harassment – http://www.eeoc.gov/policy/docs/currentissues.html (site last visited Dec. 31, 2017)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 64

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

animus because direct evidence of discrimination is rarely available." *Johnson v. Department of Social & Health Services*, 907 P.2d 1223, 1232 (*citing Carle v. McChord Credit Union*, 65 Wash.App. 93, 827 P.2d 1070 (1992) (affirming denial of directed verdict where no direct evidence of discriminatory intent was presented)).

148.    The Ninth Circuit (of which WA State is a part and follows) held in *EEOC v. NEA (E.E.O.C. v. National Educ. Ass'n., Alaska*, 422 F.3d 840 (9th Cir. 2005)) that "plaintiffs do not need to prove that Harvey had a specific intent to discriminate against women or to target them 'as women,' as the district court put it, whether sexually or otherwise."  422 F.3d at 844.  Quoting a previous Ninth Circuit decision, the Court recognized that "Title VII is not a fault-based tort scheme.  Title VII is aimed at the consequences or effects of an employment practice **and not ... the motivation of co-workers or employers.**"  *Id.* at 844-45, *quoting Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir. 1991) (Emphasis added) "(In *Ellison*) we held that conduct may be 'unlawful sexual harassment even when harassers do not realize that their conduct creates a hostile working environment.'" *Id.* at 845, *quoting Ellison*, 924 F.2d at 880.

149.    In *Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991) the court discusses the "pervasiveness" element of a hostile work environment case but in so doing, on page 878, explains how the intent of the alleged harasser is irrelevant – what matters is if a reasonable person in the alleged victim's shoes would find the behavior offensive:

> We therefore prefer to analyze harassment from the victim's perspective. 3A complete understanding of the victim's view requires, among other things, an analysis of the different perspectives of men and women. Conduct that many men consider unobjectionable may offend many women. *See, e.g., Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988) ("A male supervisor might believe, for example, that it is legitimate for him to tell a female subordinate that she has a `great figure' or `nice legs.' 1The female

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

subordinate, however, may find such comments offensive"); Yates, 819 F.2d at 637, n. 2 ("men and women are vulnerable in different ways and offended by different behavior"). 2See also Ehrenreich, Pluralist Myths and Powerless Men: The Ideology of Reasonableness in Sexual Harassment Law, 99 Yale L.J. 1177, 1207-1208 (1990) (men tend to view some forms of sexual harassment as "harmless social interactions to which only overly-sensitive women would object"); Abrams, Gender Discrimination and the Transformation of Workplace Norms, 42 Vand.L.Rev. 1183, 1203 (1989) (the characteristically male view depicts sexual harassment as comparatively harmless amusement).

*Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991).  Under 9th Circuit and WA State law, it does not matter if the alleged harasser thinks what he/she is doing is inoffensive and not malicious.  As such, for Plaintiff WINN to prevail on his *prima facie* case of sexual harassment against Defendant TINSLEY, it does not matter if Defendant TINSLEY thinks or thought at the time that what he was doing was inoffensive and/or not malicious.

### E. Damages for Hostile Work Environment in Violation of WLAD/RCW § 49.60

150.    As a result of Defendant TINSLEY creating and perpetuating a hostile work environment against his employee, Plaintiff WINN, in violation of the WLAD (RCW 49.60), Plaintiff WINN is entitled to the same damages under the WLAD as he is entitled to for Defendant TINSLEY's quid pro quo sexual harassment against him (outlined in detail above).  Defendant TINSLEY's violation of the WLAD for hostile work environment against Plaintiff WINN provides for an award to Plaintiff WINN of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

**THIRD CAUSE OF ACTION**
**RETALIATION – Violation of WLAD/RCW § 49.60**

151.     Plaintiff re-alleges and incorporates by reference paragraphs 1-150 of this Complaint.

152.     Defendant TINSLEY's conduct against Plaintiff WINN, as herein outlined, constitutes retaliation in violation of RCW 49.60.210(1), which prohibits an employer from discriminating against an employee because he/she has opposed a discriminatory practice protected by the WLAD/RCW 49.60.

153.     "The WLAD forbids an employer to … discriminate against an employee in retaliation for his/her 'oppos[ing] any practices forbidden by [RCW 49.60]' or for filing a charge, testifying, or assisting in a discrimination proceeding." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing* RCW 49.60.210(1); *Milligan v. Thompson*, 110 Wn.App. 628, 638, 42 P.3d 418 (2002)).

**A.  *McDonnell Douglas* Burden-Shifting Scheme for Retaliation**

154.     In determining whether an employer has retaliated against an employee in violation of the WLAD, WA courts apply the federal *McDonnell Douglas* burden-shifting scheme that the WA Supreme Court first adopted in *Hill v. BCTI Income Fund-I* for state-law discrimination claims. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hill v. BCTI Income Fund-I,* 144 Wash.2d 172, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.,* 157 Wash.2d 214, 137 P.3d 844 (2006)); *Renz v. Spokane*

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*Eye Clinic*, P.S., 114 Wash.App. 611, 618, 60 P.3d 106 (2002); *Milligan v. Thompson*, 110 Wash.App. 628, 638, 42 P.3d 418 (2002).

155.    Under this burden-shifting scheme, the employee must first establish a prima facie case of retaliation. *See Short*, 279 P.3d 902 (*citing Renz*, 114 Wash.App. at 618, 60 P.3d 106). If the employee fails to establish a prima facie case, then the defendant employer is entitled to summary judgment as a matter of law. *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440). "If, however, the employee succeeds in establishing a prima facie case, a 'legally mandatory, rebuttable presumption' of retaliation temporarily takes hold, and the burden shifts to the employer to produce admissible evidence of a legitimate, non-retaliatory reason for its adverse employment action." *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440 (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Renz*, 114 Wash.App. at 618, 60 P.3d 106).

156.    "If the employer fails to meet its burden, the employee is entitled to an order establishing liability as a matter of law because no issue of fact remains in the case." *Id.* (*citing Hill*, 144 Wash.2d at 181-82, 23 P.3d 440; *Renz*, 114 Wash.App. at 618, 60 P.3d 106). "If the employer provides such legitimate non-retaliatory reason, then the burden shifts back to the employee to show that the employer's reason is actually pretext for what, in fact, was a retaliatory purpose for its adverse employment action." *Id.* (*citing Grimwood*, 110 Wash.2d at 364, 753 P.2d 517; *Renz*, 114 Wash.App. at 618-19, 60 P.3d 106). "If the employee fails to make this showing, however, the employer is entitled to judgment as a matter of law." *Id.* (*citing Hill*, 144 Wash.2d at 182, 23 P.3d 440; *Renz*, 114 Wash.App. at 619, 60 P.3d 106).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

B. **Prima Facie Case of Retaliation**

157.    "To establish a prima facie case of retaliation, an employee must show that (1) she engaged in a statutorily protected activity, (2) her employer took adverse employment action against her, and (3) there is a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).

1. **Statutorily protected activity**

158.    "***WA courts have … concluded that employee complaints to a supervisor constitutes a statutorily protected activity***." *See Id.* (*citing, e.g., Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wash.App. 774, 798-99, 120 P.3d 579 (2005)) (emphasis added).  "To prove a statutorily protected activity, it is not necessary that the employer's challenged conduct be unlawful." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz v. Spokane Eye Clinic*, P.S., 114 Wash.App. 611, 619, 60 P.3d 106 (2002)).  "[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Id.* (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; (*quoting Graves v. Dep't of Game*, 76 Wash.App. 705, 712, 887 P.2d 424 (1994)).

159.    Plaintiff WINN will recover on his retaliation claim against Defendant TINSLEY because he complained to Defendant TINSLEY and Defendant TINSLEY's supervisory-level employee (Mr. Craig Conard) in Nov. 2015 that Defendant TINSLEY's sexually-harassing behavior towards him was unwelcome and that he wanted the behavior to stop. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, at 912, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing*

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*Renz*, 114 Wash.App. at 619, 60 P.3d 106; *Ellis v. City of Seattle*, 142 Wash.2d 450, 460, 13 P.3d

1065 (2000) (requiring only an "objectively reasonable belief").    Plaintiff WINN opposed

Defendant TINSLEY's illegal activity that violated RCW 49.60 (*i.e*, sexually harassing him)

several times, including but not limited to:

- Immediately after the Nov. 2015 incident at Defendant TINSLEY's home/recording studio, when Defendant TINSLEY ejaculated right next to his sleeping employee (Plaintiff WINN) while touching Plaintiff WINN's buttocks, Plaintiff WINN opposed Defendant TINSLEY's illegal activity of sexually assaulting him when he immediately jumped up saying to Defendant TINSLEY in shock, "What the fuck?!" Plaintiff WINN then ran from Defendant TINSLEY as Defendant TINSLEY followed Plaintiff WINN through the recording studio and house.  Plaintiff WINN ultimately had to hide in the bathroom to avoid Defendant TINSLEY's continued sexual advances that evening.  Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong and he complained to his employer (Defendant TINSLEY) that he wanted the behavior to stop.

- A few hours later, Plaintiff WINN again opposed Defendant TINSLEY's illegal activity that violated RCW 49.60 (*i.e.*, sexually harassing him) when he spoke with Mr. Craig Conard, Crystal Garden's band music engineer and a longtime employee of Defendant TINSLEY's.  Plaintiff WINN explained to Mr. Craig Conard in detail the sexual acts that Defendant TINSLEY had inflicted upon him just a few hours prior. Mr. Craig Conard is a longtime employee of Defendant TINSLEY's who worked with Plaintiff WINN and Crystal Garden in the recording of their music.  Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong and he complained to his employer that he wanted the behavior to stop.  As such, Plaintiff WINN's complaint to Mr. Craig Conard constitutes Plaintiff WINN opposing Defendant TINSLEY's illegal activity that violated RCW 49.60.

- Defendant TINSLEY tried to convince Plaintiff WINN to stay.  Plaintiff WINN again opposed Defendant TINSLEY's illegal activity that violated RCW 49.60 when he flat-out refused to stay, saying that he didn't want to be alone with his employer Defendant TINSLEY due to the unwelcome sexual acts he had just endured form Defendant TINSLEY.

### 2. <u>Adverse Employment Action</u>

160.    An adverse employment action is not limited to demotion, termination or reduction

in the complaining employee's pay, but rather includes <u>any</u> negative treatment, "workplace

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

transfer," or "reduction in employee's workload" against the complaining employee that would "dissuade a reasonable worker from making or supporting a complaint [against that employer]."[14]

161.    "The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning '***Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position***.'" *Id*. (*citing Tyner v. Dep't of Soc. & Health Servs*., 137 Wn.App. 545, 565, 154 P.3d 920 (2007) (internal quotation marks omitted) (*quoting Burlington*, 548 U.S. at 71) (emphasis added). "Federal law provides that context matters in analyzing the significance of any given act of retaliation because an 'act that would be immaterial in some situations is material in others.'" *Id*. (*citing Burlington*, 548 U.S. at 69; *quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005)).

162.    If an employee submits to a supervisor's threat conditioning employment benefits on sexual activity, the adverse "tangible employment action" requirement is met. *Holly D. v. Cal. Inst. Of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003). ***Just three months after Plaintiff WINN opposed Defendant TINSLEY's illegal activity*** in Nov. 2015 by complaining to his employer (Defendant TINSLEY) and Defendant TINSLEY's longtime employee (Mr. Craig Conard) that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop, Defendant TINSLEY continued with his repeated sex-based demands of Plaintiff WINN, tying

---

[14] *See Elliott v. Washington Department of Corrections*, 74137-3-I (WA State Ct. of Appeals, Div. I, 2016); *Boyd v. State*, 187 Wn.App. 1, 13, 349 P.3d 864 (Div. 2 2015) (*quoting Robel v. Roundup Corp*., 148 Wn.2d 35, 74 n.24, 59 P.3d 611 (2002); *citing Alonso v. Qwest Commc'ns Co*., 178 Wn.App. 734, 746, 315 P.3d 610 (2013); *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465, 98 P.3d 827 (2004); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted) (*quoting Rochon v. Gonzales*, 438 F.3d 1211, 1219, 370 U.S.App.D.C. 74 (2006)).

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Plaintiff WINN's compliance with Defendant TINSLEY's demands to Plaintiff WINN's continued "success" with the band:

- <u>March 2016</u> – Defendant TINSLEY texted Plaintiff WINN that he wanted to **"sexually exploit him for the band's success."** (emphasis added)

- <u>March 28, 2016</u>, at 10:09 PM – Defendant TINSLEY texted Plaintiff WINN: "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. **Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)."

- <u>June 2016</u> – Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."** (emphasis added)

163.    Plaintiff WINN ultimately submitted to his employer (Defendant TINSLEY's) threats conditioning Plaintiff WINN's employment benefits on sex-based activity, including but not limited to: Plaintiff WINN complying with Defendant TINSLEY's demand that he send Defendant TINSLEY photos of himself, Plaintiff WINN giving Defendant TINSLEY a pair of his worn/dirty underwear (which Defendant TINSLEY had repeatedly told him "turned him on"), Plaintiff WINN giving Defendant TINSLEY pairs of his worn/dirty socks (which Defendant TINSLEY had told him "turned him on").  Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning employment benefits on sexual activity; as such, the adverse "tangible employment action" requirement is met for retaliation.

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

### 3. **Causal Link**

164.    The third element required for a plaintiff to establish a prima facie case of retaliation is that there exists a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).  Washington courts have generally labeled this third element as requiring proof of a "causal connection" between the exercise of the legal right and the adverse employment action. *See Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18, 29 (1991). However, the Washington Supreme Court has emphasized that a showing of "but for" causation is <u>not</u> required to establish a *prima facie* case of retaliation. *See*: *Allison*, *supra*, at 89 n.3. Instead, a plaintiff need only show that the protected activity was "a substantial factor" for the adverse action. *See, e.g.*: *Vasquez v. State*, 94 Wn. App. 976, 984, 974 P.2d 348, 352-53 (Div. III, 1999).

165.    "Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." *Vasauez v. State*, 94 Wn.App. 976, 985, 974 P.2d 348 (1999). "Proximity in time between the adverse action and the protected activity, coupled with evidence of satisfactory work performance and supervisory evaluations ***suggests an improper motive***." *Kahn v. Salerno*, 90 Wn.App. 110, 130-31, 951 P.2d 321 (1998) (emphasis added); *see also Cornwell v. Microsoft Corp.*, 060517 WACA, 74919-6-I (WA Ct. of Appeals, Div. I, 2017).

166.    Here, the "causal link" element for retaliation is met.  Just three months following Plaintiff WINN opposing Defendant TINSLEY's illegal activity in Nov. 2015 by complaining to his employer (Defendant TINSLEY) and Defendant TINSLEY's longtime employee (Mr. Craig

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Conard) that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop (Plaintiff WINN hereby opposed illegal activity), Defendant TINSLEY continued with his repeated sex-based demands of Plaintiff WINN, tying Plaintiff WINN's compliance with Defendant TINSLEY demands to Plaintiff WINN's continued "success" with the band.  Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning Plaintiff WINN's employment benefits on sex-based activity, including but not limited to: Plaintiff WINN complying with Defendant TINSLEY's demand that he send Defendant TINSLEY photos of himself, Plaintiff WINN giving Defendant TINSLEY a pair of his worn/dirty underwear (which Defendant TINSLEY had repeatedly told him "turned him on"), Plaintiff WINN giving Defendant TINSLEY pairs of his worn/dirty socks (which Defendant TINSLEY had told him "turned him on").  Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning employment benefits on sexual activity; as such, the adverse "tangible employment action" requirement is met for retaliation.

167.    The "causal link" element for retaliation is met.  Plaintiff WINN's satisfactory work performance for Defendant TINSLEY (playing the trumpet for "Crystal Garden"), coupled with the proximity in time between Plaintiff WINN opposing illegal activity (*i.e.*, Plaintiff WINN complaining in Nov. 2015 to Defendant TINSLEY and Defendant TINSLEY's longtime employee, Craig Conard, that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop) and the "tangible employment action" (Plaintiff WINN submitting to Defendant TINSLEY's repeated sex-based demands just three months after Plaintiff WINN's Nov. 2015 complaints opposing Defendant TINSLEY's illegal activity).  This ***suggests an improper***

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*motive by Defendant TINSLEY* and meets the "causal link" element for Plaintiff WINN's retaliation claim against Defendant TINSLEY.

### C.  Damages for Retaliation in Violation of WLAD/RCW § 49.60

168.    As a result of Defendant TINSLEY retaliating against Plaintiff WINN when Plaintiff WINN made complaints to Defendant TINSLEY, telling him to stop sexually harassing him, Plaintiff WINN is entitled to the same damages under the WLAD to which he is entitled for Defendant TINSLEY's hostile work environment and quid pro quo sexual harassment against him (outlined in detail above), which provide for an award of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE
### (WA STATE COMMON LAW TORT)

169.    Plaintiff re-alleges and incorporates by reference paragraphs 1-168 of this Complaint.

170.    Plaintiff WINN was constructively discharged by his employer, Defendant TINSLEY, in violation of WA State law.  WA State recognizes the common law tort of constructive discharge, whereby an employee who quits can establish a wrongful termination claim by proving that his employer deliberately created intolerable working conditions, forcing the employee to resign. *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wn. App. 34, 181 P.3d 864 (Div. II, 2008). *See also*: *Barnett v. Sequim Valley Ranch, LLC*, 41832-1-II; Court of Appeals of Washington, Division 2 (April 30, 2013) (*citing Sneed v. Barna,* 80 Wn.App. 843, 849-50, 912 P.2d 1035, *review denied,* 129 Wn.2d 1023 (1996) ("If a discharge occurred, and if it was wrongful

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

for one or more reasons, it is equally actionable whether express or constructive discharge."); *Korslund v. Dyncorp Tri Cities Services, Inc.,* 156 Wn.2d 168, 180, 125 P.3d 119 (2005) (suggesting wrongful discharge claim can be based on a constructive discharge); *Lavin v. Bon Appetit Mgmt. Co.*, 1998 U.S. Dist. LEXIS 21453, *3 (W.D. Wash. 1998) (holding that constructive discharge claim "cannot be precluded as a matter of law."). *See generally: Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 258-61, 778 P.2d 1031 (1989) (embracing the doctrine of constructive discharge, "[f]or we recognize that insidious acts are able to erode the Legislature's laudable goals just as effectively, and perhaps in a more demoralizing fashion, than a direct termination would otherwise accomplish."

171.    To prove constructive discharge, a plaintiff employee (Plaintiff WINN) "must show that the abusive working environment became so intolerable that his/her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, at 134, 124 S. Ct. 2342 (2004).  In the Ninth Circuit, a plaintiff "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions.'" *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 (9th Cir.1994).

172.    Here, Defendant TINSLEY's ongoing sexual harassment of his employee, Plaintiff WINN, deliberately created intolerable working conditions for Plaintiff WINN that gave Plaintiff WINN no choice but to either endure Defendant TINSLEY's sexual advances as a condition of his employment – or resign (*i.e.*, constructive discharge).  A reasonable person enduring what Plaintiff WINN consistently endured from his employer, (Defendant TINSLEY) during the twelve (12)

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

months leading up to his constructive discharge in August 2016 would, like Plaintiff WINN, have no choice but to resign from Defendant TINSLEY's employment.

173.    The following events of Defendant TINSLEY's sex-based texts, sex-based verbal demands, and sex-based physical acts towards his employee, Plaintiff WINN, led Plaintiff WINN to realize that he had no choice by to resign from his employment with Defendant TINSLEY (including, but not limited to):

- The egregious nature of the Nov. 2015 sexual assault incident where Defendant TINSLEY ejaculated next to his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks, then chased Plaintiff WINN through the house and nearby recording studio. Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- The numerous sexual texts messages and other sex-based demands from Defendant TINSLEY to Plaintiff WINN from January-Aug. 2016 (at which time Plaintiff WINN finally felt he had no choice but to resign from his employment with Defendant TINSLEY /constructive discharge due to the ongoing pervasive sexual harassment he was forced to endure), including, but not limited to:

   ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN that he wanted to "sexually exploit him for the band's success."

   ✓ March 2016: Defendant TINSLEY texts Plaintiff WINN that he "was masturbating at the thought of a sexy photo shoot of James."

   ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

✓ <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

✓ <u>June 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw … Dude you're the bait. Our secret (weapon)."

✓ <u>July 2016</u>: Defendant TINSLEY texted Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

✓ <u>July 2016</u>: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?" *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ <u>July 2016</u>: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ <u>July 2016</u>: While on tour in Miami, FL, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of Plaintiff WINN's dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him.  Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

174.    Plaintiff WINN clearly meets the elements of proving that he was constructively discharged by his employer, Defendant TINSLEY.  Plaintiff WINN will present at trial the above-outlined evidence that the abusive working environment created by Defendant TINSLEY became so intolerable for Plaintiff WINN that his resignation qualified as a fitting response.

### A.  Damages for Constructive Discharge

175.    As a result of Defendant TINSLEY constructively discharging Plaintiff WINN in violation of WA State law, as herein outlined, Plaintiff WINN is entitled to the same damages under the WLAD to which he is entitled for Defendant TINSLEY unlawfully creating a hostile work environment against Plaintiff WINN, inflicting *quid pro quo* sexual harassment against Plaintiff WINN, and retaliating against Plaintiff WINN when Plaintiff WINN complained to Defendant TINSLEY about the harassment and insisted that Defendant TINSLEY stop.  Defendant TINSLEY committing the common law tort of constructive discharge against Plaintiff WINN entitles Plaintiff WINN to an award of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

### VII.    PRAYER FOR RELIEF

WHEREFORE PLAINTIFF PRAYS for relief that judgment be entered against Defendant as follows:

A.    For actual and/or general damages in an amount to be proven at trial;

PLAINTIFF'S COMPLAINT FOR DAMAGES – 79

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

B.     Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation in an amount to be proven at trial;

C.     For back pay, front pay, and loss of future earning potential;

D.     Prejudgment interest in an amount to be proved at trial;

E.     Compensation for any tax penalty associated with a recovery;

F.     Judgment in favor of the Plaintiff;

G.     Reasonable attorney's fees and costs;

H.     Lost fringe benefits; and

I.     For such other and further relief as may be proven or that the court may deem just and equitable.


DATED this __17th__ day of ___May_____, 2018.


                              HENDERSON LAW GROUP, PLLC


                              _____
                              Stephanie Henderson Stocker
                              WSBA No. 33567
                              1800 Cooper Pt. Rd. SW, Bldg. 1
                              Olympia, WA 98502
                              Email: stephanie@hendersonlaw.net
                              Tel: (360) 943-7710
                              Fax: (360) 943-2782
                              Attorney for Plaintiff

PLAINTIFF'S COMPLAINT FOR DAMAGES – 80

Jason Hatch
WSBA No. 31798
368 Newell St
Seattle, WA 98109-1858
Tel: (206) 227-2916
Fax: (206) 216-5853
Email: jayhatch11@gmail.com
Attorney for Plaintiff

PLAINTIFF'S COMPLAINT FOR DAMAGES – 81

**CERTIFICATION OF PLAINTIFF**

**JAMES WINN**, hereby certifies as follows:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint, know the contents thereof, and believe the same to be true. I certify and declare that the foregoing is true and correct, under penalty of perjury under the laws of the State of Washington, RCW 9A.72.085.

DATED at ___Seattle___, Washington, this _14_ day of _____May_____, 2018.

_____
**JAMES WINN**

PLAINTIFF'S COMPLAINT FOR DAMAGES – page 82

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point RD SW, Bldg. 1
Olympia, WA 98508
Phone (360) 943-7710
Fax (360) 943-2782

# Exhibit 2

---

Settlement Agreement and Mutual Release of Claims dated
June 5, 2019

## CONFIDENTIAL SETTLEMENT AGREEMENT AND
## MUTUAL RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and Mutual Release of All Claims ("Agreement") is entered into by and between Plaintiff James Winn ("Plaintiff" or "Winn") and Defendant Boyd Tinsley ("Defendant" or "Tinsley"). Plaintiff and Defendant are collectively referred to as "Parties" and individually as "Party."

## RECITALS

This Agreement is made with reference to the following facts:

WHEREAS, Tinsley assisted in financing and organizing a band, which ultimately became known as Crystal Garden. Winn was a member of Crystal Garden. On or about June 12, 2018, Winn, by and through his attorney, served Tinsley with a Complaint alleging various employment law claims against Tinsley, including, but not limited to, Sexual Harassment (*Quid Pro Quo*) in Violation of WA Law Against Discrimination, Sexual Harassment (Hostile Work Environment), Retaliation in Violation of WA Law Against Discrimination, and Tort of Constructive Discharge. The Complaint was originally filed in King County Superior Court (Case No. 18-2-12456), and was removed to the United States District Court for the Western District of Washington at Seattle (Case No. 2:18-cv-00919-RSL) (the allegations and causes of action in the Complaint are referred to as "the Lawsuit").

WHEREAS, Tinsley denies and continues to deny the validity of the Lawsuit and the claims and allegations made therein; and

WHEREAS, the Parties nonetheless have negotiated concerning a settlement and now consider it appropriate to settle and compromise the Lawsuit, as well as any and all claims they have or might have asserted against each other in the future arising from any aspect of Winn's participation in and involvement with Crystal Garden, including actions, inactions, and/or comments by Tinsley.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them.

## AGREEMENT

### 1.    *Definitions.*

Throughout this Agreement, the terms "Tinsley" and "Defendant" include Boyd Tinsley, his immediate family members, heirs, attorneys, agents, and assigns, and Tinco, Inc., the Dave Mathews Band ("DMB"), Crystal Garden, and their predecessors, successors, parent companies, subsidiaries, sister companies, related entities, assigns, the current and former officers, members, directors, trustees, representatives, employees, insurance carriers, reinsurers, attorneys, and agents.

While DMB was not named as a party to the Lawsuit, the Parties included DMB in this Agreement to clarify that this Agreement also pertains to any claims that could have been brought against DMB stemming from Winn's participation in and involvement with Crystal Garden given the proximate relationship between DMB and Tinsley.

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 2 of 10

Throughout this Agreement, the terms "Winn" and "Plaintiff" shall include James Winn and his immediate family members, heirs, attorneys, agents, and anybody attempting to claim through him.

2.    *Settlement Sum and Tax Liability.*

As consideration for signing this Agreement, for Winn's release and waiver of all claims against Tinsley, for Winn's dismissal with prejudice and without seeking fees or costs of the Lawsuit, for releasing his ability to make any future claims against Tinsley for acts to date, and for Winn's compliance with all of the obligations and promises made herein, Tinsley (and/or his applicable insurance carrier) shall pay Winn a total settlement sum of $837,500 ("Payment"). Payment shall be made as follows:

- A check payable to Winn's attorney's trust account (*i.e.*, "Stephanie Stocker at Henderson Law Group, PLLC, Tax ID # 46-2273320) for $837,500.00 as a 1099, 100% of which are paid to Winn as, "damages (other than punitive damages) received ... on account of personal physical injuries or physical sickness" and which are thus excludable from Winn's gross income for tax purposes, pursuant to Tax Code Section 104(a)(2).

Winn understands the Payment will not be issued without a completed IRS Form W-9 and Exhibit A attached hereto. The Payment, in the form of a check, shall be delivered to Stephanie Henderson Stocker at Henderson Law Group, 1800 Cooper Pt. Rd. SW, Bldg One, Olympia, WA 98502 within thirty (30) calendar days of the receipt of Winn's execution of this Agreement, including Exhibit A, and receipt of the necessary W-9.

Winn acknowledges and agrees that Tinsley has made no representations to him regarding the tax consequences of the monies paid to him pursuant to this Agreement. Winn agrees to pay federal and state taxes, if any, which are required by law to be paid with respect to this settlement. Winn further agrees to indemnify and hold Tinsley harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any governmental entity against Tinsley for any amounts claimed due on account of this Agreement to the extent the liability is Winn's and he is provided with reasonable notice giving him an opportunity to cure, or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by Tinsley by reason of any such claims, including any amounts paid by Tinsley's as taxes, deficiencies, levies, assessments, fines, penalties, interest or otherwise.

3.    *Consideration.*

Winn understands and agrees that the fulfillment of promises contained in this Agreement is a condition precedent to receive the Payment identified in Paragraph 2.

4.    *General Mutual Release and Waiver of All Claims.*

In exchange for, and in consideration of the Payment described above, Winn and Tinsley for themselves and their heirs, executors, administrators, assigns, and representatives, hereby fully release, acquit and forever discharge each other from any and all claims, liens, liabilities, causes of action, demands to any rights, damages, costs, attorneys' fees, expenses and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that they may now have, have ever had, or hereafter may have, that arose prior to the date of this Agreement, including without limitation,

claims relating directly or indirectly to the allegations in the Lawsuit, and Winn's participation in and involvement with Crystal Garden, including any discrimination, retaliation, harassment, and constructive discharge claims. Winn also releases any and all claims that may have arisen prior to the date of this Agreement and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Equal Pay Act, the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act Sections 1981 through 1988 of title 42 of the United States Code; the Immigration Reform and Control Act, the Workers Adjustment and Retraining Notification Act; the Occupations Safety and Health Act; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Family and Medical Leave Act; ORS Chapters 659A, 652, and 653; the Employee Retirement Income Security Act of 1971; the National Labor Relations Act; the Fair Labor Standards Act; any amendments to the foregoing statutes; and any and all similar or related state or local statues, ordinances, or regulations, as well as all claims arising under federal, state or local law statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim (collectively, the "Released Claims").

Winn further understands that this release shall not prohibit him from filing an administrative charge or assisting with a governmental investigation, but he understands that this Agreement shall constitute a release and waiver of any claim or right he has to monetary damages or relief in such a charge or claim.

5. **Covenant Not to Sue.**

Winn agrees that he will not assert a claim, file a lawsuit, or commence an arbitration against anyone, including any individual or entity not expressly covered by Paragraph 4 above, relating directly or indirectly to the Released Claims or relating directly or indirectly to the allegations in the Lawsuit, and Winn's participation in and involvement with Crystal Garden.

6. **Compromise.**

It is further agreed that this is a compromise of disputed claims and that neither the payments or actions by Tinsley nor this Agreement shall operate or be interpreted as an admission of liability as to the Lawsuit, or any of the claims, actions or suits, past, present or future, known or unknown, which Winn has or might have asserted in the future. Tinsley and his respective employees, agents, successors and heirs, individually and collectively, expressly deny any such liability.

7. **Mutual Confidentiality.**

In consideration of the obligations under this Agreement, the Parties agree that this Agreement, the terms and conditions hereof, are strictly and shall forever remain confidential and that the Parties, their spouses, heirs, agents, executors, board members, directors, officers, attorneys, legal representatives, or assigns shall not disclose or disseminate, directly or indirectly, any information concerning any such terms to any third person(s), including, but not limited to, representatives of the media and present or former employees of Tinsley under any circumstances. If asked about the outcome of the litigation, the Parties will respond that the matter has been resolved, or words to that effect.

Notwithstanding anything to the contrary, nothing in this Agreement shall prevent the disclosure of confidential information or the terms hereunder to lawyers, accountants, auditors,

insurers/reinsurers (if any), together with such insurers/reinsurers' third party service providers, actuaries or intermediaries (collectively "Recipients") or regulators, provided the disclosure of the information is reasonably necessary to effectuate the terms of this Agreement, or is required for tax, financial reporting, or governmental compliance purposes, or to transact the business of insurance. Prior to disclosure, the Recipients shall be informed of the confidential nature of the information and shall agree to keep such information confidential. Additionally, to the extent the request is from a regulator or pursuant to a subpoena, then the receiving Party must promptly notify the other Party, so that the other Party may timely object to the production.

8.   *Mutual Non-Disparagement.*

The Parties agree to refrain from making any disparaging, negative or uncomplimentary statements, whether public or private, in writing or orally, regarding the other Parties, unless in response to a valid subpoena, truthful, and only after providing the Party, through his counsel, a copy of the subpoena so that a timely objection may be made. Such prohibited statements shall include, but not be limited to, any discussion of the facts and circumstances related to the allegations set forth in the Lawsuit.

As part of this non-disparagement agreement, Winn agrees to immediately delete all previous social media and public comments and postings within his control regarding Tinsley and further agrees to refrain from creating or contributing to any social media, news, or other public commentary regarding Tinsley, this Lawsuit, or claims relating directly or indirectly to the allegations in the Lawsuit. Winn further agrees that should any third parties re-post, share, or comment on his prior posts, to the extent possible, he will immidately delete such posts. The Parties recognize that some media content was made public before the Parties entered into this Agreement and that Winn cannot identify and does not possess control over every third party who may have downloaded, saved, copied, or otherwise had access to such content.

9.   *Liquidated Damages.*

The Parties agree that a breach of the confidentiality and non-disparagement provisions in Sections 6 and 7 of this Agreement would constitute an irreparable harm, and that in the event of any breach of Section 6 or 7, the injured Party may obtain an injunction prohibiting future breaches. The availability of injunctive relief is in addition to other remedies available under this Agreement, including the right to damages and any reasonable attorneys' fees and costs available under this Agreement for enforcing this provision.

It is agreed that in the event of a breach of Section 6 or 7, damages would be difficult to quantify, and the amount of liquidated damages provided herein is a reasonable estimation of such damages. Therefore, the Parties agree that in the event of such a breach of Section 6 or 7, the injured Party shall be entitled to payment in the amount of Twenty Five Thousand Dollars ($25,000) as liquidated damages for each such breach, in addition to all other remedies that the Party might be entitled to seek for such breaches.

In the event a Party believes that the other Party has breached the confidentiality or non-disparagement provisions in Section 6 or 7, the injured Party shall provide written notice to the other Party. The injured Party must provide specific notice to the allegedly breaching Party (in person, registered mail, etc.). If the allegedly breaching Party does not contest the alleged breach within thirty (30) days, he shall deliver payment to the injured Party for the liquidated damages within seven (7) calendar days following the thirty (30) day period after which notice was received. If the allegedly breaching Party contests the alleged breach, the allegedly breaching Party may elect to initiate arbitration using Teresa Wakeen as the arbitrator. In the event of a finding of one

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 5 of 10

or more breaches, the breaching Party shall deliver payment for the liquidated damages amount determined by the arbitrator to the injured Party within seven (7) calendar days of the date on which the arbitrator delivers the decision to the Parties. The prevailing party in any such dispute shall be entitled to recover their fees and costs, including the arbitrator's costs, in an amount to be determined by the arbitrator. Any such arbitration shall be final and binding on the Parties. The arbitration decision shall be included in a Judgment that may be filed with King County Superior Court. The arbitration shall be governed by the American Arbitration Association Employment Arbitration Rules.

10.    *Affirmations.*

Winn represents and affirms that, other than the Lawsuit referenced herein, he has no suits, claims, charges, complaints, or demands of any kind whatsoever currently pending against Tinsley with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.

11.    *Medicare and Social Security Liens and Benefits.*

Winn hereby warrants and represents that he presently is not, nor has he ever been enrolled in Medicare Part A or Part B. Further, Winn represents and warrants that he has no claim for Social Security Disability benefits nor is he appealing or re-filing for Social Security Disability benefits.

It is understood and agreed that Winn accepts full responsibility for discharging any and all liens, including any liens by Medicare or Medicaid, or any other governmental entities, or any other healthcare providers that have cared for Winn, or any liens by any insurers or other entities that have paid for such care, or any prior attorneys of Winn, and also including any other liens that may exist or which may be filed in the future and will defend, indemnify, and hold harmless Tinsley from any claims by any existing or future lienholders. Winn further understands and agrees to the language of **Exhibit A**, Addendum to this Agreement, which is incorporated by reference as if set forth in full herein, and understands and agrees that this Agreement is not effective or enforceable if **Exhibit A** is not executed in the presence of a competent witness. Winn hereby warrants and represents that he has never received, is not currently receiving, and did not apply to receive Medicare or Medicaid for any injuries released by this Agreement. Winn further warrants that he does not anticipate applying for Medicare or Medicaid benefits for any of the injuries alleged to have been caused by Tinsley.

12.    *No Assignment.*

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

13.    *Remedies for Breach.*

The Parties agree that each Party, in addition to any other remedy it may have under this Agreement or at law, shall be entitled to injunctive and other equitable relief to prevent or curtail any breach of any provision of this Agreement.

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 6 of 10

14. *Governing Law and Jurisdiction.*

This Agreement shall be governed and conformed in accordance with the laws of the state of Washington without regard to its conflict of laws provision.

15. *Modification and Waiver of Agreement.*

This Agreement may not be amended, revoked, changed or modified in any way except in writing executed by all Parties. The Parties agree not to make any claim at any time or place that this Agreement has been verbally modified in any respect whatsoever. No waiver of any provision of this Agreement shall be valid unless it is in writing and signed by the party against whom such waiver is charged.

16. *Binding Nature of Agreement.*

This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns and shall inure to the benefit of each Party and to their respective heirs, administrators, representatives, executors, successors and assigns.

17. *Entire Agreement.*

This Agreement, including Exhibit A, sets forth the entire agreement between the Parties herein and fully supersedes any prior obligations, agreements, discussions, or understandings (oral or written) of Tinsley to Winn. Winn acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him by Tinsley in connection with his decision to accept this Agreement, except for those set forth in this Agreement. This Agreement shall only be amended with the express written consent of the Parties.

18. *Selective Enforcement.*

The Parties agree that the failure of any Party to enforce or exercise any right, condition, term or provision of this Agreement shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

19. *Severability.*

If any court or competent authority finds that any provision of this Agreement (or part of any provision) is invalid, illegal or unenforceable, that provision or part-provision shall, to the extent required, be deemed to be deleted, and the validity and enforceability of the other provisions of this agreement shall not be affected.

20. *Executed In Multiple Counterparts.*

This Agreement, including Exhibit A, may be executed in multiple counterparts, all of which shall be deemed originals and with the same effect as if all Parties had signed the same document. All of such counterparts shall be construed together with and shall constitute one Agreement, but in making proof it shall only be necessary to produce one such counterpart. For the purposes of this Agreement, a facsimile or an email-scanned copy of a signature page shall be construed to be an original.

THE PARTIES FREELY AND KNOWINGLY ENTER INTO THIS AGREEMENT

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 7 of 10

INTENDING TO WAIVE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE
AGAINST EACH OTHER. ACCEPTED AND AGREED:

**JAMES WINN**

By: ꒐FW
    James Winn

Date: _____
       06/05/19  SFW

**BOYD TINSLEY**

By:   BꞪ
    Boyd Tinsley

Date: 6/4/2019

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 8 of 10

## EXHIBIT A

## ADDENDUM TO RELEASE OF ALL CLAIMS

I, James Winn, (hereinafter referred to as "Claimant"), individually and on behalf of Claimant's heirs, executors, administrators and assigns, as additional consideration for the settlement agreement referenced in the RELEASE OF ALL CLAIMS to which this ADDENDUM is attached and of which this ADDENDUM is a part (hereinafter referred to as "the settlement agreement"), further recite, warrant, represent and agree as follows:

Claimant understands, acknowledges and agrees that:

1.  In reaching the settlement agreement, the parties have given considerable attention to whether Claimant is entitled to Social Security disability benefits pursuant to 42 U.S.C. § 423. It is not the intention of any party to the settlement agreement to shift to Medicare responsibility for payment of medical expenses for the treatment of the injuries that Claimant sustained as result of the incident referenced in the settlement agreement (hereinafter referred to as "the incident"). However, the settlement agreement is intended to foreclose the released parties from responsibility for future payments of any medical expenses and prescription drug expenses related to the incident and Claimant's injuries that Claimant sustained as a result of the incident.

2.  The released parties have expressly denied all liability for any damages as a result of the incident and dispute the reasonableness and necessity of past and future medical treatment and expenses allegedly incurred regarding Claimant's injuries resulting from the incident.

3.  Because Claimant's injuries resulting from the incident were sustained on or after December 5, 1980, the sections of the Social Security Act known as the Medicare Secondary Payer ("MSP") law (42 U.S.C. Section 1395y[b]) and federal regulations adopted by the federal government to implement this law (including 42 C.F.R. Part 411) have been considered by the parties. These laws and regulations are collectively referred to herein as the "MSP provisions." Detailed information regarding the MSP provisions is available at the Centers for Medicare & Medicaid Services website at http://www.cms.hhs.gov/; a summary of the Medicare Secondary Payer Recovery Claim Process is available at http://www.cms.hhs.gov/MSPRecovClaimPro/.

4.  Pursuant to the MSP provisions, Medicare is not required to make and does not make payment for covered items or services to the extent that payment has been made, or can reasonably be expected to be made, under a liability insurance policy or plan. Liability insurance means insurance (including a self-insured plan) that provides payment based on legal liability for injury or illness or damage to property, and includes, but is not limited to, automobile liability insurance, uninsured motorist insurance, underinsured motorist insurance, homeowners' liability insurance, malpractice insurance, product liability insurance, and general casualty insurance.

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 9 of 10

5.    However, pursuant to the MSP provisions, under certain circumstances, Medicare may make conditional payments which are conditioned on reimbursement to Medicare to the extent that payment with respect to the same items or services could have been made under a liability insurance policy or plan. These conditional payments are subject to later recovery by Medicare if there is a settlement, judgment, award or other payment.

6.    Regarding these conditional payments, Medicare has a statutory direct right of recovery, a right that takes precedence over the claims of any other party, from anyone, including but not limited to the Medicare beneficiary, who receives payment directly or indirectly from the proceeds of a liability insurance payment, as well as from the liability insurer or plan making the payment. A failure to fully comply with the MSP provisions can result in a recovery action by Medicare seeking reimbursement of Medicare payments that Medicare was not required to make and penalties. 42 C.F.R. § 411.24.

7.    It is the understanding of the parties that the MSP provisions do not apply, and that compliance with these provisions is not required, regarding Claimant's claim for injuries which is the subject of the settlement agreement as Claimant has expressly represented and warranted, and hereby again expressly represents and warrants, that:

   a.    Medicare has made no conditional payments for any medical expense or prescription drug expense related to Claimant's injuries sustained in the incident.

   b.    Claimant is not, nor has Claimant ever been, a Medicare beneficiary.

   c.    Claimant is not currently receiving Social Security Disability Benefits.

   d.    Claimant has not applied for Social Security Disability Benefits.

   e.    Claimant has not been denied Social Security Disability Benefits.

   f.    Claimant has not appealed from a denial of Social Security Disability Benefits.

   g.    Claimant is not in End Stage Renal Failure.

   h.    Claimant does not expect to become eligible for Medicare benefits within the next 30 months.

   i.    No liens, including but not limited to liens for medical treatment by hospitals, physicians, or medical providers or suppliers of any kind, have been filed regarding the treatment of Claimant's injuries sustained as a result of the incident.

8.    Claimant is aware that each liability insurer paying the settlement is relying on Claimant's representations and warranties stated in Paragraph 7, and each of them, and that each such insurer reasonably expects that each such representation and warranty by Claimant is true.

*Winn v. Tinsley*
Confidential Settlement Agreement and Release of Claims
Page 10 of 10

Claimant is of sound mind and body and fully capable of reading and understanding this ADDENDUM. Claimant understands the consequences of Claimant's failure to comply with the MSP provisions referenced in this ADDENDUM.

Done in                    County, of   Washington   State this   4th   day
of the month      June      in the year        2019

James Winn

STATE OF        Washington            §

                                      §

COUNTY OF   King                      §

Before me, the undersigned notary public in and for said state, on this day personally appeared _____ James Winn _____, known to me to be the person whose name is subscribed to the foregoing instrument, who acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this the    4th    day of the
month      June      in the year      2019

#187050

**BRIAN JONES**
**Notary Public**
**State of Washington**
Commission Expires June 15, 2020

NOTARY PUBLIC
IN AND FOR THE STATE OF   Washington

June 15, 2020
My Commission Expires:

# Exhibit 3

---

Tinsley Facebook Post stamped February 22, 2022



**Boyd Tinsley**

Studied at University of Virginia

Went to Charlottesville High School

From Charlottesville, Virginia

**Photos**

See all photos

**Friends**

2 mutual friends

See all friends

Ivan Agerton

Craig Heimbuch

**Boyd Tinsley**
10h · 🌐

I've waited a long time to speak on this matter. I've been busy putting my life back together. Now I'm ready to say my piece and move on.

It's been serval years now since an individual accused me of wrongdoing. That accusation is a lie. I had intended to make a statement at the time but was told that it would be perceived as victim bashing, even though I was the victim. So I decided not to make a statement and I just simply tossed my hands up in the air and said I'm done with the whole thing. Only a few years before, another person who I trusted embezzled millions of dollars from me and then after serving his prison sentence he falsely accused me of misconduct in a bogus suit that was filed out of spite and in order to muddy my name. The suit was thrown out the minute it was filed. There is a pattern of me being victimized by mentally unstable and money grabbing people. I have this problem of being too generous sometimes. Eventually some people take advantage of that fact. So this latest individual that I am speaking of concocted this incredibous story of sexual harassment, which is a complete and total lie.

This whole thing started one day when I asked the band he was in and that I was supporting, to rehearse for a big morning  show in LA. But he had been visiting his girlfriend and was under some delusion that I was trying to split them up, which wasn't the case at all. Their relationship was their problem. I flew him back home, but when he got to rehearsal he refused to practice and sat on the sidewalk the whole time. He then decided that night to quit the band. He had this crazy idea that I had called the rehearsal in some elaborate plan to separate him from his girlfriend. This is from the mind of a very troubled and disturbed person. That night the rest of the band and I tried to talk him into changing his mind about quitting. No one wanted him to quit

Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More ·
Meta © 2022



**Boyd Tinsley**

... the way was reading boyd Tinsley

Studied at University of Virginia

Went to Charlottesville High School

From Charlottesville, Virginia

**Photos**    See all photos

**Friends**    See all friends

2 mutual friends

Ivan Ägerton

Craig Heimbuch

him into changing his mind about quitting. No one wanted him to quit the band they just simply asked him to practice and rehearse. On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind.

About a month before this episode occurred he called me and asked if I could help him find him a psychiatrist. I said I would. I figured he had one of the run of the mill issues like depression, anxiety or ADHD which are easily dealt with through medication. But he said it was something bigger going through his head, he said he felt like hurting someone. Never did I think it would be me.

He over time lost interest in practicing and rehearsing, he had no commitment to the band, but he loved the money I sent the band each month for expenses. He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food and playing pinball at an arcade in the neighborhood. I once called him up to see how rehearsals were going. He didn't say anything about the band but he actually told me that he wanted to write a book about pinball. Music went out the window and it was all about getting drunk and playing pinball.

I never harassed this individual, this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual. I say this for all my friends, family and fans around the world who have been waiting for me to speak, but mostly I say this for myself in order to move on with my life. Now that I've spoken I'm ready to do that. I'm ready  again to do what I was put on this earth to do, to play music and to rock. That's my plan for the near future and I ask all of you for your support as I reclaim my life and get my groove back. Thank you and much love

412 Comments 79 Shares



**Boyd Tinsley**
5 hrs · 🌐

I've waited a long time to speak on this matter. I've been busy putting my life back together. Now I'm ready to say my piece and move on.

It's been serval years now since an individual accused me of wrongdoing. That accusation is a lie. I had intended to make a statement at the time but was told that it would be perceived as victim bashing, even though I was the victim. So I decided not to make a statement and I just simply tossed my hands up in the air and said I'm done with the whole thing. Only a few years before, another person who I trusted embezzled millions of dollars from me and then after serving his prison sentence he falsely accused me of misconduct in a bogus suit that was filed out of spite and in order to muddy my name. The suit was thrown out the minute it was filed. There is a pattern of me being victimized by mentally unstable and money grabbing people. I have this problem of being too generous sometimes. Eventually some people take advantage of that fact. So this latest individual that I am speaking of concocted this incredulous story of sexual harassment, which is a complete and total lie.

This whole thing started one day when I asked the band he was in and that I was supporting, to rehearse





for a big morning show in LA. But he had been visiting his girlfriend and was under some delusion that I was trying to split them up, which wasn't the case at all. Their relationship was their problem. I flew him back home, but when he got to rehearsal he refused to practice and sat on the sidewalk the whole time. He then decided that night to quit the band. He had this crazy idea that I had called the rehearsal in some elaborate plan to separate him from his girlfriend. This is from the mind of a very troubled and disturbed person. That night the rest of the band and I tried to talk him into changing his mind about quitting. No one wanted him to quit the band they just simply asked him to practice and rehearse. On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind.

About a month before this episode occurred he called me and asked if I could help him find him a psychiatrist. I said I would. I figured he had one of the run of the mill issues like depression, anxiety or ADHD which are easily dealt with through medication. But he said it was something bigger going through his head, he said he felt like hurting someone. Never did I think it would be me.

He over time lost interest in practicing and rehearsing, he had no commitment to the band, but he loved the money I sent the band each month for expenses. He had a field day spending my money. He spent his time all day and night drinking beer, eating junk food and playing pinball at an arcade in the neighborhood. I once called him up to see how rehearsals were going. He didn't say anything about the band but he actually told me that he wanted to write a book about pinball.



Music went out the window and it was all about getting drunk and playing pinball.

I never harassed this individual. this accusation was an opportunity to spite me as well as a money grab from a severely mentally disturbed individual. I say this for all my friends, family and fans around the world who have been waiting for me to speak, but mostly I say this for myself in order to move on with my life. Now that I've spoken I'm ready to do that. I'm ready again to do what I was put on this earth to do, to play music and to rock. That's my plan for the near future and I ask all of you for your support as I reclaim my life and get my groove back. Thank you and much love

👍 Like          💬 Comment          ➢ Share

👍❤️😲 558

37 Shares

**View previous comments...**

**Eran Barkat**



# Exhibit 4a

---

*Copies of Facebook posts that were also shared to his
Twitter Account*

12:58 🔋 🎵 📷 •                              🔔 🛜 📶 🔋

←    🔍 Search


**Boyd Tinsley**                              • • •
4h · 🌐

In what I just posted I referred to depression,
anxiety and ADHD as run of the mill illnesses.
They are serious and I didn't mean to belittle
them. What I meant was they are more common
illnesses. I didn't mean to offend anyone, I just
chose the wrong words. Much love

👍❤️😊 187                    25 comments · 2 shares

👍 Like            💬 Comment            ↗ Share


**Boyd Tinsley**                              • • •
5h · 🌐

I've waited a long time to speak on this matter.
I've been busy putting my life back together. Now
I'm ready to say my piece and move on.

It's been serval years now since an individual
accused me of wrongdoing. That accusation is a
lie. I had intended to make a statement at the
time but was told that it would be perceived as
victim bashing, even though  I was the victim. So
I decided not to make a statement and I just
simply tossed my hands up in the air and said I'm
done with the whole thing. Only a few... See more

👍❤️😊 566                    249 comments · 38 shares

👍 Like            💬 Comment            ↗ Share



12:58     

← Q Search

 **Boyd Tinsley**
5h · 🌐                          · · ·

I've waited a long time to speak on this matter.
I've been busy putting my life back together. Now
I'm ready to say my piece and move on.

It's been serval years now since an individual
accused me of wrongdoing. That accusation is a
lie. I had intended to make a statement at the
time but was told that it would be perceived as
victim bashing, even though I was the victim. So
I decided not to make a statement and I just
simply tossed my hands up in the air and said I'm
done with the whole thing. Only a few years
before, another person who I trusted embezzled
millions of dollars from me and then after
serving his prison sentence he falsely accused
me of misconduct in a bogus suit that was filed
out of spite and in order to muddy my name. The
suit was thrown out the minute it was filed. There
is a pattern of me being victimized by mentally
unstable and money grabbing people. I have this
problem of being too generous sometimes.
Eventually some people take advantage of that
fact. So this latest individual that I am speaking
of concocted this incredulous story of sexual
harassment, which is a complete and total lie.

This whole thing started one day when I asked
the band he was in and that I was supporting, to
rehearse for a big morning show in LA. But he

        ‹

12:58  •

←    🔍 Search

the band he was in and that I was supporting, to rehearse for a big morning show in LA. But he had been visiting his girlfriend and was under some delusion that I was trying to split them up, which wasn't the case at all. Their relationship was their problem. I flew him back home, but when he got to rehearsal he refused to practice and sat on the sidewalk the whole time. He then decided that night to quit the band. He had this crazy idea that I had called the rehearsal in some elaborate plan to separate him from his girlfriend. This is from the mind of a very troubled and disturbed person. That night the rest of the band and I tried to talk him into changing his mind about quitting. No one wanted him to quit the band they just simply asked him to practice and rehearse. On a phone call with him the night he decided to quit, he started falsely accusing me of things that never happened, he literally lost his mind.

About a month before this episode occurred he called me and asked if I could help him find him a psychiatrist. I said I would. I figured he had one of the run of the mill issues like depression, anxiety or ADHD which are easily dealt with through medication. But he said it was something bigger going through his head, he said he felt like hurting someone. Never did I think it would be me.

He over time lost interest in practicing and



12:58 📵 🔯 📞 •                                    🔇 🛜 .ıll 🔋

← 🔍 Search

He over time lost interest in practicing and
rehearsing, he had no commitment to the band,
but he loved the money I sent the band each
month for expenses. He had a field day spending
my money. He spent his time all day and night
drinking beer. eating junk food and playing
pinball at an arcade in the neighborhood. I once
called him up to see how rehearsals were going.
He didn't say anything about the band but he
actually told me that he wanted to write a book
about pinball. Music went out the window and it
was all about getting drunk and playing pinball.

I never harassed this individual. this accusation
was an opportunity to spite me as well as a
money grab from a severely mentally disturbed
individual. I say this for all my friends, family and
fans around the world who have been waiting for
me to speak, but mostly I say this for myself in
order to move on with my life. Now that I've
spoken I'm ready to do that. I'm ready  again to
do what I was put on this earth to do, to play
music and to rock. That's my plan for the near
future and I ask all of you for your support as I
reclaim my life and get my groove back. Thank
you and much love

👍❤️🥳 566                        249 comments • 38 shares

        👍 Like              💬 Comment              ↪ Share



**Boyd Tinsley**                                        •••

|||        ◯        ⟨

1:19         📱 🛜 .ill 🔋

← 🔍 Search



# Boyd Tinsley

A founding member of DMB who has
formed another band called The Way Back
featuring Boyd Tinsley

 Add Friend         Message        •••

The Way Back featuring Boyd Tinsley

Studied at **University of Virginia**

Went to Charlottesville High School

📍 From **Charlottesville, Virginia**



4:50  ⁂ ▣ •                      ⦿ 📶 📶 🔋

← **Boyd Tinsley** 🔍

 **Heidi George**
So I was once friends or acquaintances
with the young man that Boyd speaks of
and I can honestly say that there is true
validity to what Boyd is saying. It's was
not hard to n•tice the decline in said
person, the partying, the pinball, and at
another point he was even homeless
and just crashing on peoples couches.
We're no longer friends and don't keep
in touch.

I know we've all watched as Boyd has
battled some of his own demons. I hope
that by speaking his side it helps him
and he can move forward.

5m   Like   Reply                    2 

 **Eric Wit**
Sorry for everything you went through
and glad you are getting your life back
together..things sometimes take time to
figure out how you want to move
forward from negative influences in
your life..would love to see you on the
road again...miss seeing you with DMB
and Crystal Garden.

4m   Like   Reply

 Write a comment...     

|||      ◯      

6:11      

← **Boyd Tinsley** 🔍

you and much love

👍 Like          💬 Comment          ↗ Share

👍❤️😊 1.5K

 **Corinne Gnatz**
I never believed it. 💯

1d   **Like**   **Reply**   4 👍

 **Angie Park**
A lot of us figured this was the case. I
really hope you can move on and get
past the damage that's been done to
you. This took a lot of courage and
please don't let the haters bring you
down. You're an amazing musician and
we miss you. Much love Boyd.

1d   **Like**   **Reply**   5 👍❤️

 **Justin Fairbanks**
Never believed it and miss you dearly.
Love ya Boyd

1d   **Like**   **Reply**   2 👍

 **Tami Lynn**
I've had your back since DAY ONE!!!!! I
love you

1d   **Like**   **Reply**   2 👍

 Write a comment...     

|||          ◯          ‹

6:12

← **Boyd Tinsley** 🔍

 **Mark Cavazos**
Boyd all I want is to be able to see you
on stage again with the band so my kids
can see how amazingly talented you
are! God bless 

1d   **Like**   **Reply**   6 

 **Curtis Morrison** Mark Cavazos I concur.  A k...

 **Cas Flores**
You are extremely missed and I haven't
been back to a show since you left.

1d   **Like**   **Reply**   3 

 **Graham Isaacson**
Thank you for sharing. So sorry this
happened to you 😞

1d   **Like**   **Reply**   2 

 **Kelly Brianne**
I'm glad you finally decided to speak
out. We've (your fans) all been worried
about you! Hearing that you are
standing on your two feet again and
getting yourself back out there makes
my heart happy for you! I'm ready to see
and hear what you have next in life. I'm
here for all of it! Much love 

1d   **Like**   **Reply**   3 

📷 Write a comment...   GIF 😀 ☺

|||   ◯   ‹

6:12                     

← **Boyd Tinsley**   🔍

 **Dani Kinnaird**
Not going to lie, I really didn't know what
to believe. But I'm glad you decided to
tell your truth 🖤 Much love, Boyd!
Looking forward to what the future has
in store for you! I miss your sound 🖤

1d   Like   Reply                    4 

 **Michael R. Drost**
Thanks for sharing Boyd! Stay strong
and enjoy the next chapter.

1d   Like   Reply                    1 

 **Richie Miller**
I never doubted you for a minute my
man, like you sing in true r eflections
"when you look into the mirror, do you
like what's looking at you ?" That's all
that matter !!! Been a fan from the
beginning, that'll never stop 💯
ONE LOVE ✌️

1d   Like   Reply                    3 

 **Michael Rogers**
Love you more, brother. I remain your
friend. Love from Nathan, too. He's in
Huntsville now, moved from Tuscaloosa
a few years ago, and is doing great. I'm
keeping faith and continue to care about

 Write a comment...     

||| ◯ ‹

6:13

 Boyd Tinsley

keeping faith and continue to care about you. Good to hear from you.

1d   Like   Reply   2 

 **Trina Harmon Murphy**
Extremely happy for you and excited for all of us that enjoy being a recipient of your talent. May your future shine 10x brighter than you ever imagined 

1d   Like   Reply   1

 **Heather Rupp-Bellis**
Sending love!!! 

1d   Like   Reply   1

 **Chris Clifford**
Thanks for sharing Boyd - it's good to hear your side of the situation as this has affected us all as fans of you and your work.

1d   Like   Reply   7 

 **Robert Carter**
No Apologies needed cuz

1d   Like   Reply   1 

 **Anthony Falco**
I know of a band from the

 Write a comment...   GIF    

6:13  

← **Boyd Tinsley** 

Charlottesville area who could use a violinist again....

1d   Like   Reply                          33 

View 1 previous reply...

 **Anthony Falco** Karla Rose Kast Boyd Vold is...

 **Jenifer Deuel** Anthony Falco YES! Love the...

 **Becky Carlson** Anthony Falco 💯!!!!

 **StacyAnn Melillo Keiler**
Sending love 💜 strength and prayers your way. Miss your fiddle with DMB

1d   Like   Reply                          1 

 **Lori Terling McMurdy**
Never believed any of it either. Miss you. Can't wait to see you play again.. **you're the best!** 🎻🎻💜

1d   Like   Reply                          1 

 **Tiffany Mead**
What a long overdue transparent statement. 💜

1d   Like   Reply                          4 

 **Toni Annette**
I'm glad you finally stated your truth.

 Write a comment...          GIF  

III   ◯   ‹

6:13

**Boyd Tinsley**



**Toni Annette**
I'm glad you finally stated your truth.
You are sorely missed and lost your job
because you were me too'd right out of
it. Facts before feelings, people. The
band will never be the same.

1d   Like   Reply                    2 



**Emily Pentland**
I have always been a fan...raw talent!!
Screw what people say ...it hurts trust I
hurts but screw nasty people

1d   Like   Reply                    1 



**James Brown**
Much love Boyd!

1d   Like   Reply   1 



**Curtis Morrison**
So glad you spoke out . I am so Over
this cancel culture and everyone feeling
like they have to walk around on tip
toes..... it is sad that someone can
literally TRY TO destroy someone's life,
with a few words. I AM HAPPY TO SEE
YOU ARE NOT ALLOWING THAT TO
CONTINUE.  I look forward to seeing
you perform at some point. LOVE YOU
Brother......

 Write a comment...          

6:13

**Boyd Tinsley**



**Joe Pearce**
I've been a firm believer that all these accusations where false and I've been waiting years for this statement. Your core fans know that not the person you were as we have stuck by you. I hope you can go back to doing what you love and that's making great music. Boyd Tinsley you are needed in this world. Your music moves people.

1d   Like   Reply                    3 



**Paul Wulff**
Thank you for opening up and letting us know Boyd. Time heals all wounds and I appreciate you taking the time to getting your head right about this situation. I do hope that you rejoin Dave and the band. I am happy you're doing well.

1d   Like   Reply                    2 



**Kristen Esposito**
Still Love You. I knew this was false! Please get on stage again! From a very Loyal fan who saw your greatness on stage 12 times between 96-03 Much Love   

1d   Like   Reply                    1 

Write a comment...                    GIF

6:13

# Boyd Tinsley


**Lori John Gutierrez**
Welcome Back, Boyd💜

1d    Like    Reply        1


**Stephanie Berger**
Boyd, thank you for sharing your truth. I am happy to see you are getting your life back and I'm happy you never gave up!

1d    Like    Reply        2


**Andrea Amundson Meader**
I miss your sound so much! So many songs just aren't the same.

1d    Like    Reply        1


**John DiMarino**
Thats great to hear Boyd Tinsley!!! Pick up that violin  and give Dave a call. The band and fans miss the energy you bring to the stage... soo many songs need that violin back

1d    Like    Reply        8


**Sam Assmann**
The truth is out!  

1d    Like    Reply    3 

Write a comment...    GIF

6:13 

← **Boyd Tinsley** 🔍

 **Tricia Sherman**
Much LoVE to you!!

1d **Like** **Reply** 1

 **Kory Kerr**
 

1d **Like** **Reply** 1

 **Ryan Wilkerson**
Good for you. Thanks for sharing,
Boyd. Generosity tends to bite you in the
ass in this cold world. I speak from a
smaller level of experience than you
Look out for yourself and I hope we see
you killing it on the  very soon!

1d **Like** **Reply** 1

 **Helene Hogan Lewis**
Miss your Music 🎸🎶

1d **Like** **Reply** 1

 **Katlyn Oldham**
So glad you can begin to move forward.
Missing you on stage for sure and
excited for what is to come for you!
Best of luck in your new adventures --
you still have the support of so many!

 Write a comment...   ☺

|||   ○   ‹

6:13                               📷 📶 📶 🔋

← **Boyd Tinsley**                    🔍

 **Erika Likar**
Keep pushing forward, Boyd. Life can be
tough sometimes. We love you and
know you can be better. Keep pushing.

1d    Like    Reply                    1 

 **Andrea O'Brien**
May you continue to heal with love and
grace from these trying times. 🕊️💙

1d    Like    Reply                    1 

 **Bob Berns**
I never stopped believing you were
INNOCENT. Sending tons of love your
way brother.

1d    Like    Reply                    7 

 **Tiffany Hamling**
I have been dying for you to recover
from all of this and come back, never
once did I buy that story and can only
imagine how bad that must have broke
your heart. You are and have always
been my favorite part of DMB, they arent
the same without you. I can't wait to
see what this next chapter holds for
you. Fingers crossed you tour on your
own and I get to meet you one day!one

  Write a comment...          

|||              ◯              ‹

6:13 

←     **Boyd Tinsley**     🔍

own and I get to meet you one day!one of my favorite Chris... See more

1d   **Like**   **Reply**      3 

 **Hanna Obrenovich**
I've had your back since the day these accusations surfaced, and I have defended you countless times. I've been called a victim shamer myself for doing so. I'm really glad you opened up and explained your side of the story. We have been engulfed in a "me too" movement where we side with the "victim" without question and anyone who shows doubt or has questions is a "victim shamer." We have complete... See more

1d   **Like**   **Reply**      17 

 **Penny Knowles** Hanna Obrenovich

**Penny Knowles**
🎸🎸🎸 Miss your music so much man. Thank God I have the old collection of CDs, VHS & DVDs. We're rooting for you. NOW GO GET YOUR GROOVE BACK  #celebratewewill

1d   **Like**   **Reply**      2 

📷   Write a comment...      GIF   😊   ☺

|||      ◯      ‹

6:14 

← **Boyd Tinsley** 🔍

 **Chris Meyer**
I never believed it for a second.. We have crossed paths several times. I have felt your aura.. and knew it was out of your character to do such things.. I have the same problem as you do.. certain people take my kindness for a weakness.. and I'm left hurting in the end.. keep your head up brother and get back to what you do.. we miss your presence and look forward to the future

1d   Like   Reply                    3 

 **Jennie Renee**
we love and support you. sure do miss you in DMB, it will never be the same.

1d   Like   Reply                    1 

 **Zack Wischnia**
Miss your sound man. Wishing you much success in this new beginning

1d   Like   Reply                    2 

 **Mel Nash**
Keep working on you Boyd & push to move forward. There's all types of people out there that take advantage of kind hearted people. All I can say is Karma. Karma always wins.

⌾ Write a comment...          

6:14

## Boyd Tinsley

Karma. Karma always wins.
We miss you Boyd! 🖤

1d    Like    Reply                    1

**Frank Reynolds**
Drew Kelly Steve Dinsmore

1d    Like    Reply                    1

**Andrew Steinberger**
We miss, love and support you Boyd
Tinsley!!!

1d    Like    Reply                    2

**Cheech Marley**
I never doubted you one but.... Welcome
back brotha 🖤

1d    Like    Reply                    1

**Vincenzo Thomas Amato**
Sending love and light and..... let's
jam!!!!! I'd love to jam with ya!  Come to
Reno/Tahoe and sit in with The Tahoe
Tribe at our next show the Subaru
winter fest Subaru WinterFest at Boreal
Mountain on March 20th in Lake
Tahoe !!  Peace, Vincenzo

1d    Like    Reply                    1

Write a comment...        GIF

6:14  

← **Boyd Tinsley** 🔍

 **Laura Fanning**
I'm so glad to hear from you Boyd!
We've (your fans) missed your sound
and your music and sweet soul. Sending
you so many healing vibes to move
onward and upward and look forward to
hearing you rock again. Thank you for
sharing your side. 

1d   **Like**   **Reply**            4 

 **Garrett Mangum Sr.**
We Only hung out once ●r twice but you
always seemed like a cool genuine guy.

1d   **Like**   **Reply**            1 

 **Annette Murray**
Praying you find justice

1d   **Like**   **Reply**   1 

 **Tuffy Gee**
You have my love and support.

1d   **Like**   **Reply**            2 

 **Will Astle**
I've always believed in my heart you
didn't AND COULDNT do what he said. I
remember just a few short years ago
you would meet EVERY SINGLE
PERSON that came to meet you after

�containing Write a comment...     

‖‖   ◯   ‹

4/10/23, 10:49 AM  Screenshot_20220223-181420_Facebook.jpg

6:14 

← **Boyd Tinsley** 🔍

you would meet EVERY SINGLE PERSON that came to meet you after the shows. HOURS later you were still hugging EVERY DAMN PERSON that came to meet you. That is not something a bad person does. I look forward to your next project and I'll support it!

1d  **Like**  **Reply**                    4 

 **Danielle Ingrassia Jones**
So much love Boyd 🖤 so glad you're making your way back! We've missed you!

1d  **Like**  **Reply**                    2 

 **Tamra Gallucci**
You are missed and loved...and I'm so glad to see the window has opened for you and some light is shining in.🖤

1d  **Like**  **Reply**                    2 

 **Diane Smith**
Wishing you much love brother and hope you are able to move on and pick up the pieces. I for one, think you are one of the most talented musicians and kindest humans I've met. It was such a pleasure to meet you at the Faces in the

 Write a comment...      

||| ◯ 

6:14 

← **Boyd Tinsley** 🔍

pleasure to meet you at the Faces in the
Mirror after party and talk. I look
forward to hearing you play again!

**1d    Like    Reply**    1 ❤

 **Tonya Jo Rhoades**
You are missed a great deal. 

**1d    Like    Reply**    4 ❤

 **Felicity Garlock**
THANK YOU BOYD. THANK YOU,
THANK YOU, THANK YOU!!! We have
been waiting for you to come out of
hiding.  I'd counter sue that little
asshole. Whatever you need to rock on,
I'm here for it!

**1d    Like    Reply**    2 ❤❤

 **Chris Westmoreland**


Tenor

**1d    Like    Reply**

 Write a comment...      



6:14     

← **Boyd Tinsley**    Q

 **Bethany Sansom Roley**
Wishing you all the best Boyd! You are
missed

1d    Like    Reply    1 

 **Sandra Heiland-Jones**
Boyd, drugs and ppl with mental issues
always are a mixture for disaster! Like
you, I have a big heart and have a hard
time saying no esp in ppl I believe in and
inevitably I have always came out
victimized.
We all miss you with all that we are
playing in the band. Your sweet sweet
music and love you have
unconditionally to the music, fans and
your family has not gone unnoticed and
prayer for you... See more

1d    Like    Reply    1 

 **Anita Jane Hopkins**
Thank you for sharing your story

1d    Like    Reply    2 

 **Amber Cavanaugh**
I'm so glad you're coming back. You're
here to put your amazing light into the
world and should not allow anyone to
limit that, no matter how hard they try. I

 Write a comment...      

|||    ◯    ‹ 

6:14 

← **Boyd Tinsley** 🔍

limit that, no matter how hard they try. I know how demoralizing and exhausting it can be when you just want to bring love to everyone and people respond with ugliness, but that's their soul's issue to figure out. 

1d    Like    Reply    1 ⚫

 **Tricia Giarrusso Ullucci**
Wishing you peace.

1d    Like    Reply    1 ⚫

 **Carole Anderson-Rivers**
Miss you madly and thank you for sharing 

1d    Like    Reply    1 ⚫

 **Bobby Clark**
Best of luck moving forward. We all miss your sound and I'm sure we all want you to continue to make amazing music. Thank you for all you do. Your music has helped me through tough times.

1d    Like    Reply    1 ⚫

 **Sam Mcdonagh**
They ain't the same without ya!

 Write a comment...   

||| ◯ ‹

# Exhibit 4b

---

*Copies of Facebook posts that were also shared to his
Twitter Account*


6:14 

← **Boyd Tinsley** 🔍

 **JoAnn Contino**
Big hugs Boyd finding your inner peace!!! Rock on!!!

1d    Like    Reply    3 

 **Lauren Nicole Carpenter**
Caitlin

1d    Like    Reply

 **Caitlin Rutland** Lauren Nicole Carpenter girl t...

 **Caitlin Rutland** Lauren Nicole Carpenter Gris...

 **Kelli Hall**
I appreciate you sharing your story. Society has taken on a "guilty unit proven innocent" stance before even hearing both sides and it's sad. But I pray that you are able to put this completely behind you and focus in doing what you love again! Wishing you peace!

1d    Like    Reply    6 

 **Courtney Litka**
I had a feeling it was something like this. Thank you for the statement. You are truly missed! Much love Boyd!!!

1d    Like    Reply    2 

 Write a comment...      

|||     ◯     ‹

6:14                      

←      **Boyd Tinsley**      🔍

 **Kimberly Brucato-Reilly**
Boyd Tinsley
From someone who deals with
depression and family members who
struggle with it
It's a hard cross to beat and bear and
the person going through it has to be
the one to realize they need help and
seek it for themselves. You did the best
you could and unfortunately they took
advantage of you and your big generous
heart
I'm so sorry you suffered from lies and
distortion and having your... See more

1d   Like   Reply      3 

 **Jessica Isherwood**
It's not the same without you Boyd!

1d   Like   Reply      4 

 **Fletcher Salmon**
Still have your autograph 🖊 on a
poster. 🖤

1d   Like   Reply      1 

 **Aar On Peretz**
Break free, Boyd !

1d   Like   Reply   4 

📷   Write a comment...      GIF 😀 🙂

|||      ◯      ‹

6:15  🔅 ⬡ ⊕ 🔊 • ⚙ 🔋 🛜 📶 🔋

← **Boyd Tinsley** 🔍

 **Kimberly Brucato-Reilly**
Boyd Tinsley
From someone who deals with
depression and family members who
struggle with it
It's a hard cross to beat and bear and
the person going through it has to be
the one to realize they need help and
seek it for themselves. You did the best
you could and unfortunately they took
advantage of you and your big generous
heart
I'm so sorry you suffered from lies and
distortion and having your reputation
ruined
Your true fans like me believed in your
innocence
May time and Space and a clean slate
give you the motivation you need to
start fresh and over
Everyone deserves new chances
Much LoVE and hope to see and hear
you playing once again 🖤

1d **Like** **Reply** 3 

 **Jessica Isherwood**
It's not the same without you Boyd!

1d **Like** **Reply** 4 

 **Fletcher Salmon**

 Write a comment...   

||| ◯ ‹

6:15 

← **Boyd Tinsley** 🔍

 **Fletcher Salmon**
Still have your autograph 🖊️ on a poster. 🖤

1d    Like    Reply                    1 😍

 **Aar On Peretz**
Break free, Boyd !

1d    Like    Reply    4 👍😍

**Nicco Mannarino**
You are the one thing in life you can control. Never forget that, BT. I'm happy for you that you've gotten to a place where you're ready to get back to doing what you were born to do.


1d    Like    Reply                    7 😍👍

 **Jenifer Deuel**
Miss you BT!

1d    Like    Reply    1 😍

 **April Saxon Davison**
You've been missed 

1d    Like    Reply    1 😍

 **Christiane Rohde**
Big hugs from Germany 

📷    Write a comment...    GIF  😊   ☺️

|||    ◯    ‹



6:15 



← **Boyd Tinsley** 🔍

 **Shelley Sterba**
We miss you sooo much! Thank you for sharing your story, Boyd. Wishing you much love and success going forward!! 🖤

1d  Like  Reply  2 

 **Kennedy Grace Haga**
Katelyn Colombrito

1d  Like  Reply  1 🖤

 **Lauren Shell Fowler**
Miss you dearly Boyd!!! Best wishes to you and your next endeavors. I will always support you 🖤

1d  Like  Reply  3 

 **Casey James**
So DMB was more afraid of negative press than having their own friends back? Wow. Some real stand up guys in the band. Disgusting of them if everything you said here is true.

1d  Like  Reply  1 

View 4 previous replies...

 **Brenda Jane** But you could also read betwe...

 **Casey James** Brenda Jane great points. I ju...

📷  Write a comment...  GIF  🙂

||| ○ ‹

6:15

Replies



**Charee Fairchild**
Perhaps things didn't happen the way the accusers brought them to the table but the fact that you take absolutely zero accountability in this post and I see massive amounts of people stroking your ego is disgusting.

1d    Like    Reply                    8 

 **Lauren Shell Fowler**
Charee Fairchild So then why are you here and following him 

1d    Like    Reply            2 

 **Charee Fairchild**
Lauren Shell Fowler I'm not, a friend sent this to me And while reading through everyone's comments I felt that I wanted to comment.



1d    Like    Reply                    1 

 Write a reply...          



6:16 📷 📧 💠 ⚡ •　　　　🔕 ⚙ 📶📶 🔋

← Replies　　　　　　　　　🔍

 **Alexandria Hess**
I'm very shocked by the support here

1d　Like　Reply　　　　4 🕐

 **Charee Fairchild**
Alexandria Hess looking at
acquaintances that have loved this
it's just like fucking wow. Anyone
who was following the band saw his
massive amount of decline in a
short period of time he wasn't
playing well, he wasn't himself. But
everybody seems to think that he
was all good. And the people calling
out the band for not "standing by
their friend", for fucks sake man!
Open your goddamn eyes

1d　Like　Reply　　　　6 🕐

 **Angie Park**
Charee Fairchild no, it's called
human decency. I still follow him
because I wasn't involved. We won't
ever know what happened for sure.
But bashing him for something we
don't know isn't right either. Maybe
he wasn't good (performing in the
band) because of what he was
going through? I know when I'm
stressed my work can suffer terribly.

 Write a reply...　　　  

|||　　　　◯　　　　‹

6:16  •

← **Replies**

band) because of what he was going through? I know when I'm stressed my work can suffer terribly. We won't ever know. Just trying to support one another and show love no matter the situation.

1d   Like   **Reply**     2 

 **Charee Fairchild**
Angie Park You're right we weren't there and I didn't say he did it either, I said he took zero accountability and the post above illustrates that perfectly. You're definitely right about love, acceptance and forgiveness, where I have a hard time is that yes, stress can do a lot of things to someone but there were drugs or some type of substance abuse involved. Did you watch any of his performanc... See more

1d   Like   **Reply**     1 

 **Mark Leon Ware Sr.**
Charee Fairchild I'm confused by your stance or perhaps the lack of sense it makes. Let me explain... It's really quite simple, if you acknowledge that he may well have been innocent, what has he to

   Write a reply...       

|||          ‹

6:16 🔲 🔾 🔹 ●                    🔲 🔏 🖹 📶 🔋

← Replies                                    Q

 **Charee Fairchild**
Angie Park You're right we weren't
there and I didn't say he did it either,
I said he took zero accountability
and the post above illustrates that
perfectly. You're definitely right
about love, acceptance and
forgiveness, where I have a hard
time is that yes, stress can do a lot
of things to someone but there were
drugs or some type of substance
abuse involved. Did you watch any
of his performances with the guy he
was playing with after leaving Dave?
He could hardly even stand up
during some of those
performances. Nodding off, while
performing. He was driving around
in the dark swerving all over the
road in the pitch black dark
rambling and posting on Instagram.
I have a problem with a zero
accountability, he was definitely
under the influence of other things
besides stress.

1d    **Like**    **Reply**                    1 

 **Mark Leon Ware Sr.**
Charee Fairchild I'm confused by
your stance or perhaps the lack of

 Write a reply...              

Ⅲ                ◯                ‹

6:16 

**← Replies**    🔍

He could hardly even stand up during some of those performances. Nodding off, while performing. He was driving around in the dark swerving all over the road in the pitch black dark rambling and posting on Instagram. I have a problem with a zero accountability, he was definitely under the influence of other things besides stress.

1d    Like    Reply    1 

 **Mark Leon Ware Sr.**
Charee Fairchild I'm confused by your stance or perhaps the lack of sense it makes. Let me explain... It's really quite simple, if you acknowledge that he may well have been innocent, what has he to account for? Your statement claims he may have been innocent so what accountability are you looking for. If he is in fact innocent, and based on his statement, he feels he is the victim of false accusations, why would his statement include him being accountable? That makes zero sense

1d    Like    Reply    1 

 Write a reply...      

| | |  | | ‹ |

6:17 

← **Boyd Tinsley** 🔍


**Jaret Sons**
Drew B. Hahn Tanner Carue Hedrick
1d    Like    Reply


**Annie Almeida**
We love you and miss Boyd 🙏
Peace and l0ve
1d    Like    Reply                    1 🕐


**Shannon Cavanaugh Micali**

1d    Like    Reply    1 


**Ramon Delgado**
Here's to the future! Thank you Boyd
Tinsley
1d    Like    Reply                    1 


**April Boyle**
We love you and will always be your
family!!!
1d    Like    Reply                    1 🕐


**Phil Phunn**
Having only had very little contact with
you you could've been more open or
~~more generous and your hand was not~~

 Write a comment...      



6:17 

← Replies

  **Jimmy Walker**
It sucks that in todays "Cancel Culture" world, people are consider guilty unless proven innocent which is total garbage. The band did you wrong by not allowing due process to take place. Wish you the best

1d    Like    Reply                    4 

**Damon Warren**
Jimmy Walker I think the band was in a catch-22 situation. Boyd didn't speak out (now we know why) so either they had to support him in silence (PR disaster) or let him go.

I'm not saying I totally agree with what the band did. However, remember, at that time, Kevin Spacey, Bill Cosby, and Harvey Weinstein were all in the news. I don't know that they had any realistic alternative.

1d    Like    Reply                    4 

Write a reply...        GIF  😊  ☺



6:17 

← **Boyd Tinsley**    Q

 **Chika Onuoha**
Boyd! Thank you! Remember stay
vigilant because the devil is always at
work. stay blessed

  1d  **Like**  **Reply**

 **Jessikah Elaine**
Thank you coming out & speaking on
the matter ✌

  1d  **Like**  **Reply**

 **Jessikah Elaine**
Zayne Featheroff

  1d  **Like**  **Reply**

 **Casey Patrick Salt**
It seemed a little suspicious a guy worth
millions of dollars in one of the biggest
bands in the world and someone who
didn't have any money looking to take
advantage. I smelled a rat from the
start. Dmb just hasn't been the same for
me without Boyd. I hope he will come
back to the band. I believe you will
stand by you.

  1d  **Like**  **Reply**      2 

 **Taylor Vagrin Dyess**
Thank you for speaking your side of the

    Write a comment...      

|||            ‹

6:17 📷 😊 ☁ •    🔕 🔕 📶 🔋

← **Boyd Tinsley** 🔍

 **Taylor Vagrin Dyess**
Thank you for speaking your side of the
story BT! 🖤 you are missed.

1d   Like   Reply                    1 😊

 **Todd Thadius**
Hope all is well these days BT.I miss
jamming out with ya dude.

1d   Like   Reply                    1 😊

 **Vickie Hartin**
Speak up brother. And I sure do hope
dmb is in your near near future we miss
you!

1d   Like   Reply                    1 😊

 **Dianna Carter**
Those of us who love you, already knew
you knew you and loved you 🖤

1d   Like   Reply                    1 😊

 **Elle Lynn Barrington**
Miss your sound Boyd 🖤

1d   Like   Reply                    2 😊

 **MJ Larson**
Much love 🤟 🎸

1d   Like   Reply   1 😊

 Write a comment...        GIF 🖼 😊

|||        ◯        ‹

6:17       

←     **Boyd Tinsley**     🔍

 **Sam Bode**
Stephen Mahar Jackson Bode

    1d    Like    Reply      2 

 **Jeff Romano**
You're a sweet man, I will always
cherish hanging out and playing tunes
with you. I support you my friend. Go
on and get your badass groove back

    1d    Like    Reply      3 

 **Marie Fleury Todorovsky**
Wishing you health, happiness & love
going forward! We've missed you & your
talent Boyd Tinsley 🖤 ✌️

    1d    Like    Reply      2 

 **Austin Mullinax**
There will be tons of people who dont
believe this and who knows what ALL
the details are but I do miss Boyd in the
band and hope he is getting back to
playing music and enjoying his life

    1d    Like    Reply      2 

 **Nolan Hamilton**
Nevin Hamilton

    1d    Like    Reply    1 

 Write a comment...       

|||      ◯      ‹

6:17     

← **Boyd Tinsley** 🔍

 **Amber Quinn-Walls**
Much love
Miss your amazing sound

1d   Like   Reply

 **Gary Shears**
Best of luck Boyd.

1d   Like   Reply   1 😆

 **Christopher Hicks**
Jessica Hicks check this out. Missin
that violin.

1d   Like   Reply

 **Ashlee Stewart**
#peaceandLoVe

1d   Like   Reply

 **Andrew Sievers**
You have my support brother!!! As a
long time fan and supporter of DMB
since the Horde Fest of 95 being my
first show of many, I have become
sadden by the actions and words of this
band. They should have stood by you
more, supported you more, and not spit
in the face of their fan base. It use to be
the, "leave nothing but your foot prints"

 Write a comment...      



6:17 

← **Boyd Tinsley** 🔍

the, "leave nothing but your foot prints"
Band, now it is filled with the, "litter the
whole damn field and everyone should
do what I am unwilling to do" Band.
Spend 10K to hear a man surrounded by
walls and machine guns preach to us
about how he is more of a bridge guy
than a wall guy. It is sad that a band
that was loved by so many American's
is now only filled with socialists. We
pray and hope the best for you Boyd, the
band has not been the same without
you. I am sadden that the band has not
publicly come out in support of you if
these words are true, and I will believe
they are true until someone proves to
me they are not. P.S. Jeff and Stefan
should take social media lessons from
Tim. Tim is a god!!

1d    Like    Reply                    5 

**View 5 previous replies...**

 **Andrew Sievers** Melissa Tuff also, next time...

 **Melissa Tuff** Andrew Sievers oh and you're s...

 **Andrew Sievers** Melissa Tuff thank you.

 **Tee Bee**
Unfortunately people with the best of
intentions sometimes get taken

📷  Write a comment...          GIF  

4/10/23, 11:56 AM   Screenshot_20220223-181806_Facebook.jpg

6:18  ⬤ 🔆 ⚫

🎙 🔌 📶 📶 🔋

← **Replies**   🔍

Tim.  Tim is a god!!

1d   Like   **Reply**   5 

 **Andrew Sievers**
That is right, I said what many of
you are thinking.  The last 10 years I
started hanging out after the shows
to take pictures of how this new fan
base leaves the place.  It is gross
and never use to be this bad.

1d   Like   **Reply**

 **Melissa Tuff**
Andrew Sievers Sorry to burst your
bubble bro..I've been going to shows
for 21 years and there's ALWAYS
been messes left after the shows.
Your statement of the fan base
having switched to socialists is also
waaay off base.  Wouldn't socialists
be green freaks and pickup their
trash? You're either of touch with
reality or you're a newbie fan
because Dave has always expressed
socialist-like values a... See more

20h   Like   **Reply**   1 

 **Andrew Sievers**
Melissa Tuff clearly you didn't read
my words. "Everyone should do

 Write a reply...     

||| ◯ ‹

https://drive.google.com/file/d/18WXClQHJjmZoEUg-AO3DdDNLs3pWWZWD/view?ts=64344fd9

1/1

6:18  •



← Replies                                    🔍

Andrew Sievers Sorry to burst your
bubble bro..I've been going to shows
for 21 years and there's ALWAYS
been messes left after the shows.
Your statement of the fan base
having switched to socialists is also
waaay off base. Wouldn't socialists
be green freaks and pickup their
trash? You're either of touch with
reality or you're a newbie fan
because Dave has always expressed
socialist-like values and
lyrics...where have you been?!

20h    Like    Reply              1 👍

  **Andrew Sievers**
Melissa Tuff clearly you didn't read
my words. "Everyone should do
what I am unwilling to do". These
people scream, "be kind always" but
are more like you, bitter and cold.
These people scream, "don't litter"
but throw there crap all over the
field. Wouldn't socialist be green
freaks? Dave has always expressed
socialist-like values. You are a
walking contradiction. I have been
right here paying attention. A
newbie fan? Yes a newbie was at
the gorge in 95.... Am I suppose to
be compelled to prove my fan-hood.

   Write a reply...            

|||              ◯              ‹

Screenshot_20220223-181825_Facebook.jpg

6:18 

← **Replies**

be compelled to prove my fan-hood to you now? I just said shows in the 90's did not look like a wasteland like it does today. I know this because I was there. Just because you do not agree, doesn't make me wrong. Folks my age, hard working folks, fans since the 90's, are not waiting for government handouts. Folks my age paid for their own education. Thank you bro.

14h     Like     Reply                              1 

 **Melissa Tuff**
Andrew Sievers okay pal you can step off your soapbox now. If you'd been paying attention and have been a fan since the 90s then you must not have been going for the music because Dave has always been opinionated about politicians and leans more toward being a liberal than a conservative. Save your money and find a new band to follow. Perhaps Kid Rock is more aligned with your values? Maybe a little Ted Nugent would cleanse your palette of all is disgusting socialist DMB fans?

11h     Like     Reply

    Write a reply...                      

|||      ◯      ‹

4/10/23, 11:56 AM

6:18 

← Replies

DMB fans?

11h   Like   Reply

 **Andrew Sievers**
Melissa Tuff be kind always, except
when you disagree. Lol. I love when
you inclusive fans tell us who we
can listen too. Good day.

10h   Like   Reply

 **Andrew Sievers**
Melissa Tuff also, next time you go
to a show. Look around for that
bridge letting all the people in for
free. You may have to walk around
a lot of walls to find it but I am sure
it is there.



Tenor

10h   Like   Reply

 **Melissa Tuff**
Andrew Sievers oh and you're such a

 Write a reply...    

6:18 📷 🔄 ⚙️ ·          🔕 📶 🔋

← Replies          🔍



Tenor

10h   Like   Reply

 **Melissa Tuff**
Andrew Sievers oh and you're such a
great example of Dave's values? Be
kind always unless they are
escaping tyranny and fleeing to a
country in the hopes of a better life
right? Be kind always unless your
political views don't align with mine?
You're a hypocrite dude and I don't
even know why I bothered to engage
with you since you obviously don't
own any mirrors in which you could
take a good, hard look at yourself
and see the walking contradiction.

10h   Like   Reply

 **Andrew Sievers**
Melissa Tuff thank you.

10h   Like   Reply



◎  Write a reply...          GIF  😊  🙂

|||      ◯      ‹

6:18                               

←      **Boyd Tinsley**      🔍

 **Tee Bee**
Unfortunately people with the best of intentions sometimes get taken advantage of the most. The good news is that an honest man can not be cheated. Truth wins every time. It's unfortunate and enlightening that your band didn't "back you up."

1d   Like   **Reply**      1 

 **Amy Thompson**
Love you and miss your violin!

1d   Like   **Reply**      3 

 **Patricia Mattingly**
Miss you in DMB.😢 It was a very sad time when that all went down. I can't bring myself to go to DMB shows since you left. It's just not the same. You were my favorite guy in the band and it still sucks. I hope speaking your side helps the healing process for you and look forward to hearing some new stuff. Much love my muppet friend!!😊💕

1d   Like   **Reply**      2 

 **Pamela Haldane**
I always knew in my heart that something did not seem right about the

   Write a comment...        

|||          ‹

4/10/23, 11:59 AM    Screenshot_20220223-181855_Facebook.jpg

6:18 

← **Boyd Tinsley** 🔍

something did n●t seem right about the entire story.

Wishing you nothing but blessings of peace love and light Boyd

1d    Like    Reply                    1 

 **Mary Newton**
Hugs and support! Missing your energy and music 🖤

1d    Like    Reply

 **Eric Biron**
Always believed this was bullshit... last time I saw you
Was with Crystal
garden at 1904 Jacksonville... right
before this happens/story broke... never
doubted you dude

1d    Like    Reply

 **Steve Wenderlich**
I have met you on numerous occasions
over my 30 years following music
around this land. While I won't say that
you can tell EVERYTHING about a
person in a 2-3min interaction......I
would like to believe that you can tell if
a person is mostly good or mostly bad. I

 Write a comment...      

|||  ‹

6:19 

← **Boyd Tinsley** 🔍

a person is mostly good or mostly bad. I
just never ever got the vibe that you
have had it in you to hurt people. I still
refuse to believe that. Obviously,
persons who are victimized deserve our
sympathy. However, when we extend
that sympathy, we cannot afford to
forget that sometimes it is possible that
the accusations are exaggerated or
even false. Do we really want to live in a
country where just a simple accusation
can ruin a person's life or career? You
can't put toothpaste back in the tube,
and the damage done from these kind
of accusations cannot be undone. There
are people out there who will simply
believe this guy's rediculous narrative,
and that is sad. You have had my
support from the beginning, and you will
always have my support going forward.

1d   **Like**   **Reply**                    3 

 **John Veitch**
We never bought the mainstream lies
Boyd. Looking forward to seeing you on
stage again sir! We were savagely
disappointed when we went to Bluefest
in Ottawa summer 2018 and you weren't
there with DMB, it's not even close to the
same band now because you're not

 Write a comment...          

|||  ‹

# Exhibit 5

Plaintiff Winn's Attorney's Letter to Henry Willett
dated August 29, 2022

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

August 29th 2022

Jason Hatch, Attorney
26108 Woodland Way S.
Kent, WA 98030

**My Client: James Frost Winn**

**CONFIDENTIAL SETTLEMENT NEGOTIATION**

Dear Henry:

I am in receipt of your letter to Stephanie Stoker, dated August 5th, 2022. Please note the following response.

I am in agreement with your assessment that Washington follows the "single publication rule" when defamation is the issue. However, what we are currently dealing with are our contractual issues; disparagement and disclosure of any aspect of our settlement agreement. Neither of these issues falls under defamation. We do intend to bring a defamation action over the posts Boyd has created and caused to be put into the public domain. It is also my understanding that Boyd posted defamatory information on two different sites, at two different times, so we will likely have two actions in defamation rather than the one. Our settlement agreement states that nothing about our liquidated damages for disparagement and violation of non-disclosure shall interfere with either party's ability to bring further separate action if necessary.

*MICHAEL MORENO and MEDPRO, INC. Plaintiffs, v. RORY E. TRINGALI, Defendant. Civil No. 14-4002 (JBS/KMW) UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY June 27, 2017..." Moreno v. Tringali (D. N.J. 2017),* though not a Washington specific case, provides an excellent US District Court discussion of a Settlement agreement that includes separate clauses

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

regarding defamation and disparagement, and shows a distinction between them. I have included a

large portion of the case here.

From Moreno:

"Breach of contract…

Here, Plaintiff has proved that the Agreement executed by Plaintiffs and Defendant on

September 20, 2012 is a valid contract. It is well-settled law that a "settlement agreement between

parties to a lawsuit is a contract." *Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).* Defendant does

not contend that he was tricked, misled, or in any way did not understand the contract at the time he

signed it; indeed, he was represented by counsel during the pendency of the litigation which led to the

Settlement Agreement and counsel advised him in the preparation and execution of the Agreement.

Because the Agreement is a valid contract to which Defendant and Plaintiffs were both bound, it is

"governed by principles of contract law." *Sipler v. Trans Am Trucking, Inc., 881 F. Supp. 2d 635, 637*

*(D.N.J. 2012).* When such a settlement agreement is in effect, it "is an enforceable contract to which a

court must give legal effect according to the parties' intent as expressed in the document." *Blunt v. Lower*

*Merion School Dist., 767 F.3d 247, 282 (3d Cir. 2014) (citing Davis v. Huskipower Outdoor Equip.*

*Corp., 936 F.2d 193, 196 (5th Cir. 1991)).* When "parties express their intent in language in [a]

settlement agreement and were represented by skilled attorneys, [the] court should not look beyond that

language to understand [the] agreement." *Sipler, 767 F.3d at 282 (citing Lubrizol v. Exxon Corp., 871*

*F.2d 1279, 1283 (5th Cir. 1989))…*

…2. "Disparaging remarks," "defamatory remarks," and remarks casting Plaintiffs "in a negative

light"

…This is a simple breach of contract (i.e., the Settlement Agreement) case. In *Patel*, the reviewing

court reversed the trial court's finding that a plaintiff's case was properly construed as a defamation case

(subject to a one year statute of limitations) and instead found that the "cause of action should have been

reviewed as one of trade libel" with a six year statute of limitations. Id. at 246. As the court in *Patel*

noted, "[t]rade libel identifies the tort addressing aspersions cast upon one's business operation." Id.

However, this Court does not now consider a tort claim, but rather only Plaintiffs' claim for breach of

contract…

…In contrast, other courts have had occasion to assess the correct approach to construing non-

disparagement clauses, specifically in settlement agreements. The Court finds these cases instructive. In

*Eichelkraut v. Camp, the Court of Appeals of Georgia* examined this issue in detail. 236 Ga. App. 721

(1999). There, the parties had previously entered into a settlement agreement wherein they agreed that

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

they would "'cease and refrain from making any disparaging or defamatory remarks or comments regarding one another, expressly or by implication, including but not limited to any parties' personal or business dealings and reputations.'" Id. at 722. Subsequently, the appellant mailed a letter to a district court judge stating that the appellee was being investigated for fraud, embezzlement, and racketeering and asked the judge to reconsider "'your choice of Trustee'"; she also mailed a letter to the Georgia Society of Certified Public Accountants "'to alert you to the blatant disregard of professional ethics'" exhibited by the appellee, accused him of ethical violations, and stated that he was being criminally investigated. Id. at 722-23.

The court ruled that the letters "on their faces[] were disparaging[,]" notwithstanding that the statutory definition of "disparagement" in Georgia identifies it as a form of slander or defamation: [T]his statutory definition of a tort does not dispense with the cardinal rule of contract construction that in interpreting contracts, we must ascertain the intent of the parties. . . . We conclude that the agreement clearly reflects the parties' intent that the non-disparagement clause applied to all derogatory communications, whether true or not. . . . [T]he phrasing of the clause itself clearly contemplates a broad definition of the term "disparaging," as it prohibits both "disparaging or defamatory remarks or comments."

Similarly, in *Halco v. Davey*, the Supreme Judicial Court of Maine found that a plaintiff stated a valid claim for breach of a settlement agreement that prohibited the parties from "disparage[ing] or discredit[ing]" one another where the plaintiff alleged that the defendant called the settlement a "'payoff' that 'only promotes more lawsuits' and that the defendants 'had beaten this guy the whole way through,' . . . could establish injury to [the plaintiff's] reputation because the statements can be understood as suggesting that his claim was frivolous." 919 A.2d 626, 630 (2007). The court there looked to Webster's II New Riverside University Dictionary to establish the plain or ordinary meanings of the words "disparage" and "discredit" to reach its conclusion. Id.

In *Fisher v. Biozone Pharmaceuticals, Inc.*, the Northern District of California ruled that a plaintiff had violated a settlement agreement that prohibited him from "mak[ing] any derogatory, disparaging or critical negative statements . . . against any Defendant" when the plaintiff emailed a journalist and stated that the defendants regularly breached their agreements and other regulations and that he had filed an SEC whistleblower complaint and several lawsuits against them: [T]he settlement's non-denigration term does not implicate First Amendment rights. . . . Nor is the point whether the defendants have established a tort such as defamation. The information that the plaintiff continued to disseminate [such as] accusing the defendants of . . . fraud . . . [is] disparaging in the normal

sense, and certainly in the broad sense intended by the settlement agreement. Even if what the plaintiff said was old information, and probably even if it was true, this still breached the broad mandate of the settlement agreement's non-disparagement clause…

…The Oxford English Dictionary defines the adjective "disparaging" as "that disparages; that speaks of or treats slightingly, that brings reproach or discredit." It defines the verb "disparage" as "to bring discredit or reproach upon; to dishonor, discredit; to lower in credit or esteem," or as "to speak of or treat slightingly; to treat as something lower than it is; to undervalue; to vilify." Disparaging, Oxford English Dictionary (online ed.), http://www.oed.com/view/Entry/54910 (last visited June 27, 2017); disparage, Oxford English Dictionary (online ed.), http://www.oed.com/view/Entry/54905 (last visited June 27, 2017). Under those definitions, there is no genuine dispute of material fact that Defendant's allegations against Moreno and Medpro on the website and in communications to others were disparaging, in that they "sp[oke] slightingly of" Plaintiffs and "vilif[ied]" and "br[ought] discredit or reproach upon" Plaintiffs' reputations.

As Plaintiffs state:

The first paragraph [of Paragraph 13 of the Agreement] contains two restrictions: no disparaging remarks and cannot cast any party in a negative light. The second paragraph prohibits defamatory remarks. [Docket Item 55 at 5.] The Court agrees that the "defenses offered by [D]efendant only apply to the defamation restriction in the second paragraph." Id. In accordance with normal principles of contract interpretation, it would be unreasonable to subsume the first paragraph into the second and rule that only defamatory statements could violate the clear and unambiguous language prohibiting disparaging statements and other statements casting a negative light, when defamatory statements are prohibited just a few sentences later. Moreover, each subparagraph of ¶ 13 has its own liquidated damages provision, further indicating that the defamatory remarks provision is independent of the disparaging remarks and negative light provision. Defendant does not explain or attempt to explain how his statements on the website and his communications with others were not violative of the restrictions on disparaging remarks and casting Plaintiffs in a negative light.

Accordingly, for purposes of this motion to enforce the Settlement Agreement, the Court will focus on determining whether Defendant has violated the "disparaging remarks" and/or "casting Plaintiffs in a negative light" clauses, the breach of which does not require Plaintiff to prove malice or falsity. The Court will not consider whether Plaintiff has also proved breach of the "defamatory remarks" clause because that takes us on an excursion into whether the negative remarks were also knowingly false or made with malice, against which Defendant argues truthfulness as a defense to defamation. Rather than

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

testing whether there is a genuine dispute of material fact regarding their truthfulness, the Court will instead determine whether there is any genuine dispute about their "disparaging" and "negative light" character, neither of which requires Plaintiffs to prove that the remarks were false…

…Accordingly, the Court finds that Plaintiffs have met their burden of establishing that there is no genuine issue of material fact as to whether Defendant breached Paragraph 13 of the Settlement Agreement; the breach is clear and no reasonable finder of fact could find otherwise than that Defendant committed it by disparaging Plaintiffs and by casting Plaintiffs in a negative light.

3. Number of breaches

The Court further finds that Plaintiffs have established eleven breaches of the non-disparagement clause and the "negative light" clause.

Plaintiffs suggest that the undisputed evidentiary record establishes twenty-three (23) breaches by Defendant of the non-disparagement clause and/or "negative light" clause of the Settlement Agreement. They are, specifically, as follows:

1) January 9, 2014 email to Velona: Referring Velona to ripoffreport.com, complaintsboard.com, scamclub.com, yelp.com (a review site), dotmed.com, and telling her to "Call me. . . . a client of there's [theirs] that been ripped off for over 1 year and they are posting the truth." [Docket Item 51 at 7.]
[the Court goes on to discuss all the instances]
The Court will address these in turn…

…Accordingly, for the foregoing reasons, the Court will grant summary judgment to Plaintiffs for breach of [section] 13 of the Settlement Agreement as to eleven claimed breaches of the Settlement Agreement's non-disparagement clause.

4. Liquidated damages

The issue that remains as to the breach of contract claim is whether Plaintiffs are entitled to summary judgment as to their claim for liquidated damages for the breaches of the non-disparagement and negative light clauses.

The general rule is that the amount of unliquidated damages is not established by a default judgment. Comdyne I, 908 F.2d at 1149. However, if "damages are 'liquidated or computable,'" they may be "awarded simply on the basis of the pleadings." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270 (E.D.Pa. 2014) (citing Comdyne I, 908 F.2d at 1152). See also Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

The breached Settlement Agreement, however, contains a liquidated damages provision. This provision, which the parties the Agreement negotiated, through counsel, states that "five thousand dollars

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

($5,000.00) is to paid by the breaching party for each breach." [Docket Item 49-3 at 8.] Paragraph 13 of the non-disparagement clause continues that this "amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove." [Docket Item 49-2 at 2.]

New Jersey law follows the approach of the Second Restatement of Contracts and generally enforces reasonable liquidated damages clauses, noting that "such clauses should be deemed presumptively reasonable and . . . the party challenging such a clause should bear the burden of proving its unreasonableness." Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 252 (1994).

Defendant has not alleged that the liquidated damages provision in Paragraph 13 of the Settlement Agreement is unreasonable or otherwise "unenforceable on grounds of public policy," Restatement (Second) of Contracts, Sec. 356(1) (1981), and the Court does not discern any unreasonableness on the fact of the Agreement. Accordingly, because the liquidated damages provision contracted for by Plaintiffs and Defendant is presumptively reasonable, the Court will enforce that provision.

Because Defendant breached the non-disparagement clause of the Settlement Agreement eleven times, and because the Agreement provides for damages of the greater of $5,000 or actual damages, Defendant shall be liable for damages in the amount of fifty-five thousand dollars ($55,000). *Moreno v. Tringali (D. N.J. 2017)*"

In a defamation action it is clear that a party need not be identified by name if there is sufficient personally identifiable information.

It is not necessary "…that a plaintiff be mentioned by name in order to recover damages, but it is sufficient if viewers, hearers or readers will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed. *Ryan v. Hearst Publications, Inc., 3 Wash.2d 128, 100 P.2d 24 (1940).* We find in P. Ashley, Say It Safely 30 (3d ed. 1966), the following: The test is not whom the story intends to name but who a part of the audience may reasonably think is named "not who is meant but who is hit," as one court put it" *Sims v. Kiro, Inc., 580 P.2d 642, 20 Wn.App. 229 (Wash. App. 1978).*

We have a trove of evidence that would lead any reasonable person to be able to identify Mr.

Winn as the subject of disparagement and of the disclosure. Again it is important to note that we are dealing with a contracts action and not a defamation action. Our agreement with Mr. Tinsley states that no disparaging remark shall be made regarding the opposing party by either party, and that **each** such disparaging remark shall be subject to liquidated damages. This has nothing to do with the single publication rule. Both parties were entirely competent to make and enter into such an agreement. This is the contractual clause which we determine to have been violated. We will likely be able to find further disparaging remarks even within the same items Mr. Tinsley has already posted.

Post our prior litigation we have also come across additional information, including a text message between Charlie (the bass player from Crystal Garden) and a fan from the Crystal Garden band days. In the text, Charlie openly states that Boyd has done similar unethical and/or illegal things to him. Charlie admits that he attempted suicide multiple times in relation to Mr. Tinsley's actions. The text message can be delivered to your office upon request, along with hundreds of online statements made regarding Mr. Winn being discussed by Mr. Tinsley post-settlement agreement. I encourage you to do your own interview with Mr. Tinsley and Charlie.

It appears to me as if Mr. Tinsley is living in a world of self-created delusion, wherein he is able to pick and choose how he violates others and how he chooses to live up (or not live up) to his contractual obligations.

Our client will pursue all of the legal remedies regarding breach of our settlement agreement. In addition we will be bringing a defamation action against Mr. Tinsley specifically regarding the two posts that defamed Mr. Frost-Winn's character. My suggestion at this point is that we follow the guidelines of our settlement agreement and schedule arbitration with Teresa Wakeen. I am assuming this can be done via video-conferencing, at least initially. If you wish, we can also mediate the defamation action at that point, in hopes of getting everything off of the table at one time. If you prefer,

*Jason Hatch, Attorney, (206)227-2916, jayhatch11@gmail.com*
*26108 Woodland Way S. Kent, WA 98030*

we can stick purely to the contractual issues, and deal with the defamation after it is filed.

We are not convinced, nor are we sympathetic, to claims that Mr. Tinsley may be suffering

financially. In the face of abuse, piled on top of abuse that had been meant to have concluded through

agreement, there is no room in our conscience for worrying about the repeat abuser.

I look forward to your response.

All the best,

Jason Hatch, WSBA#31798
Attorney for James Frost Winn
26108 Woodland Way S.
Kent, WA 98030
(206)227-2916